UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 245 PARK MEMBER LLC,<br><br>               Petitioner,<br><br>   -against-<br><br>HNA GROUP (INTERNATIONAL)<br>COMPANY LIMITED,<br><br>          Respondent. | Case No.: 1:22-cv-05136-JGK |

**PETITIONER 245 PARK MEMBER LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION BY ORDER TO SHOW CAUSE FOR (1) PREJUDGMENT ATTACHMENT, (2) TEMPORARY RESTRAINING ORDER, AND (3) ADVANCE NOTICE OF ASSET SALES OF RESPONDENT HNA GROUP (INTERNATIONAL) COMPANY LIMITED**

KASOWITZ BENSON TORRES LLP
Mark P. Ressler
Paul M. O'Connor III
Henry B. Brownstein
Jasen Fears
1633 Broadway
New York, New York 10019

June 28, 2022

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ................................................................................................... 4

   I.   Respondent and Its Affiliates.......................................................................... 4

   II.   Background of the Dispute ............................................................................. 6

       A.   Relevant Terms Under the Guaranty ..................................................... 7

   III.   Respondent Breaches the Guaranty and Petitioner Commences an Arbitration ........... 7

   IV.   Petitioner Secures a $185 Million Arbitration Award ................................... 8

   V.   Respondent's Recent Attempts to Sell Valuable Assets................................ 9

       A.   The Palisades Conference Center ......................................................... 9

       B.   The Portfolio Of Natural Resource Assets............................................ 9

ARGUMENT ....................................................................................................... 9

   I.   Petitioner Has Met All the Elements for Attachment .................................... 9

       A.   Petitioner Has Demonstrated that a Cause of Action Exists.................. 10

       B.   Petitioner Is Likely to Succeed on the Merits...................................... 10

       C.   Petitioner Has Satisfied the Statutory Grounds for Attachment Under the CPLR .. 17

       D.   The Amount Demanded Exceeds All Counterclaims ............................ 17

       E.   The Attachment Is Needed to Secure Payment of a $185 Million Arbitration Award ................................................................... 18

   II.   Petitioner Should Be Required to Post Only a Minimal Undertaking ............ 21

   III.   The Court Should Require Advance Notice of Any Disposition of Respondent's Assets 22

CONCLUSION..................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpha Petroleum Trading Co. v. Richards*,
   No. 85 CIV. 8553 (CSH), 1986 WL 3515 (S.D.N.Y. Mar. 16, 1986) ................................... 18

*Andes Petroleum Ecuadro Ltd. v. Occidental Expl. & Prod. Co.*,
   No. 21 CIV. 3930 (AKH), 2021 WL 5303860 (S.D.N.Y. Nov. 15, 2021)
   ................................................................................................................. 12, 13, 14, 15

*Bear, Stearns & Co., Inc. v. 1109580 Ont., Inc.*,
   409 F.3d 87 (2d Cir. 2005) ................................................................................. 12

*Beijing Shougang Mining Inv. Co. v. Mongolia*,
   11 F.4th 144 (2d Cir. 2021) .............................................................................. 11

*Berkowitz v. Gould Paper Corp.*,
   No. 21-CV-6582 (VEC), 2022 WL 118232 (S.D.N.Y. Jan. 12, 2022) ..................... 11, 16, 17

*County Natwest Sec. Corp., USA v. Jesup, Josephthal & Co.*,
   180 A.D.2d 468 (1st Dept. 1992) ........................................................................ 18

*Credit Agricole Indosuez v. Rossiyskiy Kredit Bank*,
   265 A.D.2d 257 (1st Dep't 1999), *rev'd in part on other grounds,* 94 N.Y.2d
   541 (2000) ................................................................................................... 17

*Graubard Mollen Dannett & Horowitz v. Kostantinidis*,
   709 F.Supp. 428 (S.D.N.Y. 1989) ...................................................................... 20, 21

*Habitations Ltd. v. BKL Realty Sales Corp.*,
   160 A.D.2d 423 (1st Dept. 1990) ........................................................................ 18

*Herzi v. Ateliers De La Haute-Garonne*,
   2015 WL 8479676 (S.D.N.Y. Oct. 13, 2015) ............................................... 18, 19, 20, 21

*Hotel 71 Mezz Lender LLC v. Falor*,
   14 N.Y.3d 303 (2010) ..................................................................................... 10, 18

*ITC Ent., Ltd. v. Nelson Film Partners*,
   714 F.2d 217 (2d Cir. 1983) .............................................................................. 19

*JSC VTB Bank, etc. v. Mavlyanov*,
   154 A.D.3d 560 (1st Dep't 2017) ........................................................................ 21

*Malkin v. Shasha*,
   No. 20 CIV. 9874 (AT), 2021 WL 4436966 (S.D.N.Y. Sept. 27, 2021) ..................... 10, 12

*Olshan Grundman Frome Rosenzweig & Wolosky LLP v. Jeglitza*,
   No. 00 CIV. 1140 JGK, 2000 WL 420557 (S.D.N.Y. Apr. 18, 2000) ....................................9

*Pacelli v. Vane Line Bunkering, Inc.*,
   549 F. Supp. 3d 306 (S.D.N.Y. 2021).....................................................................................12

*Qwil PBC v. Landow*,
   180 A.D.3d 593 (1st Dep't 2020) .............................................................................................9

*Sire Spirits, LLC v. Green*,
   No. 21 CIV. 7343 (JPC), 2022 WL 2003483 (S.D.N.Y. June 6, 2022)....................11, 12, 16

*Thornapple Assocs., Inc. v. Sahagen*,
   No. 06 CIV. 6412 (JFK), 2007 WL 747861 (S.D.N.Y. Mar. 12, 2007)..........................18, 21

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
   126 F.3d 15 (2d Cir. 1997)......................................................................................................11

**Statutes**

9 U.S.C. § 10(a) .............................................................................................................................11

9 U.S.C. § 201 *et seq.*...................................................................................................................10

Federal Arbitration Act ................................................................................................8, 10, 11, 13

