**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------

**245 PARK MEMBER LLC,**

              Petitioner,

    - against -

**HNA GROUP (INTERNATIONAL) COMPANY LIMITED,**

              Respondent.
------------------------------------

**22-cv-5136 (JGK)**

**MEMORANDUM OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

    The petitioner, 245 Park Member LLC, brought this suit against the respondent, HNA Group (International) Company Limited, seeking to confirm an arbitration award dated April 30, 2022 in the arbitration captioned 245 Park Member LLC v. HNA Group (International) Company Limited, JAMS Ref. No. 5425000065, ECF No. 1-1, Ex. E (the "Award"), in the amount of $185,412,763.60. The proceeding to confirm the Award, which was originally filed in state court, has been removed to this Court. This Court has subject matter jurisdiction pursuant to 9 U.S.C. § 203 because this action falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, codified at 9 U.S.C. § 201 et seq. (the "New York Convention").[1]

---

[1] The parties initially disputed whether the New York Convention applies to this case, but the petitioner now appears to concede that the New York Convention does apply. See ECF No. 26, at 1 n.2, 16. The New York Convention applies to this case because the Award is a "nondomestic" arbitral award – that is, an award that was made in the United States and that involves an

The petitioner has moved for a pre-judgment order of attachment of the respondent's assets pursuant to Federal Rule of Civil Procedure 64 and New York Civil Practice Law & Rules ("CPLR") § 6212. The petitioner also seeks an order requiring the respondent to provide the petitioner 14 days' advance notice of the sale of any assets that the respondent owns directly or indirectly.

I.

On June 29, 2022, the Court issued a Temporary Restraining Order that prevented the respondent from transferring assets in the aggregate amount of $1 million, up to the amount of $185,412,763.60, and required the respondent to provide 14 days' advance notice to the petitioner of any sale of the respondent's property with an aggregate value of at least $1 million. ECF No. 15. On July 13, 2022, the Court extended the Temporary Restraining Order through July 25, 2022. ECF No. 25.

---

entity that is not a United States citizen. See Beijing Shougang Mining Inv. Co., Ltd. v. Mongolia, 11 F.4th 144, 159 & n.14 (2d Cir. 2021); CBF Indústria de Gusa S/A v. AMCI Holdings, Inc., 850 F.3d 58, 73 (2d Cir. 2017); 9 U.S.C. § 202. The Court exercises "primary jurisdiction" over the Award as opposed to "secondary jurisdiction" because the Award is a "nondomestic award rendered in the United States." Beijing Shougang Mining, 11 F.4th at 160 n.15. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the petitioner is a citizen of Delaware and New York, the respondent is a citizen of the Hong Kong Special Administrative Region of the People's Republic of China, and the amount in controversy exceeds $75,000, exclusive of interest and costs. The parties consented to personal jurisdiction in New York. See ECF No. 1 (Notice of Removal) ¶ 18; ECF No. 1-1, at 116.

**II.**

Federal Rule of Civil Procedure 64 "authorizes the attachment of assets to secure satisfaction of the potential judgment in accord with the available prejudgment remedies of the state in which the district court sits." Bollenbach v. Haynes, No. 18-cv-997, 2018 WL 4278347, at *1 (S.D.N.Y. May 29, 2018).[2] Under New York law, to obtain a pre-judgment order of attachment, the petitioner must show that (1) there is a cause of action; (2) it is probable that the petitioner will succeed on the merits; (3) one or more grounds for attachment provided in CPLR § 6201 exist; and (4) the amount demanded from the respondent exceeds all counterclaims known to the petitioner. See CPLR § 6212(a).

It is undisputed that there is a cause of action in this case (namely, a proceeding to confirm the Award), and that the amount demanded exceeds all counterclaims because there are no counterclaims. Accordingly, the parties' dispute focuses on the second and third requirements for an order of attachment.

