UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

245 PARK MEMBER LLC,

            Petitioner and
            Judgment Creditor,

   -against-

HNA GROUP (INTERNATIONAL) COMPANY LIMITED,

            Respondent and
            Judgment Debtor.

Case No.: 1:22-cv-05136-JGK

**PETITIONER 245 PARK MEMBER LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION BY ORDER TO SHOW CAUSE TO LIFT THE STAY AND ORDER A TURNOVER PURSUANT TO CPLR 5225(A)**

KASOWITZ BENSON TORRES LLP
Mark P. Ressler
Paul M. O'Connor III
Henry B. Brownstein
1633 Broadway
New York, New York 10019

December 8, 2022

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................... 3

    I.    Petitioner Obtained a $185 Million Judgment Against HNAI............................... 3

    II.    HNAI Admitted That It Owns A 100% Direct Interest in HNA North America ................................................................................................................ 4

    III.    HNAI And Its Affiliates Have Obstructed Petitioner's Efforts to Collect Its $185 Million Judgment ................................................................................... 6

        A.    HNAI Admitted It Is Obstructing Petitioner's Judgment Collection Efforts ....................................................................................................... 6

        B.    HNAI And Its Wholly Owned Subsidiaries Recently Attempted to Fraudulently Convey A Valuable Asset ..................................................... 7

        C.    HNA And Its Affiliates Have Routinely Transferred Assets For No Consideration .......................................................................................... 8

        D.    HNAI and Its Wholly Owned Subsidiaries Have Attempted To Frustrate Discovery Concerning HNAI's Assets And Alter Ego Evidence................................................................................................... 9

        E.    HNAI Has Further Delayed Petitioner's Judgment Collection Efforts Through Its Counsel's Withdrawal Motion ................................. 10

ARGUMENT ........................................................................................................................ 11

    I.    Petitioner Has Made the Required Showing Under CPLR 5225(a) and 5240 for a Turnover of HNAI's Ownership Interests in HNA North America .............................................................................................................. 11

    II.    The Stay Should Be Lifted To Effectuate The Turnover.................................... 15

CONCLUSION..................................................................................................................... 16

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*79 Madison LLC v. Ebrahimzadeh*,
   203 A.D.3d 589 (1st Dep't 2022) ................................................................................ *passim*

*Allstar Marketing Group, LLC v. AFACAI*,
   2021 WL 2555636 (S.D.N.Y. June 22, 2021) ......................................................................12

*Arrowhead Capital Fin. Ltd. v. Seven Arts Entm't, Inc.*,
   2017 WL 3394604 (S.D.N.Y. August 8, 2017) ..............................................................13, 14

*In re BICOM NY, LLC*,
   2021 WL 4467539 (Bankr. S.D.N.Y. Sept. 29, 2021) ..........................................................12

*Borges v. Placeres*,
   2018 WL 6056173 (N.Y. Civ. Ct. Nov. 2, 2018) .................................................................14

*Cardew v. Gialanella*,
   92 A.D.3d 1002 (3d Dep't 2012) ..........................................................................................13

*Colonial Sur. Co. v. Lakeview Advisors, LLC*,
   93 A.D.3d 1253 (4th Dep't 2012) .........................................................................................14

*Matter of Gliklad v. Chernoi*,
   129 A.D.3d 604 (1st Dep't 2015) .........................................................................................12

*Gryphon Dom. VI, LLC v. APP Intl. Fin. Co., B.V.*,
   41 A.D.3d 25 (1st Dep't 2007) .............................................................................................13

*Hotel 71 Mezz Lender LLC v. Falor*,
   14 N.Y.3d 303 (2010) .....................................................................................................12, 13

*Hyegate, LLC v. Boghossian*,
   2022 WL 1488171 (S.D.N.Y. May 11, 2022) ......................................................................11

*Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*,
   2012 WL 5512240 (S.D.N.Y. Nov. 13, 2012) .....................................................................13

*Sirotkin v. Jordan, LLC*,
   141 A.D.3d 670 (2d Dep't 2016) ..........................................................................................13

**Statutes and Rules**

Federal Rules of Civil Procedure Rule 69 ..................................................................................1, 11