CPLR Article 62 ............................................................................................................................18

CPLR Article 75 ..............................................................................................................................8

CPLR § 6201....................................................................................................1, 3, 10, 17, 18, 19

CPLR § 6210.....................................................................................................................................1

CPLR § 6212.................................................................................................................3, 10, 22

Petitioner 245 Park Member LLC ("Petitioner") respectfully submits this memorandum of law in support of its motion by order to show cause for (1) a prejudgment attachment of the assets of respondent HNA Group (International) Company Limited ("Respondent"), pursuant to Federal Rule of Civil Procedure ("FRCP") 64 and New York Civil Practice Law & Rules ("CPLR") §§ 6210 and 6212, (2) a temporary restraining order prohibiting Respondent from selling or disposing of assets in the interim, pursuant to FRCP 64 and CPLR § 6210, and (3) an order requiring advance notice by Respondent to Petitioner of the sale or disposition of any assets that Respondent owns directly or indirectly.

## PRELIMINARY STATEMENT

Petitioner seeks an immediate order of attachment to prevent Respondent from engaging in the further dissipation of assets in connection with a final arbitration award (the "Final Award"), in the amount of $185,412,763.60, issued on May 5, 2022 by the Honorable L. Priscilla Hall (Ret.), JAMS arbitrator and former Associate Justice of the State of New York Appellate Division, Second Judicial Department, in favor Petitioner and against Respondent.[1]  As Justice Hall ruled, the Final Award arose out of Respondent's breach of an absolute, unconditional, and irrevocable Guaranty, dated November 19, 2018 ("Guaranty"), in which Respondent waived all defenses and the right to assert counterclaims.  Petitioner brings this emergency motion in light of the substantial risk that Respondent will remove assets from this Court's jurisdiction prior to

---

[1]     On May 20, 2022, pursuant to Article 75 of the CPLR, Petitioner filed its Verified Petition to Confirm Arbitration Award (the "Petition") (ECF No. 1.1 at 2-14), supporting Memorandum of Law (ECF No. 1.2, 5-22), and other papers in the Supreme Court of the State of New York, Commercial Division (the "Article 75 Proceeding").  On June 17, 2022, Respondent removed the Article 75 Proceeding to this Court.

confirmation of the Final Award, thereby impeding and obstructing Petitioner's ability to collect on the judgment it is seeking in this action. In furtherance of its ongoing scheme to hinder and delay Petitioner's recovery, Respondent agreed to a schedule for a confirmation motion in state court and then sat on its hands for weeks until its last-minute removal of the Article 75 Proceeding, which would have been an expedited proceeding on an agreed-to schedule.[2] These tactics confirm that Respondent's sole goal is to delay and avoid payment of a $185 million arbitration award that is highly likely to be confirmed and entered as a judgment.

Respondent is a Hong Kong entity and part of a failed and bankrupt Chinese conglomerate, HNA Group Company Ltd., whose principals are in jail on allegations of fraud and corruption and whose assets have been seized. Some of Respondent's U.S. subsidiaries— which own, among other things, 245 Park Avenue, a valuable piece of commercial real estate in Midtown Manhattan—are likewise in bankruptcy. It is no coincidence that, unlike most of its affiliates, Respondent was not put into bankruptcy by its Chinese-owned parent companies. That is because Respondent has valuable assets in the United States and abroad—assets that HNA has placed, and continues to place, outside the reach of its creditors through complex corporate structuring, intra-company transfers, and other maneuvers. By way of example, media reports indicate that Respondent's non-bankrupt subsidiaries (i) recently "reached terms" with a third party to sell a valuable piece of real estate located in Rockland County, New York, and (ii) are selling another foreign subsidiary's 51% stake in a diversified portfolio of oil storage, distribution, and retail assets.

---

[2]     By agreement, the return date for the Article 75 Proceeding was July 18, 2022.

An immediate order of attachment of Respondent's assets, including any proceeds from the sale of such assets, is therefore necessary and appropriate.  The unraveling of the HNA family of companies, and their efforts to liquidate New York assets and remove the proceeds from this jurisdiction, will frustrate and derail Petitioner from collecting on the judgment it seeks in this action.  Under these circumstances, all four criteria for an order of attachment under CPLR § 6212 are satisfied:

- *First*, a cause of action exists because Petitioner has moved to confirm a $185 million arbitration award issued against Respondent by a duly appointed arbitrator who carefully set forth the bases for her ruling in a detailed and well-reasoned decision.

- *Second*, Petitioner is likely to succeed on the merits of its confirmation action.  New York courts routinely confirm the kind of well-reasoned and thoughtful arbitration decision that Justice Hall issued, and afford considerable deference to such awards.  Such deference is particularly appropriate here, where the award resulted from Respondent's breach of a payment guaranty in which Respondent explicitly waived all defenses.

- *Third*, Respondent's status as a foreign corporation not qualified to do business in the state provides sufficient ground for attachment under FRCP 64 and CPLR § 6201(1).

- *Fourth*, Respondent not only has no counterclaims against Petitioner, but waived any rights to assert counterclaims in connection with the Guaranty giving rise to the underlying arbitration proceeding.

Accordingly, the Court should grant the temporary restraining order and issue an order of attachment of Respondent's assets, including the proceeds of any sale of such assets.  The Court

should also order Respondent to provide Petitioner 14 days advance notice of any sale of any assets that Respondent owns directly or indirectly.

## BACKGROUND

### I.     Respondent and Its Affiliates

Respondent is a company organized under the laws of Hong Kong, and has a registered office at Suites 3701-09, 37/F Two International Finance Centre, 8 Finance Street, Central, Hong Kong.  ECF No. 1.1, at 3-4, Petition ¶ 7.  According to Respondent's Notice of Removal (ECF No. 1, ¶ 7), its principal place of business is in Hong Kong, located at Suites 1101-3 and 12, 11th Floor, Tower 2 The Gateway, Harbour City, Kowloon, Hong Kong, SAR.  Respondent is not authorized to do business in New York.  Affidavit of Harrison Sitomer, dated June 28, 2022, (the "Sitomer Aff.") ¶ 4.