**A.**

The respondent argues that the petitioner's claim to confirm the Award is not likely to succeed on the merits. The respondent argues that the arbitration process was fundamentally

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

3

unfair and contrary to the terms of the parties' arbitration agreement because the arbitrator denied the respondent's request for discovery and an evidentiary hearing.

An award is fundamentally unfair if the arbitrator fails to "give each of the parties to the dispute an adequate opportunity to present its evidence and argument." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997).[3] The respondent argues that the Award is fundamentally unfair because the arbitrator declined to hold an evidentiary hearing and did not allow the respondent to take discovery regarding its fraud and in pari delicto defenses. But the arbitrator considered, and rejected, the respondent's request for discovery and an evidentiary hearing in a well-reasoned decision on scheduling. See ECF No. 5-1 ("Scheduling Decision"). The arbitrator concluded that, according to the terms of the parties' arbitration agreement, set forth in the Amended and Restated Guaranty dated November 19, 2018, ECF No. 1-1, Ex. B (the "Guaranty"), "the parties agreed to an expedited arbitration

---

[3] Tempo Shain involved section 10(a)(3) of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), 9 U.S.C. § 10(a)(3). See 120 F.3d at 19-20. The New York Convention and the FAA both apply to this case because the parties chose to seat the underlying arbitration in New York. See Beijing Shougang Mining, 11 F.4th at 159-60. In addition to FAA § 10(a)(3), the respondent cites Article V(1)(b) of the New York Convention, which provides that an award may be vacated if the party against whom enforcement is sought was "unable to present his case." This ground for vacatur is similar to FAA § 10(a)(3). See Kondot S.A. v. Duron LLC, No. 21-cv-3744, 2022 WL 523902, at *9 (S.D.N.Y. Feb. 22, 2022) ("Article V(1)(b) protects the fundamental requirement of due process, which is the opportunity to be heard at a meaningful time and in a meaningful manner."). Accordingly, the Court analyzes these grounds for vacatur together.

4

process that included waiving discovery and an evidentiary hearing." Scheduling Decision, at 12. Because of the extremely expedited schedule provided for the parties' submissions and the arbitrator's decision, the arbitrator concluded that the parties "clearly did not contemplate time for discovery" and that the Guaranty does not provide for a hearing. Id. at 12-13. Rather, the Guaranty provides that the parties must make their submissions to the arbitrator within seven days after appointment of the arbitrator and the arbitrator must issue a decision based on those submissions within thirty days. This expedited procedure agreed to by sophisticated parties for a prompt decision on the Guaranty does not contemplate discovery or an evidentiary hearing.

Fundamental unfairness only exists if the challenging party's "right to be heard has been grossly and totally blocked." Andes Petroleum Ecuadro Ltd. v. Occidental Exploration and Prod. Co., No. 21-cv-3930, 2021 WL 5303860, at *3 (S.D.N.Y. Nov. 15, 2021). "[A]rbitrators are afforded broad discretion to determine whether to hear or not hear evidence, or whether additional evidence is necessary or would simply prolong the proceedings." Fairchild Corp. v. Alcoa, Inc., 510 F. Supp. 2d 280, 286 (S.D.N.Y. 2007). "There is . . . no bright line rule that requires arbitrators to conduct oral hearings." Oracle Corp. v. Wilson, 276 F. Supp. 3d 22, 29 (S.D.N.Y. 2017). "[A]s

5

long as an arbitrator's choice to render a decision based solely on documentary evidence is reasonable, and does not render the proceeding 'fundamentally unfair,' the arbitrator is acting within the liberal sphere of permissible discretion." <u>Companion Prop. and Cas. Ins. Co. v. Allied Provident Ins., Inc.</u>, No. 13-cv-7865, 2014 WL 4804466, at *10 (S.D.N.Y. Sept. 26, 2014).