N.Y. C.P.L.R 5225 ............................................................................................................... *passim*

N.Y. C.P.L.R. 5240 .............................................................................................1, 11, 13, 14

Petitioner and Judgment Creditor 245 Park Member LLC ("Petitioner") respectfully submits this memorandum of law in support of its motion by order to show cause for an order that lifts the stay entered by this Court on October 12, 2022 (*see* Dkt. Nos. 56 & 74) for the sole and limited purpose of directing Respondent and Judgment Debtor HNA Group (International) Company Limited ("HNAI") to turn over its 100% ownership interest in HNA North America, LLC ("HNA North America") directly to Petitioner, pursuant to Rule 69 of the Federal Rules of Civil Procedure ("FRCP") and Rules 5225(a) and 5240 of the New York Civil Practice Law & Rules ("CPLR"), in partial satisfaction of a judgment, entered by this Court in July 2022, in the amount of $185,412,763.60 (the "Judgment), that HNAI owes to Petitioner.[1]

## PRELIMINARY STATEMENT

Petitioner easily meets the standard under CPLR 5225(a) for an order directing HNAI to turn over its ownership interest in HNA North America to Petitioner in partial satisfaction of the Judgment. To obtain such relief, Petitioner needs to establish only that HNAI, as judgment debtor, possesses the property at issue—a fact not in dispute. Indeed, HNAI has repeatedly admitted in sworn testimony and discovery responses that it owns a 100% direct interest in HNA North America, and HNA North America's affiliates have provided discovery corroborating that fact.

Where the value of the property is uncertain and the judgment debtor has attempted to evade satisfying the judgment, New York courts have ordered that the property be turned over directly to the judgment creditor, as opposed to the sheriff for a sale of the property. *See 79 Madison LLC v. Ebrahimzadeh*, 203 A.D.3d 589, 590 (1st Dep't 2022). The recent appellate decision in *79 Madison* is squarely on point here. In that case, the judgment debtor was, as here,

---

[1] Petitioner has filed in support of this motion the Declaration of Mark P. Ressler, dated December 8, 2022, and the exhibits attached thereto ("Ressler Decl., Ex. __").

a guarantor that engaged in efforts to frustrate enforcement of a judgment.  The judgment creditor, as here, established that the judgment debtor was in possession of membership interests in a foreign, third-party LLC.  The New York State Supreme Court, Appellate Division, First Department, held that the trial court had "providently exercised its discretion in ordering a direct turnover, given that the value of defendant's membership interest is uncertain and that defendant has obstructed plaintiff's efforts to pursue the judgment."  *79 Madison*, 203 A.D.3d at 590-91.  As a result, rather than ordering a turnover of the membership interest to the sheriff for a sheriff's sale, the Court ruled that it was appropriate for the trial judge to have ordered a turnover directly to the judgment creditor.  That should be the outcome here for the same reasons.

Ordering a turnover now is necessary to prevent HNAI or its subsidiaries from transferring assets owned by HNA North America directly or indirectly.  Accordingly, Petitioner requests that the stay currently in place be lifted for the limited purpose of granting the relief sought in this motion.  In issuing the Judgment, Judge Koeltl expressly noted his concerns about HNAI's ability to satisfy it.  The conduct of HNAI and its affiliates since then has confirmed Judge Koeltl's concerns, as HNAI and its affiliates have repeatedly and egregiously sought to evade, frustrate, obstruct, and delay Petitioner's Judgment collection efforts.

By way of example only, HNAI's corporate representative testified in September 2022 that even though its interest in HNA North America is its most valuable asset (though still not enough to satisfy the $185 million Judgment), HNAI made "a management decision" not to turn over that interest to Petitioner.  Then, in October 2022, HNAI's wholly owned subsidiaries attempted to perpetrate a scheme to fraudulently transfer HNA North America's wholly owned indirect interest in valuable commercial real estate in Chicago to China-based affiliates *for no consideration*.  The Honorable Mary F. Walrath, a District of Delaware bankruptcy judge, agreed

2

with Petitioner's objections to that transfer and refused to permit it, noting that she could not allow the transaction "in good conscience." Keeping the stay in place now, to prevent the turnover requested herein, will assist HNAI in its continuing efforts to evade Petitioner's Judgment collection efforts.