Respondent owns HNA Group North America LLC ("HNA North America"), which is known to have an indirect ownership interest in three pieces of real property, described below. *Id*. ¶ 5; *id*., Ex. 1.

HNA North America owns HNA Training Center NY LLC, a Delaware limited liability company that is authorized to do business in New York ("HNA Training Center").  *Id.* ¶ 7; *id*. Ex. 1.  HNA Training Center in turn owns the Palisades Premier Conference Center in Rockland County, New York (the "Conference Center"), located at 334 Rte. 9W, Palisades, NY 10964, Rockland County, New York.  *Id*. ¶ 6; *id.*, Ex. 1.

HNA North America also owns PWM Property Management LLC ("PWM Property"), which in turn owns, through certain U.S. subsidiaries, a commercial office tower at 245 Park Avenue in New York City ("245 Park Avenue")—the property at the center of the underlying arbitration at issue here—and 181 W. Madison Avenue in Chicago (181 W. Madison).  *Id*. ¶ 9.

As detailed further below, PWM Property and its shell U.S. subsidiaries are in bankruptcy in the U.S. District Court for the District of Delaware.

Respondent also owns HNA Innovation Finance Group Co. Ltd. ("HNA Innovation"), which in turn owns a 51% ownership interest in HG Storage International Limited ("HGSI"). *Id.* ¶ 13. HNA Innovation acquired its majority interest in HG Storage through a transaction completed in or around 2017. *Id.* HGSI is a joint venture between Respondent and Glencore Plc, which is one of the world's largest globally diversified natural resource companies. *Id.* HGSI holds a well-diversified portfolio of oil storage, distribution, and retail assets in Europe, the Americas, the Middle East, and Africa. *Id.*

Respondent is a subsidiary of a large Chinese conglomerate, HNA Group Company Ltd. ("HNA Group"). ECF No. 1.2 at 9, Petitioner's Memorandum of Law in Support of Petition to Confirm Arbitration Award. At one time previously valued at more than $100 billion, with interests in aviation, real estate, banking, finance, hospitality, and other sectors around the world, the HNA Group conglomerate has, according to numerous media reports, been in free-fall for the last two years. HNA Group rapidly liquidated some of its trophy assets—including an airline, large stakes in the Hilton hotel chain and Germany's Deutsche Bank, and numerous real estate holdings around the world—in an attempt to raise desperately needed cash and refocus its business.[3] Ultimately, as widely reported, HNA Group filed for bankruptcy in China, its

---

[3]     *See* "Fallen Giant HNA to Be Restructured With Asset Sales Planned," *Bloomberg*, available at https://www.bloomberg.com/news/articles/2021-01-29/hna-says-restructure-sought-with-china-said-to-plan-asset-sales; *see also* "China Plans Sale of HNA's Non-Aviation Assets

founders were imprisoned by Chinese regulators, and nearly $10 billion of its funds apparently were embezzled.  *Id.* at 2.

Notably, however—and despite its continued financial distress—HNA Group made the strategic decision not to put Respondent into bankruptcy.  That is because, unlike some of its U.S. affiliates and the conglomerate as a whole, Respondent still owns (and is attempting to transfer or otherwise dispose of) significant assets.  As described further below, attachment of those assets is necessary to prevent Respondent from removing them beyond the reach of the Petitioner and the Court.

## II.    Background of the Dispute

A more complete description of the background to this dispute is set forth in the Article 75 Petition.  *See* ECF No. 1.1 at 2-17; ECF No. 1.2 at 5- 22.  In brief, and as relevant here, before HNA Group unraveled (at least in public), it bought 245 Park Avenue in May 2017 for $2.21 billion.  ECF No. 1.2 at 9.  The HNA entities that made that purchase were certain of Respondent's United States affiliates (collectively "HNA USA").  *Id.* at 9-10.

Shortly after HNA USA purchased 245 Park Avenue, the liquidity needs of the Chinese parent, HNA Group, intensified.  HNA USA therefore turned to Petitioner—an entity owned by SL Green Realty Corp. ("SL Green"), New York's largest commercial landlord—to make a significant and desperately needed equity investment in the HNA USA entities, 245 Park JV LLC (the "Company").  *Id.* at 10.  On or about June 22, 2018, Petitioner made a preferred equity investment, then totaling $148 million, in the Company pursuant to the Amended and Restated

---

Via Trust," *Bloomberg*, available at https://www.bloomberg.com/news/articles/2021-01-29/china-said-to-plan-sale-of-hna-s-non-aviation-assets-via-a-trust.

Limited Liability Company Agreement, by and among Petitioner and Respondent's affiliate, which was subsequently amended on November 19, 2018 (the "JV Agreement"). *Id.* at 10. As consideration and express inducement for the $148 million investment in the Company, Petitioner negotiated for and secured substantial contractual rights and protections, including the absolute, unconditional, and irrevocable Guaranty at issue here. *Id.* at 10.

### A.    Relevant Terms Under the Guaranty

In the Guaranty, and as relevant here, Respondent and two of its now bankrupt affiliates:

1. unconditionally, absolutely and irrevocably guaranteed to Petitioner payment of the "Redemption Amount," provided for in the JV Agreement, among other amounts, upon the occurrence of events constituting "Cause Events" under JV Agreement, including taking 43 defined "Major Decisions" of the Company without Petitioner's consent and filing for bankruptcy (ECF No. 1.2 at 11-12; *see generally* ECF No. 1.1 at 19-103, JV Agreement);

2. unconditionally waived all defenses to payment under the Guaranty (ECF No. 1.2 at 12; ECF No. 1.1 at 110-111, Guaranty §1.6);

3. agreed not to "sell, pledge, mortgage or otherwise transfer to any Person any of such Guarantor's assets, or any interest therein" while Respondent is in default of its payment obligations under the Guaranty (ECF No. 1.1 at 115, Guaranty Art. 4(d)); and

4. agreed to submit itself to the jurisdiction of this Court related to any matters arising out of the Guaranty (ECF No. 1.1 at 116, Guaranty § 5.3).