While the arbitrator in this case did not hold an evidentiary hearing, she considered extensive submissions by the parties in connection with both the scheduling decision and the final merits decision. Far from grossly and totally blocking the respondent from being heard, the arbitrator considered the parties' competing interpretations of the Guaranty and concluded that the respondent was not entitled to discovery or a hearing. This is not fundamental unfairness.

Nor was the procedure imposed by the arbitrator contrary to the terms of the arbitration agreement.[4] An arbitrator's contract interpretation is entitled to substantial deference. <u>See Schwartz v. Merrill Lynch & Co., Inc.</u>, 665 F.3d 444, 452 (2d Cir. 2011). "If the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." <u>Id.</u> In the Scheduling Decision, the arbitrator analyzed the terms of the parties' arbitration

---

[4] Article V(1)(d) of the New York Convention, relied upon by the respondent, provides that an award may be vacated if, among other things, "the arbitral procedure was not in accordance with the agreement of the parties."

6

agreement and concluded that the parties waived discovery and an evidentiary hearing. The arbitration agreement provides that any arbitration will be administered in accordance with the JAMS Streamlined Arbitration Rules and Procedures. Guaranty, at 12. Although the JAMS Rules contemplate discovery and a hearing, the parties' agreement requires that each party submit its position and any materials within seven business days following the appointment of the arbitrator. Id. at 13. The agreement also provides that the arbitrator "shall consider only the materials submitted to it for resolution" and issue a final award within 30 days after submission. See id. The arbitrator reasonably concluded that these contract terms conflict with, and displaced, the JAMS Rules providing for discovery and a hearing. The arbitrator noted that the JAMS Rules explicitly allow parties to waive an oral hearing and agree on procedures not contained in the JAMS Rules. Scheduling Decision, at 12. Finally, the arbitrator noted that the parties are sophisticated commercial entities who operated with equal bargaining power. Accordingly, the arbitrator provided more than a colorable justification for her interpretation of the arbitration agreement.

Because the arbitration procedure does not appear to have been fundamentally unfair or contrary to the parties' agreement, the petitioner is likely to succeed on the merits.

7

B.

It is undisputed that the respondent is a foreign corporation not qualified to do business in New York, which is one of the grounds for attachment provided for in CPLR § 6201. But because the respondent has consented to personal jurisdiction, the petitioner is not entitled to an order of attachment unless it can show that "something, whether it is [the respondent's] financial position or past and present conduct, poses a real risk of the enforcement of a future judgment." In re Amaranth Natural Gas Commodities Litig., 711 F. Supp. 2d 301, 306 (S.D.N.Y. 2010); see also Chartwell Therapeutics Licensing LLC v. Citron Pharma LLC, No. 16-cv-3181, 2018 WL 1402239, at *4 (E.D.N.Y. Mar. 4, 2018), report and recommendation adopted, 2018 WL 1401321 (E.D.N.Y. Mar. 20, 2018). The respondent argues that the petitioner has failed to make this showing.

It is undisputed that the respondent's parent, HNA Group Company Ltd. ("HNA Group"), declared bankruptcy in China. The petitioner has also established that several of the respondent's United States affiliates are currently engaged in bankruptcy proceedings, including the entity that owns the property at 245 Park Avenue that gave rise to the Guaranty that the respondent allegedly breached. See Sitomer Aff., ECF No. 6 ¶¶ 9, 12. Moreover, in response to the petitioner's showing that two of

8

the respondent's indirectly owned assets may be sold imminently, the respondent stated that it will not receive any proceeds from those sales. See Lai Decl., ECF No. 20 ¶¶ 10, 14-15. This only highlights the risk that the respondent will not be able to satisfy a judgment of $185,412,763.60.[5]