While Respondent's counsel at King & Wood & Mallesons LLP ("KWM") dismisses the coincidence, the fact remains that KWM's motion to withdraw was filed on the same day HNAI's subsidiaries revealed their plan to engage in a fraudulent conveyance of the Chicago property. And, despite KWM's assurances that HNAI was in the "final stages" of retaining new counsel, none has appeared for almost two months now. The stay prevents Petitioner from taking critical actions to enforce the Judgment, including taking discovery and other necessary measures aimed at satisfying the Judgment, and enables HNAI and its affiliates to continue to engage in conduct aimed at placing assets beyond the reach of Petitioner and this Court. Whether or not the withdrawal motion is part of HNA's scheme, it will, if granted, enable HNAI to further obstruct Petitioner's Judgment collection efforts.

The stay should therefore be lifted for the limited and sole purpose of hearing and deciding this motion, and the Court should order HNAI to turn over its membership interests in HNA North America directly to Petitioner.

## BACKGROUND

### I.  Petitioner Obtained a $185 Million Judgment Against HNAI

On April 30, 2022, JAMS arbitrator L. Priscilla Hall, a former Associate Justice of the State of New York Appellate Division, Second Judicial Department, awarded Petitioner $185,412,763.60 against HNAI (the "Arbitration Award"). Dkt. No. 1-2 at 6. On July 27, 2022, the Court confirmed the $185 million Arbitration Award (the "Judgment"). Dkt. No. 34. In doing so, Judge Koeltl agreed with Petitioner's concerns about the substantial risk that HNAI

3

would not pay the Judgment, and (i) granted Petitioner's motion for prejudgment attachment of assets, including HNAI's interest in HNA North America at issue here; (ii) imposed on HNAI a 14-day advance notice requirement for the sale of any assets in excess of $1 million in which HNAI has a direct or indirect interest; and (iii) lifted the automatic stay of enforcement of the Judgment to permit Petitioner to take immediate Judgment-enforcement discovery.  Dkt. Nos. 31, 32.  In granting in part Petitioner's request to lift the automatic stay, Judge Koeltl noted that "[HNAI] and its affiliates are in financial distress and that there is a substantial risk that [HNAI] cannot satisfy the judgment"  Dkt. No. 45.

## II.     HNAI Admitted That It Owns A 100% Direct Interest in HNA North America

During the proceeding to confirm the Arbitration Award, HNAI submitted a sworn declaration of its representative, Mr. Eric Lai, which attached an organizational chart reflecting that HNAI owns a 100% direct interest in HNA North America.  That organizational chart is copied below.



Dkt. Nos. 20, 20-1.

HNAI's 100% ownership interest in HNA North America has been repeatedly confirmed in discovery. For example:

- In HNAI's sworn interrogatory responses, HNAI attached an organizational chart reflecting its 100% direct ownership of HNA North America. Ressler Decl., Ex. A at 41.

- HNAI's corporate representative, Mr. Lai, admitted at his deposition that "HNA[I] is the 100 percent owner of HNA North America," and further testified that the organizational chart HNAI served with its interrogatory responses "reflects all the subsidiaries based on the review of the document by myself and my communication with the finance personnel." Ressler Decl., Ex. B at 133:13-17; 81:15-19.

5

- In response to two document subpoenas, HNA North America and its wholly owned subsidiary HNA Group North America LLC produced an organizational chart that again reflects HNAI's 100% ownership interest in HNA North America. Ressler Decl., Ex. C.

- In its response to an information subpoena, HNA North America's subsidiary, Palisades Training Center LLC, attested that "[a]t all times during the period November 19, 2018 to present" "[it] is wholly owned by HNA Group North America LLC, which is wholly owned by HNA North America LLC, which is wholly owned by HNA Group (International) Co., Ltd." Ressler Decl., Ex. D at 5-6.

HNA North America has two known valuable assets in the United States: (i) a wholly owned indirect interest in a 50-story trophy building in Chicago's popular West Loop neighborhood, at 181 West Madison Street (the "Chicago Property"); and (ii) a wholly owned indirect interest in a premiere conference center located in Rockland County, New York (the "New York Property"). Ressler Decl., Ex. B at 80:23-81:19; Ex. C; Ex. E at 11, n. 11; Ex. F at 3.