## III.    Respondent Breaches the Guaranty and Petitioner Commences an Arbitration

Respondent's payment obligations were triggered under the Guaranty because certain Cause Events occurred, including the taking of Major Decisions without Petitioner's consent and the filing of the Chapter 11 bankruptcy petitions, dated October 31, 2021, (the "Bankruptcy"), by HNA USA. ECF No. 1.2 at 12. Consistent with a company unwilling (or unable) to pay its obligations, Respondent failed to pay the Redemption Amount on demand in breach of the Guaranty. *Id.* at 13.

Petitioner therefore commenced an expedited JAMS arbitration on December 21, 2021, pursuant to the Guaranty's expedited arbitration provision.  *Id.* at 13.

## IV.    Petitioner Secures a $185 Million Arbitration Award

On April 30, 2022, Justice Hall issued the Final Award, totaling $185,412,763.60, in favor of Petitioner and against Respondent.  ECF No. 1.2 at 13.  In her 35-page decision issuing the Final Award, Justice Hall held that Petitioner demonstrated each of the elements of a claim to collect on the Guaranty, and rejected each of Respondent's affirmative defenses (including alleged fraud).  *Id.* at 13-14; ECF No. 1.1 at 180-216, Final Award.  Once again, Respondent did not pay, and has not paid, the $185 million arbitration award.

On May 20, 2022, Petitioner commenced an Article 75 proceeding in New York State court to confirm the Final Award—a proceeding intended to be streamlined and expedited given the low bar for confirming an arbitration award under New York law.  On May 26, 2022, counsel for Respondent accepted service of the Petition on behalf of Respondent.  ECF No. 1.4 at 2.  On May 27, 2022, the parties entered into a stipulation agreeing that, at Respondent's request, briefing would be delayed to afford Respondent additional time to respond.  As a result of that courtesy, Respondent would file its opposition to the Petition on July 8, 2022 and Petitioner would file its reply on July 15, 2022.

Notwithstanding this stipulated briefing schedule and the deference courts routinely afford arbitration awards (under both CPLR Article 75 and the Federal Arbitration Act ("FAA")), Respondent waited weeks until it filed, at the last possible minute, its Notice of Removal on June 17, 2022.  ECF No. 1 at 2 ¶ 5.  That eleventh-hour removal was consistent with Respondent's overarching strategy throughout this dispute: creating and extending delay at every opportunity.

## V.      Respondent's Recent Attempts to Sell Valuable Assets

### A.      The Palisades Conference Center

Media reports revealed that in or about September 14, 2021—just weeks before the October 31, 2021 Bankruptcy—HNA North America attempted, but failed, to sell the Conference Center to a third party.  Sitomer Aff., Ex. 1.  Notably, Respondent and its affiliates structured the deal so that the Conference Center would first transfer to a Hong Kong affiliate, which would then sell the Conference Center to the third party.  *Id.*  In other words, just prior to the Bankruptcy, Respondent and its affiliates attempted to transfer a significant asset and any sale proceeds therefrom outside the country.

Media reports have also revealed that as of May 9, 2022, a third-party "reached terms" to purchase the Conference Center.  Sitomer Aff. ¶ 11.

### B.      The Portfolio Of Natural Resource Assets

Media reports have also revealed that as of March 28, 2022, a company with a security interest in Respondent's ultimate 51% interest in HGSI signed a sale and purchase agreement with a third party.  Those reports indicate the deal is expected to close in the second quarter of 2022.  *Id.* ¶ 14.

## ARGUMENT

## I.      Petitioner Has Met All the Elements for Attachment

"To determine whether an order of attachment should be granted, [federal courts are] required to apply the laws of the State of New York."  *Olshan Grundman Frome Rosenzweig & Wolosky LLP v. Jeglitza*, No. 00 CIV. 1140 JGK, 2000 WL 420557, at *2 (S.D.N.Y. Apr. 18, 2000).  Under New York State law, whether to grant a motion for an order of attachment rests within the discretion of the court, *see Qwil PBC v. Landow*, 180 A.D.3d 593, 593 (1st Dep't 2020), and a party must demonstrate the existence of four elements to obtain a pre-judgment

order of attachment: (1) there is a cause of action; (2) it is probable that the plaintiff will succeed

on the merits; (3) one or more grounds for attachment provided in CPLR § 6201 exist; and (4)

the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.  *See*

CPLR § 6212(a).  Grounds for attachment under CPLR § 6201 include, as relevant here, when

"the defendant is a nondomiciliary residing without the state, or is a foreign corporation not

qualified to do business in the state."  CPLR § 6201(1).  Petitioner must also show that the

attachment is needed to secure payment.  *See Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d

303, 310–311 (2010).  Petitioner has met all of these elements.

### A.      Petitioner Has Demonstrated that a Cause of Action Exists

Petitioner has clearly demonstrated that a cause of action exists.  Article 75 of the CPLR

and Section 9 of the FAA authorize proceedings to confirm arbitration awards in New York State

and federal courts, respectively.  Justice Hall issued a well-reasoned decision awarding Petitioner

more than $185 million relating to Respondent's failure to pay on the absolute, unconditional,

and irrevocable Guaranty.  *See generally* ECF No. 1.1 at 180-216, Final Award.  Moreover,

Respondent has submitted to the jurisdiction of this Court (*see* ECF No. 1.4, stipulation; ECF

No. 1.1 at 116, Guaranty § 5.3), and waived all defenses and the right to assert counterclaims

(ECF No. 1.1 at 106-111, Guaranty §§ 1.2, 1.3, 1.6(g)).