Of course, it is the petitioner's burden to prove the right to an attachment, and that burden is high. In re Amaranth, 711 F. Supp. 2d at 305. However, the glaring lack of evidence from the respondent concerning its assets and business operation is probative of the substantial risk that the respondent could not satisfy a substantial judgment. The respondent is faced with evidence that its parent company and several of its United States affiliates are bankrupt, and that the sales of two of the assets in which the respondent has some interest will not produce any proceeds for the respondent. In response, the respondent marshals only the following statement: "As of this date, Respondent is an ongoing business venture that receives distributions from its day-to-day business operations and as a result of its ownership of various assets." Lai Decl. ¶ 16.[6] When viewed in conjunction with the petitioner's evidence of the

---

[5] The respondent complains that the petitioner relies on hearsay and news articles, but reliance on such evidence is permissible. See, e.g., Halse v. Hussain, 147 N.Y.S.3d 148, 152 (App. Div. 2021) (affirming order of attachment where the plaintiff relied on "annexed newspaper accounts").

[6] In its motion, the petitioner points to the respondent's failure to confirm that it maintains $20 million in liquid assets as required by the Guaranty, see Guaranty, at 10. The respondent calls this concern "speculative" but fails to address it meaningfully or to deny it. See ECF No. 18, at 21.

respondent's financial struggles, the respondent's failure to provide any details about its assets or business operation makes plain the substantial risk that the respondent could not satisfy the potential judgment.

At argument and in its papers, the respondent relies on <u>Bravia Capital Hong Kong Ltd. v. HNA Group Co.</u>, 2021 WL 5908922 (N.Y. Sup. Ct. Dec. 14, 2021). But that case is inapposite. In that case, among other grounds cited by the court for rejecting the proposed attachment, the only evidence the plaintiff provided to establish the defendant's financial struggles was the following statement: "HNA Ltd. is among a host of HNA Group entities in a government led reorganization in China." <u>Id.</u> at *13–14. The showing of financial hardship in this case is stronger: in addition to the bankruptcy of HNA Group, the petitioner has established the bankruptcy of several of the respondent's United States affiliates, including the entity that owns the property at 245 Park Avenue which gave rise to the Guaranty at issue in this case. Moreover, the petitioner has undertaken efforts to locate New York assets owned by the respondent, only to learn that the respondent will not receive any proceeds from the sales of those assets.[7]

---

[7] In <u>Bravia</u>, the plaintiff did not provide evidence "as to what efforts [the plaintiff] undertook to locate [the defendant's] assets in the state." 2021 WL 5908922, at *14.

10

Accordingly, the petitioner has met its burden of showing that there is a substantial risk that the respondent could not satisfy a judgment of $185,412,763.60.[8] Therefore the petitioner has satisfied all the requirements for an order of attachment. Because there is a substantial risk that the respondent cannot satisfy the potential judgment, the petitioner is also entitled to an order requiring the respondent to provide the petitioner 14 days' advance notice of the sale of any assets that the respondent owns directly or indirectly.[9]

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the reasons explained above, the plaintiff's motion for an order of attachment and an order requiring advance notice of any disposition of the respondent's assets is **granted**. The Court

---

[8] Chartwell, on which the respondent also relies, is likewise distinguishable. In that case, it was undisputed that the defendant had received hundreds of millions of dollars, including $270 million dollars cash, from a sale that could be used to satisfy the plaintiff's $14 million claim. See 2018 WL 1402239, at *5. Moreover, the defendant in Chartwell offered specific evidence about its business operation: namely, that it "manufactures, packages, and sells generic, prescription pharmaceutical products to other companies for sale under the purchasing company's label." Id. In this case, the Court has no evidence about assets from which the respondent could satisfy the potential judgment and no information about the respondent's business operation.

[9] The respondent argues, without citation, that the petitioner "has no right to advance notice of the sale of assets that are indirectly held by Respondent and therefore not subject to attachment unless and until Respondent obtains an assignable or transferable interest in the proceeds from such sales." ECF No. 18, at 7. But the respondent does not explain why the notice requirement is not appropriate in this case.

will enter the petitioner's proposed orders with some modifications.

**SO ORDERED.**

Dated: New York, New York
July 25, 2022

_____
John G. Koeltl
United States District Judge

12