### III. HNAI And Its Affiliates Have Obstructed Petitioner's Efforts to Collect Its $185 Million Judgment

Judge Koeltl's concerns about the substantial risk that HNAI would not pay the Judgment were well-founded. To date, HNAI has not paid Petitioner any portion of the Judgment, despite promises of payment. Instead, HNAI and its affiliates repeatedly have attempted to hide HNAI's assets and obstruct Petitioner's collection efforts.

#### A. HNAI Admitted It Is Obstructing Petitioner's Judgment Collection Efforts

On September 13 and 15, 2022, Petitioner took the deposition of HNAI's 30(b)(6) corporate representative, Mr. Lai. Mr. Lai testified that while it would be difficult for HNAI to satisfy the entire $185 Judgment, HNAI's interest in HNA North America was its "most valuable asset." Ressler Decl., Ex. B at 27:13-21. Mr. Lai also testified that HNAI "will try its best to satisfy the relevant judgment, and . . . to cooperate with the court issued order." *Id*. at 24:15-18. When asked directly why HNAI has not transferred its interest in HNA North America to

6

Petitioner in order to partially satisfy the Judgment, Mr. Lai testified that it was "a management decision."  Ressler Decl., Ex. B at 34:5-11.

### B. HNAI And Its Wholly Owned Subsidiaries Recently Attempted to Fraudulently Convey A Valuable Asset

At the same time HNAI's management refused to turn over its interest in its "most valuable asset," its wholly owned subsidiaries attempted in October 2022 to effectuate a fraudulent conveyance of a substantial asset of HNAI and HNA North America—namely, their indirect interest in the Chicago Property—which has been the subject of a bankruptcy action in the U.S. Bankruptcy Court for the District of Delaware.  *See In re PWM Property Management LLC, et al.*, No. 21-11445 (MFW) (the "Bankruptcy").  On October 11, 2022, HNAI's wholly owned subsidiaries submitted a proposed amended bankruptcy plan that included the last-minute transfer of that Chicago Property—*for no consideration*—to its China-based affiliates.  Ressler Decl., Ex. G at 36.  In other words, the planned transfer would transfer ownership of the Chicago Property from the HNAI silo of HNA subsidiaries to a silo of HNA entities based in China, and beyond the reach of U.S. courts.  If effectuated, that fraudulent transfer would have enabled the HNA entities to shield their valuable Chicago Property from Petitioner's Judgment-collection efforts.

Petitioner filed an objection with the bankruptcy court and, at a hearing on November 2, 2022, Judge Walrath agreed with Petitioner that HNA's transfer of the Chicago Property to itself was not proposed in good faith, noting that the Court could not affirm the proposed plan "in good conscience."[2]  Ressler Decl., Ex. H; Ex. I at 38:2-6.

---

[2] KWM's December 1 letter (Dkt. No. 78 at 3) contains the demonstrably false assertion that Petitioner has "obtained control over the [Chicago Property]—and the substantial equity therein[.]"  All that happened with respect to the  Chicago property in the Bankruptcy is that Petitioner objected to HNA's proposed plan, and Judge Walrath agreed with Petitioner.  While Petitioner's judgment collection efforts will focus on obtaining the Chicago Property or equity in the building, that has not yet occurred in any way, shape or form.

7

### C. HNA And Its Affiliates Have Routinely Transferred Assets For No Consideration

The attempted transfer of the Chicago Property by one set of HNA entities to another is no aberration, as HNAI and its affiliates have a long history of making such transfers.

Media reports revealed that in or about September 14, 2021—just weeks before the October 31, 2021 Bankruptcy—HNA North America attempted, but failed, to sell the New York Property to a third party. Ressler Decl., Ex. J at 1. Notably, HNAI and its affiliates structured the proposed transaction so that the New York Property would first transfer to a Hong Kong affiliate, which would then sell the New York Property to the third party. *Id.* In other words, just prior to the Bankruptcy, HNAI and its affiliates attempted to transfer a significant asset and any sale proceeds therefrom outside the country.