### B.      Petitioner Is Likely to Succeed on the Merits

It is probable that Petitioner will succeed on the merits.  Under the FAA, a court  "must"

confirm an arbitration award unless it is vacated as prescribed in Section 10.[4]  *Malkin v. Shasha*,

---

[4]      One of the bases on which Respondent removed the case was the United Nations

Convention on Recognition and Enforcement of Foreign Arbitral Awards (the "New York

Convention"), 21 U.S.T. 2517, *codified at* 9 U.S.C. § 201 *et seq*.  But the standards that apply in

No. 20 CIV. 9874 (AT), 2021 WL 4436966, at *3 (S.D.N.Y. Sept. 27, 2021) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008); 9 U.S.C. § 9.  "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies."  *Berkowitz v. Gould Paper Corp.*, No. 21-CV-6582 (VEC), 2022 WL 118232, at *3 (S.D.N.Y. Jan. 12, 2022).

Under Section 10 of the FAA, an arbitration award can only be vacated where: (1) the award was procured by fraud; (2) there was "evident partiality or corruption in the arbitrator[]"; (3) the arbitrator was "guilty of misconduct" such that "the rights of any party have been prejudiced"; and (4) the arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a).  In addition to these four factors, courts in the Second Circuit "may set aside an arbitration award if it was rendered in manifest disregard of the law."  *Sire Spirits, LLC v. Green*, No. 21 CIV. 7343 (JPC), 2022 WL 2003483, at *5 (S.D.N.Y. June 6, 2022) (quoting *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011)).

---

this action are those set forth in the FAA, not the New York Convention.  That is because, pursuant to the Guaranty, the arbitration took place in New York and Respondent agreed that New York is the proper forum to enforce the Final Award.  *See Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021) (holding that, because the parties "elected to seat the arbitration in New York, the available grounds for vacatur include all the express grounds for vacating an award under the FAA") (internal quotation marks omitted); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 20–23 (2d Cir. 1997) (same).

Given Justice Hall's decision and the deference given to arbitration awards, it is exceedingly likely that Petitioner will succeed in obtaining a judgment to confirm the Final Award.  This fact differentiates Petitioner's request from many if not most cases in which parties seek prejudgment orders of attachment.  Whereas in many cases the likelihood of success is far from certain, the likelihood of success here is extraordinarily high.

### i.   None of the Statutory Factors for Vacating an Arbitration Award Apply

None of the narrow grounds for modification or vacatur exist, particularly given the "great deference" afforded arbitration awards, *Malkin*, 2021 WL 4436966, at *6; *Pacelli v. Vane Line Bunkering, Inc.*, 549 F. Supp. 3d 306, 312 (S.D.N.Y. 2021) (arbitration awards "deserve 'strong deference'") (citation omitted), and that "courts may vacate an arbitrator's decision 'only in very unusual circumstances.'"  *Sire Spirits, LLC*, 2022 WL 2003483, at *5 (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013)).  Moreover, Respondent bears the burden of proof and "the showing required to avoid confirmation is very high."  *Id*. (internal quotations and citations omitted; quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006) and *Bear, Stearns & Co., Inc. v. 1109580 Ont., Inc.*, 409 F.3d 87, 91 (2d Cir. 2005)).

*First*, there is no credible basis for Respondent to even assert, much less for this Court to conclude, that Petitioner committed fraud on Justice Hall.  "Vacatur on grounds of fraud requires a party to adequately plead that (1) respondent engaged in fraudulent activity; (2) even with the exercise of due diligence, [the party] could not have discovered the fraud prior to the award issuing; and (3) the fraud materially related to an issue in the arbitration.  To adequately plead materiality, a party must demonstrate a nexus between the alleged fraud and the decision made by the arbitrators, although [the party] need not demonstrate that the arbitrators would have reached a different result."  *Andes Petroleum Ecuadro Ltd. v. Occidental Expl. & Prod. Co.*, No.

21 CIV. 3930 (AKH), 2021 WL 5303860, at *2 (S.D.N.Y. Nov. 15, 2021) (internal quotations and citations omitted).

Respondent cannot make this showing.  Petitioner brought a straight-forward arbitration to collect on an absolute, unconditional, and irrevocable Guaranty in which Respondent waived all defenses.  The parties agreed in the Guaranty to make their submission on the papers as part of an expedited proceeding.  Petitioner's submission cited sworn witness statements and numerous exhibits.  Respondent submitted its own voluminous submission, and Respondent never once accused Petitioner of fraud with respect to the arbitration process or Justice Hall.  In fact, as Justice Hall observed, Respondent did not even contest much of the dispositive evidence. *See, e.g.*, ECF. No. 1.1 at 191, 194, 207, Final Award at 12, 15, 28.

*Second*, there is of course no credible basis to assert or conclude that Justice Hall—an experienced, highly respected former jurist who most recently sat as an Associate Justice of the Appellate Division, Second Department—was partial or corrupt.  "[Under the FAA, an] arbitrator will be disqualified for evident partiality only when a reasonable person, considering all of the circumstances, would *have* to conclude that an arbitrator was partial to one side.  It is the materiality of the undisclosed conflict that drives a finding of evident partiality, not the failure to disclose or investigate *per se*."  *Andes Petroleum Ecuadro Ltd.*, 2021 WL 5303860, at *3 (internal quotations and citations omitted; emphasis in original).  Justice Hall disclosed, correctly and accurately, that she had no personal or business relationships with Petitioner.  Any suggestion otherwise would be unhinged speculation on Respondent's part, which does not suffice.  *Id.* ("merely speculat[ing] about the opportunity to engage in misconduct" is insufficient).

*Third*, arbitrations will be not be reopened under Section 10(a)(3) unless Respondent shows "fundamental unfairness" such as that its "right to be heard has been grossly and totally blocked, and that this exclusion of evidence prejudiced [it].'" *Andes Petroleum Ecuadro Ltd.*, 2021 WL 5303860, at *3 (citations omitted). There was no unfairness, much less "fundamental unfairness," with respect to how Justice Hall conducted the arbitration process. After extensive briefing and oral argument, Justice Hall appropriately enforced the expedited arbitration procedures *the parties agreed to* in the Guaranty. *See* Declaration of Mark P. Ressler, dated June 28, 2022 ("Ressler Decl."), Ex. 1.