Mr. Lai also testified at his 30(b)(6) deposition that HNAI and its affiliates frequently transferred cash between and among themselves for no consideration, no formal terms or documentation, and no requirement to have those assets returned or repaid. Specifically, he explained that such cash transfers had "no specific terms, [] written documents or conditions," and were "unsecured, interest free, and ha[d] no fixed repayment terms." Ressler Decl., Ex. B at 169:24-170:4; 183:21-184:5. These transfers were commonly made between HNAI and its affiliates, as the affiliates would "help [HNAI] to make some payments on [its] behalf" and "allocate some funds for [HNAI] to use when they ha[d] more money," and HNAI would similarly "help them to make payments" when it had "more money." Ressler Decl., Ex. B at 210:10-16. Mr. Lai further explained that HNAI was comfortable with these transfers because they constituted "financial support" from HNAI to its affiliates, and testified that some of HNAI's 320 affiliates, and potentially "thousands" of companies that it was related to through its directors or officers, would receive similar transfers from HNAI—transfers that demonstrate the

8

extent to which these affiliates are alter egos of each other.  Ressler Decl., Ex. B at 189:16-23; 185:3-16.

One such transfer, reflected in HNAI's 2020 Financial Statements, was a HKD $400 million (or, USD $51.4 million) "advance" to a company controlled by the former Chairman of HNA Group.  Ressler Decl., Ex. B at 198:2-198:10.  Mr. Lai explained that he did not know the purpose of that transfer, but that HNAI would "not have questions" about its purpose because the "company was held by the chairman of HNA Group."  Ressler Decl., Ex. B at 198:2-21.  According to Mr. Lai, some of these transfers, nominally referred to and disguised on the financial statement as "loans" or "advances," were reflected as losses on HNAI's financial statement because the Chinese court overseeing the restructuring of HNAI's parent company, HNA Group, did not recognize them as legitimate "loans" or "advances."  Ressler Decl., Ex. B at 179:7-180:23.

### D. HNAI and Its Wholly Owned Subsidiaries Have Attempted To Frustrate Discovery Concerning HNAI's Assets And Alter Ego Evidence

Since the Judgment was entered, Petitioner has diligently attempted to pursue discovery of HNAI and others to, among other things, locate HNAI's assets and uncover additional alter ego evidence.  Those discovery efforts have been met with obfuscation, obstruction, and delay.

As for HNAI, Mr. Lai was unprepared to testify on a number of the 30(b)(6) deposition topics to which HNAI agreed regarding HNAI's assets and alter ego, including: (i) the names of each of HNAI's and its affiliates' officers and directors; and (ii) the assets of HNAI and its affiliates as reported in HNAI's financial statements.  *See, e.g.,* Ressler Decl., Ex. B at 53:20-54:2; 88:2-9; 89:18-89:20; 100:18-101:9; Ex. K; Ex. L at 4.  At the conclusion of the deposition, Petitioner requested that HNAI produce the list of related parties that received or made transfers of cash with HNAI (discussed above), and its financial statements from 2018, 2019 and 2021.

*See, e.g.*, Ressler Decl., Ex. B at 239:21-240:20; Ex. M.  Counsel gave Petitioner numerous assurances, both verbally and in writing, that HNAI was working to produce these documents, and promised to produce some by a date certain, right up to the time counsel filed its withdrawal motion.  *See, e.g.*, Ressler Decl., Ex. M; Ex. N.  HNAI's responses to Petitioner's written discovery requests were similarly incomplete and HNAI failed to cure these deficiencies after Petitioner called attention to them.  Ressler Decl., Ex. L at 1-3.  The stay enables HNAI to continue to withhold crucial materials and not cure its discovery deficiencies.

Petitioner received similarly incomplete discovery responses from HNAI's U.S.-based subsidiaries and representatives, KWM and White & Case LLP.  Ressler Decl., Ex. O; Ex. P; Ex. Q.  These delay tactics persist and Petitioner continues to seek complete responses from these third parties.