In Section 5.4 of the Guaranty, the parties agreed "to final and binding arbitration in New York, New York, administered by JAMS in accordance with JAMS Streamlined Arbitration Rules and Procedures." ECF No. 1.1 at 116, Guaranty § 5.4. The arbitration provision expressly states, consistent with the JAMS Rules, that:

> Each party shall submit to [the] arbitrator its position on each matter in dispute and any applicable materials that it desires that such arbitrator consider in making its determination within seven Business Days following the appointment of the arbitrator. Such arbitrator shall consider only the materials submitted to it for resolution. Each party shall cooperate with JAMS and with the other parties in scheduling the arbitration proceedings so that a final non-appealable award is rendered within 30 calendar days after submission thereof to arbitration . . . .

*Id*. These provisions were fully consistent with the JAMS Streamlined Arbitration Rules and Procedures incorporated into the Guaranty, including JAMS Rule 2, which permits contracting parties to agree on "any procedures not specified herein or in lieu of these Rules," and JAMS Rule 18, which permits parties to "agree to waive oral Hearing and submit the dispute to the Arbitrator for an Award based on written submission."

In an attempt to stave off enforcement of its unambiguous payment obligations and thwart the expedited arbitration proceeding to which it had agreed, Respondent demanded full-

blown discovery and a full-blown evidentiary hearing.  After significant briefing and multiple

hearings on the issue, Justice Hall ruled against Respondent in a 14-page March 22, 2022

Decision on Scheduling ("Scheduling Decision").  Ressler Decl., Ex. 1; *see also* ECF No. 1.1 at

182, Final Award at 3.  As set forth the in the Scheduling Decision (Ressler Decl., Ex. 1), and

summarized in the Final Award, Justice Hall determined that the Guaranty provides that:

1) The parties agreed to an expedited arbitration process that included waiving
   discovery and an evidentiary hearing;

2) Each party shall submit its position on each matter in dispute to the arbitrator within
   seven business days following the appointment of the arbitrator;

3) The arbitrator shall consider only the materials submitted to her for resolution and
   issue a final non-appealable award within 30 days after submission;

4) There was no time allocated for discovery or a hearing and no language in the
   Guaranty providing for either discovery or a hearing;

ECF No. 1.1 at 182-83, Final Award at 3-4.  Notwithstanding the parties' agreement to have an

expedited arbitration, Justice Hall did not foreclose the possibility of a hearing with respect to

Respondent's allegations of fraud and *in pari delicto* in connection with the Guaranty.  *Id*.  To

the contrary, Justice Hall afforded Respondent the opportunity to make a threshold evidentiary

showing of fraud in its submission before making a final determination on whether a hearing was

appropriate.  *Id*. at 184.  As Justice Hall correctly ruled, Respondent failed to submit any

evidence of fraud that would warrant a hearing.  *Id*. at 207-208.

*Fourth*, Justice Hall did not exceed her power.  "The Second Circuit has consistently

accorded the narrowest of readings to [§ 10(a)(4)], in order to facilitate the purpose underlying

arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for

protracted litigation."  *Andes Petroleum Ecuadro Ltd.*, 2021 WL 5303860, at *4 (citations

omitted).  It is not enough that the arbitrator committed "serious error."  *Id*.  The "proper

inquiry" under Section 10(a)(4) is "whether the arbitrator's award draws its essence from the

15

agreement to arbitrate."  *Id*.  Justice Hall was fully authorized under the Guaranty's arbitration

clause to issue a Final Award as to "any dispute under this Guaranty," which the parties agreed

"shall be final, conclusive, and binding upon the parties."  ECF No. 1.1 at 116, Guaranty § 5.4

("[a]ny decision rendered by such arbitrator with respect to any matter in dispute and may be

entered and enforced in any court having jurisdiction over any party hereto.").

### ii.   Justice Hall Did Not "Manifestly Disregard The Law"

Justice Hall did not manifestly disregard the law.

> An arbitral award may be vacated for manifest disregard only where
> a petitioner can demonstrate both that (1) the arbitrators knew of a
> governing legal principle yet refused to apply it or ignored it
> altogether, and (2) the law ignored by the arbitrators was well-
> defined, explicit, and clearly applicable to the case.  Under this
> exacting standard, a petitioner "bears a heavy burden to show that
> his case is one of the "exceedingly rare instances where some
> egregious impropriety on the part of the arbitrator is apparent.  Or
> put just a bit differently, the award should be enforced, despite a
> court's disagreement with it on the merits, if there is a *barely
> colorable justification* for the outcome reached.

*Sire Spirits, LLC*, 2022 WL 2003483, at *6 (emphasis in original).  "The Second Circuit has

emphasized that the doctrine requires more than error or misunderstanding with respect to the

law.  The party challenging an award for manifest disregard of the law must demonstrate that the

arbitrator actually knew about the relevant rule of law."  *Berkowitz*, 2022 WL 118232, at *5

(internal citations omitted).  "More generally, [a] federal court cannot vacate an arbitral award

merely because it is convinced that the arbitration panel made the wrong call on the law.  On the

contrary, the award should be enforced, despite a court's disagreement with it on the merits, if

there is a barely colorable justification for the outcome reached."  *Id*. at *6 (internal quotations

and citation omitted).

Again, Justice Hall applied well-settled New York law regarding absolute, unconditional,

and irrevocable guaranties like the one at issue here.  Although "[t]he arbitrator's rationale for an

award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case," *Berkowitz*, 2022 WL 118232, at *3 (quotations and citations omitted), Justice Hall explained the rationale for the Final Award in exacting and meticulous detail.  In her 35-page decision, Justice Hall addressed and analyzed each party's arguments; explained at length the reasoning that led to her determinations as to each of the claims at issue and the legal and factual reasons (including that Respondent waived its defenses) for those determinations; and cited not only ample case law but also specific evidence.  Justice Hall set forth far more than a "barely colorable basis" for her determinations; indeed, she provided an in-depth and comprehensive analysis that far exceeds the minimum standards for confirmation of arbitration awards.