### E. HNAI Has Further Delayed Petitioner's Judgment Collection Efforts Through Its Counsel's Withdrawal Motion

In the midst of Petitioner's collection efforts, and on the same day (October 11, 2022) that HNAI's wholly owned subsidiaries filed a plan in the Bankruptcy to effectuate a fraudulent transfer of the Chicago Property, KWM filed a motion by order to show cause to withdraw and sought a stay of the collection actions against HNAI until November 1, 2022 so that HNAI could purportedly retain replacement counsel.  Dkt. No. 50-54.

Judge Koeltl granted HNAI's request for a stay and extended the deadlines to November 11, 2022.  Dkt. No. 56.  As this Court knows, HNAI did not retain replacement counsel by the Court-ordered deadline.  Instead, KWM submitted a letter seeking a 30-day extension of the stay and time to find replacement counsel.  Dkt. No. 72.  The Court granted the extension and moved

the deadlines to January 5, 2023 (Dkt. No. 73, 74), based on KWM's representation that HNAI was in the "final stage" of engaging replacement counsel (Dkt. No. 72).[3]

Despite its promises since October 11, 2022 and Court orders to retain replacement counsel, HNAI has done no such thing. No substitute counsel has appeared to date, but KWM continues to seek to withdraw absent any replacement counsel, which would only serve to permit HNAI to continue to obstruct, obfuscate and delay here.

## ARGUMENT

**I.   Petitioner Has Made the Required Showing Under CPLR 5225(a) and 5240 for a Turnover of HNAI's Ownership Interests in HNA North America**

Federal Rule of Civil Procedure 69(a)(1) provides federal courts enforcing a judgment with all the enforcement tools provided by the state in which the court is located. *See* Fed. R. Civ. P. 69(a)(1) (federal court "must accord with the procedure of the state where the court is located"). In New York, Article 52 of the CPLR governs the enforcement and collection of money judgments. *See* N.Y. C.P.L.R. 5201-53; *see also Hyegate, LLC v. Boghossian*, 2022 WL 1488171, at *1 (S.D.N.Y. May 11, 2022).

Under CPLR 5225(a), a judgment creditor can recover money or property owned by a judgment debtor through a court order directing the turnover of such money or property to the judgment creditor, either directly or to the sheriff for sale.[4] To obtain such an order, the

---

[3] In its December 1 letter (Dkt No. 78), KWM argued that its statement in its November 11 letter (Dkt. No. 72) that HNAI was in the "final stages" of retaining replacement counsel was in reference to a different lawsuit, and was not intended to represent that HNAI would shortly retain counsel in this matter. That is nonsense. KWM made that assurance in the context of requesting a 30-day extension of the deadline to find new counsel, and it was clearly intended to give the Court the impression that new counsel would soon be appearing in this case. KWM continues its gamesmanship in its December 1 letter by advising the Court that HNAI and its affiliates retained replacement counsel in different lawsuits, while avoiding any commitment or assurance that HNAI is close to retaining new counsel in this action.

[4] CPLR 5225(a) provides as follows:

> (a) Property in possession of judgment debtor. Upon motion of the judgment creditor, upon notice to the judgment debtor, where it is shown that the judgment debtor is in possession or custody of money or other

11

judgment creditor need only establish that the judgment debtor owns and possesses the property at issue.  *See Allstar Marketing Group, LLC v. AFACAI*, 2021 WL 2555636, at *5 (S.D.N.Y. June 22, 2021) (noting that once a judgment creditor establishes that "the judgment debtor is in possession or custody of money or other personal property in which he has an interest," the court "shall order that the judgment debtor pay the money [] to the judgment creditor"); *In re BICOM NY, LLC*, 2021 WL 4467539, at *2-3 (Bankr. S.D.N.Y. Sept. 29, 2021) (noting that CPLR 5225(a) merely requires a showing that the targeted property "be in the judgment debtor's possession or control").

As confirmed recently by a New York appellate court, a judgment debtor's ownership interest in a limited liability company, such as HNAI's ownership interest in HNA North America, is considered property under New York law and is thus subject to turnover under CPLR 5225(a).  *See 79 Madison*, 203 A.D.3d at 590 (affirming turnover of judgment debtor's ownership interest in Delaware limited liability company under CPLR 5225(a)); *Matter of Gliklad v. Chernoi*, 129 A.D.3d 604 (1st Dep't 2015) (affirming turnover of judgment debtor's ownership interests in limited liability company under CPLR 5225); *see also Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 313-14 (2010) (establishing that "ownership/membership interests in [] out-of-state limited liability companies" are "clearly assignable and transferable" and thus qualify as executable property).