### C.     Petitioner Has Satisfied the Statutory Grounds for Attachment Under the CPLR

A proper ground of an order of attachment exists under CPLR § 6201(1) because Respondent is a "foreign corporation not qualified to do business in the state."  *See* Sitomer Aff. ¶ 4; *see also Credit Agricole Indosuez v. Rossiyskiy Kredit Bank,* 265 A.D.2d 257, 257 (1st Dep't 1999), *rev'd in part on other grounds,* 94 N.Y.2d 541 (2000).

### D.     The Amount Demanded Exceeds All Counterclaims

Finally, the amount demanded—$185,412,763.60—of course exceeds any counterclaims because there are none.  Respondent waived its right to assert any counterclaims in connection with enforcement of the Guaranty.  *See* ECF No. 1.1 at 110, Guaranty § 1.6 (Respondent waives "(d) the right to interpose all substantive and procedural defenses of the law" and "(g) the right to interpose any setoff or counterclaim").

E.     **The Attachment Is Needed to Secure Payment of a $185 Million Arbitration Award**

Where, as here, Respondent has submitted to the jurisdiction of the Court (ECF No. 1.4), "the party seeking attachment must demonstrate an identifiable risk that the defendant will not be able to satisfy the judgment." *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 310–311 (2010). A court may consider, among other things, defendant's history of paying creditors (*see Habitations Ltd. v. BKL Realty Sales Corp.*, 160 A.D.2d 423, 424 (1st Dept. 1990)), or a defendant's stated or indicated intent to dispose of assets (*see County Natwest Sec. Corp., USA v. Jesup, Josephthal & Co.*, 180 A.D.2d 468, 469 (1st Dept. 1992)). Notably, however, the party seeking an attachment pursuant to CPLR § 6201(1) need not show bad faith or fraudulent intent. *See Thornapple Assocs., Inc. v. Sahagen*, No. 06 CIV. 6412 (JFK), 2007 WL 747861, at *8 (S.D.N.Y. Mar. 12, 2007); *Alpha Petroleum Trading Co. v. Richards*, No. 85 CIV. 8553 (CSH), 1986 WL 3515, at *3 (S.D.N.Y. Mar. 16, 1986) (finding it "irrelevant" that plaintiffs failed to show defendant disposed of property with intent to defraud when seeking order of attachment pursuant to CPLR § 6201(1) as opposed to CPLR § 6201(3), the fraudulent conveyance provision).

There is a real risk Respondent will not be able to satisfy a $185 million judgment. The court's analysis in *Herzi v. Ateliers De La Haute-Garonne*, 2015 WL 8479676 (S.D.N.Y. Oct. 13, 2015), is instructive. Defendant in *Herzi* was a private family-owned company based and doing business in France with no business operations in New York. *Id.* at *1. Plaintiff, who had performed legal services for defendant in a patent infringement action in the United States, submitted an *ex parte* application for an order of attachment related to outstanding legal bills. *Id.* The court held that attachment was proper under CPLR Article 62 because, *inter alia*, "the fact that the [Respondent] is a private, foreign company without any apparent business operations in

New York increases the likelihood and ease with which [Respondent] could render itself judgment-proof in this jurisdiction." *Id* at \*3.  The court also expressed concern over defendant's attempts to conceal the outcome of the patent infringement action from prior counsel, which "suggests that Defendant may attempt to transfer overseas or otherwise conceal what assets it has in New York to avoid payment of the judgment." *Id*.

The Second Circuit has likewise emphasized—with reasoning that applies with special force here—why it is critical to afford protection to a New York-based petitioner.  In *ITC Ent., Ltd. v. Nelson Film Partners*, 714 F.2d 217 (2d Cir. 1983), plaintiff sought an order of attachment in connection with a dispute over the sale of a motion picture.  Defendant admitted he resided in Georgia, but argued he was not a "non-resident" for the purposes of CPLR § 6201 because he owned and "infrequently" stayed at a cooperative apartment in a New York hotel.  *Id*. at 219.  The Second Circuit rejected this argument, granted prejudgment attachment, and observed:

> New York courts have long recognized that provisions for attachment against nonresidents are based on the assumption that there is much more propriety in requiring a debtor, whose domicile is without the state, *to give security for the debt,* than one whose domicile is within.  Such a debtor, pending litigation, might sell his property, and remain at home, in which event he could not be reached by any of the provisional remedies or supplementary proceedings provided by New York laws.

*Id.* at 220 (alterations omitted; emphasis in original).

As described above, the entire HNA Group has been disintegrating for at least the past two years. *See* Background § II, *supra*.  Respondent's parent, HNA Group, has declared bankruptcy in China and its executives have been imprisoned.  ECF No. 1.2 at 9.  Other of Respondent's U.S. affiliates are currently engaged in multiple bankruptcy proceedings in the United States, including proceedings involving 245 Park Avenue that gave rise to the Guaranty

at issue here.  Sitomer Aff. ¶ 12.  It also has been reported that Respondent and its wholly owned affiliates attempted, but failed, to sell the Conference Center in September 2021—just weeks before its affiliates would file the Bankruptcy—by first transferring ownership of the property from its U.S.-based subsidiaries to its Hong Kong subsidiaries.  Sitomer Aff., Ex. 1.  Media reports likewise show that HNA North America is again attempting to sell the Conference Center, this time with the $185 million judgment looming.  Media reports also show that Respondent's majority interest in a valuable portfolio of natural resource assets will be sold imminently.