A turnover here is required because Petitioner has established all the necessary facts: HNAI has conceded its 100% ownership interest in HNA North America, and HNAI's 100%

---

personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.  Notice of the motion shall be served on the judgment debtor in the same manner as a summons or by registered or certified mail, return receipt requested.

ownership interest in an LLC is property subject to turnover as a matter of law.[5] *See 79 Madison LLC*, 203 A.D.3d at 590 (ordering turning over of judgment debtor's interest in Delaware LLC where "judgment debtor concedes he owns in an LLC"); *Mishcon de Reya New York LLP v. Grail Semiconductor, Inc.*, 2012 WL 5512240, at *1-2 (S.D.N.Y. Nov. 13, 2012) (noting that the turnover requirements of CPLR 5225 are "unequivocal" where a judgment debtor is in possession of property); *Cardew v. Gialanella*, 92 A.D.3d 1002 (3d Dep't 2012) (same).

This Court has broad discretion to order HNAI to turn over its interest in HNA North America directly to Petitioner, as opposed to turning it over to a sheriff for sale with the proceeds then delivered to the judgment creditor. *See* N.Y. C.P.L.R. 5240 ("The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure."); *Sirotkin v. Jordan, LLC*, 141 A.D.3d 670, 671-72 (2d Dep't 2016) (establishing that CPLR 5240 grants a court "broad discretionary power to alter the use of procedures set forth in CPLR article 52," including the discretion to issue "an order assigning or turning over the judgment debtor's membership interest in an LLC" under CPLR 5225(a)).

HNAI should be ordered to turn over its interest in HNA North America directly to Petitioner (as opposed to the sheriff) because that interest is difficult to value and HNAI and its affiliates have obstructed Petitioner's efforts to enforce the Judgment. *See Arrowhead Capital Fin. Ltd. v. Seven Arts Entm't, Inc.*, 2017 WL 3394604, at *5 (S.D.N.Y. August 8, 2017)

---

[5] This Court has jurisdiction to order HNAI to turn over its interest in HNA North America, a Delaware entity, because it has personal jurisdiction over HNAI, the judgment debtor. *See 79 Madison LLC*, 203 A.D.3d at 590 (affirming turnover of judgment debtor's ownership interest in Delaware limited liability company); *Gryphon Dom. VI, LLC v. APP Intl. Fin. Co., B.V.*, 41 A.D.3d 25, 31 (1st Dep't 2007) (establishing that a CPLR 5225(a) turnover order can reach property outside of New York as it "directs a defendant, over whom the New York court has jurisdiction, to bring its own property into New York"); *see also Hotel 71*, 14 N.Y.3d at 313-14. Indeed, the Court has already issued an order of attachment prohibiting HNAI from transferring its interest in HNA North America. Dkt. No. 32.

13

(ordering direct turnover of judgment debtor's shares of stock where such shares "may ultimately prove worthless"); *Colonial Sur. Co. v. Lakeview Advisors, LLC*, 93 A.D.3d. 1253, 1256 (4th Dep't 2012) (noting that CPLR 5240 may be used to expand Article 52 where "a debtor is attempting to frustrate a creditor's attempts at collection"); *Borges v. Placeres*, 2018 WL 6056173, at *3 (N.Y. Civ. Ct. Nov. 2, 2018) (same).

Here, after agreeing to prepare a witness to testify as to the value of its assets, HNAI tendered a witness who did not know how much HNAI's interest in HNA North America was worth and was unable to even provide an estimate of that value. Ressler Decl., Ex. B. at 30:18-31:14. Moreover, the record demonstrates a pattern by HNAI and its U.S. subsidiaries to frustrate Petitioner's Judgment enforcement efforts. HNAI's management refuses to turn over HNAI's interest in HNA North America (its most valuable asset) despite its representative's testimony that HNAI intends to satisfy the Judgment; HNAI and its wholly owned subsidiaries brazenly attempted to effectuate a fraudulent conveyance of the Chicago Property *for no consideration* to its China-based affiliates in connection with the Bankruptcy; HNAI and its affiliates have a history of transferring assets between and among themselves for no consideration and no requirement to have those assets ever returned or repaid; and HNAI and its wholly owned subsidiaries and representatives have stonewalled Petitioner's efforts to locate HNAI's assets and uncover additional alter ego evidence that would allow Petitioner to collect assets to satisfy the Judgment.