Respondent thus appears to have two substantial U.S. assets: (i) 245 Park Avenue, which is subject to the Bankruptcy and cannot be seized to satisfy the Final Award, and (ii) the Conference Center, which Respondent's affiliates have put on the auction block.  The rest of Respondent's assets, including its 51% interest in HGSI, are not only outside New York but outside the United States.  All of these facts confirm the degree to which the HNA organization—from Respondent's parents through its subsidiaries—is in financial distress, placing at risk the collectability of a judgment against Respondent.  *Herzi v. Ateliers De La Haute-Garonne*, No. 15-CV-7702 (RJS), 2015 WL 8479676, at *2 (S.D.N.Y. Oct. 13, 2015) ("attachment is necessary for security purposes because 'the collectability of any judgment against Defendant is uncertain given that most of Defendant's assets are outside New York'"); *Graubard Mollen Dannett & Horowitz v. Kostantinidis,* 709 F.Supp. 428, 432 (S.D.N.Y. 1989) (finding that attachment pursuant to § 6201(1) against foreign defendants not authorized to do business in New York "was entirely appropriate" where defendants had offices in various foreign jurisdictions and the majority of their assets were abroad).

Moreover, Respondent's covenant in the Guaranty that it would maintain liquid assets of $20 million has proven to be cold comfort indeed. *See* ECF No. 1.1 at 115, Guaranty, Art 4(d). Respondent has not paid Petitioner $20 million, has made no representation that it still has liquid assets of $20 million, and the covenant was made prior to the HNA Group's global meltdown. Even so, New York courts have found that attachments are even more appropriate where assets are liquid because they are "easily transferable." *Herzi*, 2015 WL 8479676, at *3; *see also Graubard Mollen Dannett & Horowitz*, 709 F. Supp. at 432 (granting attachment pursuant to § 6201(1) because, among other reasons, what little assets were in New York were liquid and could therefore be "easily transferred from the jurisdiction by a simple telephone call," putting plaintiff "in the inauspicious position of having to chase defendants" to foreign venues).

In view of the clear and identifiable risk that Respondent either will not have sufficient funds to satisfy the $185 million judgment, or will dissipate or dispose of any funds it does have through transfers to its affiliates or other transactions that place such funds outside this Court's jurisdiction, there are ample grounds supporting an attachment order. *See Thornapple Assocs., Inc.*, 2007 WL 747861 at *6 ("a defendant's financial instability may justify a plaintiff's fear that a potential judgment will not be satisfied and thus provide a ground for an attachment").

## II.   Petitioner Should Be Required to Post Only a Minimal Undertaking

Finally, as to the required undertaking, Petitioner respectfully submits that the statutory $500 minimum is appropriate. The risk that the attachment will have been unwarranted is minimal under the circumstances, especially given that the Final Award at issue stemmed from a Guaranty that Respondent already agreed would be "absolute," "unconditional" and "irrevocable," and that the HNA organization has been shedding assets during its unraveling.

Courts have held that undertakings should be "rationally related to the potential damages in the event the attachment is found to have been unwarranted." *JSC VTB Bank, etc. v.*

*Mavlyanov*, 154 A.D.3d 560, 563 (1st Dep't 2017) (citing *Med. Bldgs. Assocs., Inc. v. Abner Properties Co.*, 103 A.D.3d 488, 488 (1st Dep't 2013)).  A minimal undertaking of $500 dollars is rationally related to Respondent's potential damages because those potential damages are correspondingly minimal.  As shown above, there is little risk the attachment will be ruled unwarranted.  Arbitration awards are routinely confirmed and afforded great deference by New York courts.  *See* Argument § I.B., *supra.*  Petitioner is highly likely to succeed in this special proceeding and obtain a judgment for the full amount of the Final Award.

Significantly, too, Respondent has already agreed in the Guaranty to bear the risk of being prohibited from transferring assets while the Guaranteed Obligations are owed under the Guaranty.  *See* ECF No. 1.1 at 115, Guaranty Art. 4(d) (Respondent agreed not to "sell, pledge, mortgage or otherwise transfer to any Person any of such Guarantor's assets, or any interest therein" while its obligations under the Guaranty remain outstanding, as they are now); *id*. at 108, Guaranty § 1.3(c)(xi) ("SLG may proceed to exercise any right or remedy hereunder irrespective of …(xi) any other circumstance which might . . . vary the risk of Guarantors.").  That the contract giving rise to the Final Award contemplated and addressed the risk that Respondent would transfer assets—and mitigated that risk by explicitly prohibiting Respondent from doing so—justifies setting the undertaking at the minimum amount under CPLR §6212(b).

## III.   The Court Should Require Advance Notice of Any Disposition of Respondent's Assets

In light of the above facts, Petitioner respectfully requests that the Court require Respondent to provide Petitioner with at least 14 days' notice of any impending transfer, sale, disposition, or other transaction involving any assets Respondent owns or controls, by itself or through its subsidiaries, directly or indirectly.

**CONCLUSION**

For the foregoing reasons, Petitioner's application for an order of attachment of Respondent's assets, including any proceeds from the sale of such assets, should be granted, and the Court should order Respondent to provide Petitioner with 14 days' notice of any impending transfer, sale, disposition or transaction involving any assets owned or controlled by Respondent or its subsidiaries.

Dated:  New York, New York       KASOWITZ BENSON TORRES LLP
    June 28, 2022

             By: */s/ Mark P. Ressler*
               Mark P. Ressler
               Paul M. O'Connor III
               Jasen Fears
               1633 Broadway
               New York, New York 10019
               Telephone: (212) 506-1700
               mressler@kasowitz.com
               poconnor@kasowitz.com
               jfears@kasowitz.com

               Henry B. Brownstein
               1401 New York Avenue, NW, Ste. 401
               Washington, D.C. 20005
               Telephone: (202) 760.3400
               hbrownstein@kasowitz.com

               *Attorneys for Petitioner 245 Park Member*
               *LLC*

## **CERTIFICATE OF WORD COUNT**

The undersigned certifies that this brief contains 6,855 words, excluding the parts of the brief exempted by this Court's Individual Practices § II(D), as calculated by the word-processing software used to prepare this brief.  Accordingly, this brief complies with the formatting rules provided in the Court's Individual Practices § II(D).

_/s/ Mark P. Ressler_
Mark P. Ressler