A recent case directly on point, with strikingly similar facts, is *79 Madison LLC v. Ebrahimzadeh*, *supra*. The judgment creditor in that case brought a turnover proceeding against the judgment debtor—which, like HNAI here, was a guarantor—to obtain the debtor's interest in a foreign LLC directly. *79 Madison*, 203 A.D.3d at 589. The court affirmed the trial court's

14

order directing the debtor to turn over its interest in the LLC directly to the judgment creditor. The court held that the judgment creditor met its burden of proving that the debtor "possessed" the membership interest under CPLR 5225(a) because the judgment debtor—like HNAI here—conceded ownership of the LLC.  *Id*. at 589-90.  The court also rejected the judgment debtor's argument that the only remedy under CPLR 5225 was to turn the LLC interest over to the sheriff.

> While CPLR 5225 (a) envisions that personal property other than money will be delivered to the sheriff, CPLR 5240 says that the court may modify the use of any enforcement procedure. The court providently exercised its discretion in ordering a direct turnover, given that the value of defendant's membership interest is uncertain and that defendant has obstructed plaintiff's efforts to pursue the judgment.

*Id*. at 590–91 (internal citation omitted).

Given that HNAI has admitted that it has a 100% ownership interest in HNA North America, the value of that interest is difficult to determine, and HNAI repeatedly has sought to frustrate and obstruct Petitioner's collection efforts, the Court should direct HNAI to turn over its interest in HNA North America directly to Petitioner, just as the court did *79 Madison LLC*, which presented a nearly identical situation.

II.     **The Stay Should Be Lifted To Effectuate The Turnover**

The Court should lift the stay for the sole and limited purpose of deciding this motion, which cannot be contested in good faith.  There is no dispute that HNAI owes the Judgment, or that HNAI owns the property in dispute—the only requirements for obtaining a CPLR 5225(a) turnover.  Lacking any legal or factual grounds to oppose this motion, KWM will have little if any work to do if it is ordered to respond.

Enforcing the stay to deny this straightforward turnover motion would only serve to reward HNAI and its subsidiaries' misconduct in seeking to obstruct and frustrate Petitioner's Judgment collection efforts.  HNA's attempt to transfer the ownership of the Chicago Property

15

away from HNA North America, for no consideration, underscores the risk Petitioner faces in potentially losing the opportunity to obtain HNAI's membership interest in HNA North America. While Judge Walrath held that she could not "in good conscience" approve HNA's scheme, continuing the stay to deny the turnover relief Petitioner seeks will give HNAI and its subsidiaries more time, and more incentive, to concoct new schemes to frustrate Petitioner's collection efforts—including with respect to HNAI's similar indirect ownership in the New York Property.

Petitioner therefore respectfully requests that HNAI be ordered to turn over its ownership interest in HNA North America directly to Petitioner.

## CONCLUSION

For the foregoing reasons, Petitioner's motion by order to show cause to lift the stay and direct HNAI to turn over its ownership interest in HNA North America directly to Petitioner should be granted.

DATED:  December 8, 2022                    Respectfully submitted,

                                            KASOWITZ BENSON TORRES LLP

                                            By: /s/ Mark P. Ressler
                                                Mark P. Ressler
                                                Paul M. O'Connor III
                                                1633 Broadway
                                                New York, New York 10019
                                                T: (212) 506-1700
                                                mressler@kasowitz.com
                                                poconnor@kasowitz.com

                                                Henry B. Brownstein
                                                1401 New York Ave., NW, Ste. 401
                                                Washington, D.C. 20005
                                                T:  (202) 760-3400
                                                hbrownstein@kasowitz.com

                                                *Attorneys for Petitioner and Judgment Creditor 245 Park Member LLC*