**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

245 PARK MEMBER LLC,

                           Petitioner,

   -against-

HNA GROUP (INTERNATIONAL)
COMPANY LIMITED,

                       Respondent.

Case No.: 1:22-cv-05136-JGK-OTW

**PETITIONER 245 PARK MEMBER LLC'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION BY ORDER TO SHOW CAUSE FOR CONTEMPT AND**
**A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

KASOWITZ BENSON TORRES LLP
Mark P. Ressler
Paul M. O'Connor III
Henry B. Brownstein
1633 Broadway
New York, New York 10019

February 2, 2023

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND .................................................................................................................... 5

I.    HNAI And Its Alter Ego Affiliates .................................................................................. 5

    A.   HNAI's Corporate Structure and Assets........................................................................ 5

    B.   HNAI Treats its Affiliates as Alter Egos .................................................................... 6

II.   Petitioner Obtains the $185 Million Judgment Against HNAI, the Attachment Order, And the Notice Order .................................................................................................... 9

III.  HNAI And Its Affiliates Have Obstructed Petitioner's Efforts To Collect Its $185 Million Judgment .................................................................................................................... 11

    A.   HNAI Admitted It Is Obstructing Petitioner's Judgment Collection Efforts ............... 11

    B.   HNAI and its Wholly Owned Subsidiaries Attempt to Fraudulently Convey Valuable Assets ................................................................................................................... 11

        i.    HNAI's Affiliates Attempted to Fraudulently Convey the Chicago Property Without Notice to Petitioner .................................................................................... 12

        ii.   HNAI and Palisades LLC Recently Attempted to Fraudulently Convey the Conference Center Without Notice to Petitioner ....................................................... 13

        iii.   HNAI's Prior Attempt to Sell the Conference Center ......................................... 14

        iv.   HNAI and Its Wholly Owned Subsidiaries Have Attempted to Frustrate Discovery Concerning HNAI's Assets and Alter Ego Relationships ......................................... 14

ARGUMENT ....................................................................................................................... 16

I.    This Court Has Jurisdiction Over Palisades LLC ........................................................... 16

II.   HNAI and Palisades LLC Should Be Held In Contempt Of Court .................................. 17

    A.   HNAI And Palisades LLC Are Each Other's Alter Egos ............................................. 19

III.  Petitioner Has Met All The Elements For A Temporary Restraining Order and Preliminary Injunction ...................................................................................................... 22

    A.   Petitioner Is Likely to Succeed on the Merits on its Motion for Contempt and its Pending Motion for a Turnover .................................................................................... 23

    B.   Petitioner Will Suffer Irreparable Harm Absent the TRO and Preliminary Injunction 23

C.   The Balance of the Equities Tips Decidedly in Petitioner's Favor............................... 24

D.   Petitioner Has Already Posted an Undertaking ........................................................... 25

CONCLUSION ................................................................................................................. 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*79 Madison LLC v. Ebrahimzadeh,*
   203 A.D.3d 589 (1st Dep't 2022) ..........................................................23

*Aquavit Pharms., Inc. v. U-Bio Med, Inc.,*
   2020 WL 1900502 (S.D.N.Y. Apr. 17, 2020)......................................18

*Brenntag Int'l Chemicals, Inc. v. Bank of India,*
   175 F.3d 245 (2d Cir. 1999).................................................................24

*Brown v. Peregrine Enterprises, Inc.,*
   2022 WL 17593321 (S.D.N.Y. Dec. 13, 2022) ....................................22

*Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC,*
   851 F. Supp. 2d 504 (S.D.N.Y. 2012)...................................................19

*Copper v. Cavalry Staffing, LLC,*
   2021 WL 3775288 (E.D.N.Y. July 27, 2021) .......................................20

*D'Arrigo Bros. Co. of New York v. Jefe Produce LLC,*
   2022 WL 161455 (S.D.N.Y. Jan. 18, 2022) .........................................24

*Greater Chautauqua Fed. Credit Union v. Marks,*
   600 F. Supp. 3d 405 (S.D.N.Y. 2022)...................................................23

*Jianjun Lou v. Trutex, Inc.,*
   872 F. Supp. 2d 344 (S.D.N.Y. 2012)...................................................21

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,*
   2006 WL 1206372 (S.D.N.Y. May 1, 2006) .........................................17

*Klein v. City of New York,*
   2011 WL 5248169 (S.D.N.Y. Oct. 28, 2011) .......................................21

*Levin v. Tiber Holding Corp.,*
   277 F.3d 243 (2d Cir. 2002)..................................................................18

*New York State Elec. & Gas Corp. v. FirstEnergy Corp.,*
   766 F.3d 212 (2d Cir. 2014)..................................................................20

*Paguirigan v. Prompt Nursing Employment Agency LLC,*
   286 F. Supp. 3d 430 (E.D.N.Y. 2017) ..................................................20

*Panix Promotions, Ltd. v. Lewis*,
    2004 WL 421937 (S.D.N.Y. Mar. 5, 2004) ..........................................................18

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
    369 F.3d 645 (2d Cir. 2004).............................................................................17, 22

*Platina Bulk Carriers Pte Ltd. v. Praxis Energy Agents DMCC*,
    2021 WL 4137528 (S.D.N.Y. Sept. 10, 2021).......................................................20

*In re Ryan*,
    2022 WL 4486736 (Bankr. E.D.N.Y. Sept. 27, 2022)...........................................20

*S. Katzman Produce Inc. v. Abraham Produce Corp.*,
    2022 WL 17805592 (S.D.N.Y. Dec. 19, 2022) ...............................................24, 25

*Scalia v. Paragon Contractors Corp.*,
    796 F. App'x 962 (10th Cir. 2019) ................................................................16, 17

*Take-Two Interactive Software, Inc. v. Zipperer*,
    2018 WL 4347796 (S.D.N.Y. Aug. 16, 2018) .......................................................24

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    587 F. Supp. 2d 594 (S.D.N.Y. 2008)...................................................................17

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*,
    602 F. Supp. 3d 358 (E.D.N.Y. 2022) ..................................................................23

*Zachman v. Hudson Valley Federal Credit Union*,
    2021 WL 1873235 (S.D.N.Y. May 10, 2021) .......................................................22

**Statutes**

28 U.S.C. § 636(e) ......................................................................................................1

**Other Authorities**

FRCP 65......................................................................................................................16

Petitioner 245 Park Member LLC ("Petitioner") respectfully submits this memorandum of law in support of its motion by order to show cause for (1) an order of contempt against respondent HNA Group (International) Company Limited ("HNAI") and Palisades Training Center NY LLC ("Palisades LLC"), which is the alter ego of and has acted in concert with HNAI, for violating this Court's July 25, 2022 Order (Dkt. No. 32, the "Notice Order") and July 25, 2022 Order of Attachment (Dkt. No. 31, the "Attachment Order"), and (2) a temporary restraining order and preliminary injunction against Palisades LLC prohibiting it from (i) signing or otherwise agreeing to a purchase and sale agreement (or similar agreement) for the Palisades Premier Conference Center, located at 334 Rte. 9W, Palisades, NY 10964, Rockland County, New York (the "Conference Center"), and (ii) transferring, conveying, gifting, pledging, assigning, or disposing of proceeds from any sale of the Conference Center, pursuant to Federal Rule of Civil Procedure ("FRCP") 65, 28 U.S.C. § 636(e), and this Court's inherent authority.[1]

## PRELIMINARY STATEMENT

Petitioner seeks to enforce two of this Court's prior orders and obtain a status quo injunction to prevent HNAI and its alter ego affiliate from transferring one of HNAI's last remaining assets through a sale of the Conference Center, scheduled to occur this Friday, February 3, 2023, so that Petitioner, as a judgment creditor, can maintain the ability to collect the $185,412,763.60 Judgment issued by this Court on July 27, 2022 (the "Judgment").

HNAI, the judgment debtor, is a Hong Kong entity and part of a failed and bankrupt Chinese conglomerate, HNA Group Company Ltd., whose principals are in jail in China on allegations of fraud and corruption and whose assets have in large measure been seized. Since it

---

[1] Petitioner has filed in support of this motion the Declaration of Mark P. Ressler, dated February 2, 2023, and the exhibits attached thereto ("Ressler Decl., Ex. __"), and the Declaration of Harrison Sitomer, dated February 2, 2023, and the exhibits attached thereto ("Sitomer Decl., Ex. __").

obtained the Judgment, Petitioner has pursued discovery against HNAI, other HNA entities, and third parties to locate assets that might be seized to satisfy the Judgment. Despite repeated attempts by HNAI and its affiliates to obstruct these discovery efforts, Petitioner has obtained substantial alter ego evidence establishing that HNAI treats its subsidiaries and affiliates as alter egos through undocumented intra-company transfers of cash with no-repayment terms, the sharing of directors and managers, and the complex restructuring of assets to evade creditors. HNAI's latest gambit—arranging the sale of the Conference Center—violates two of this Court's orders and mandates a finding of contempt and other appropriate relief.

In connection with the Judgment, this Court issued the Attachment Order, which, among other things, prohibits HNAI and all persons acting in concert with HNAI, from selling or transferring its assets. The Court also issued the Notice Order, which requires HNAI to provide Petitioner 14 days advance notice of the sale of any assets, in excess of $1 million, that are owned directly or indirectly by HNAI. The Notice Order requires that HNAI disclose to Petitioner the parties to any such sale, the amount of the sale, and the terms of the sale, and explicitly references the Conference Center by name. The proposed sale of the Conference Center clearly violates the Attachment Order. The proposed sale also clearly violates the Notice Order because Petitioner only just learned, on January 29, 2023—and not from HNAI—that Palisades LLC intended to sign a purchase and sale agreement on February 3, 2023 (the "PSA"). HNAI failed to provide the details required by the Notice Order.

It is no coincidence that the proposed sale of the Conference Center is occurring now, as Petitioner's Judgment collection efforts reach a watershed moment. In only a few weeks, on February 17, 2023, Petitioner's motion for a turnover, pursuant to CPLR 5225, will be fully briefed. If successful, that motion, which is currently before the Honorable Ona T. Wang, will

force HNAI to turn over to Petitioner HNAI's 100% indirect ownership interest in the Conference Center, making Petitioner the 100% owner of the Conference Center.  The scheme by HNAI and Palisades LLC to transfer ownership of the Conference Center to a third party now is an egregiously improper attempt to circumvent the judicial process, not to mention a violation of the Attachment Order and the Notice Order.

Under the well-settled three-prong test in this district, HNAI and Palisades LLC, as HNAI's alter ego and an instrument through which HNAI sought to evade the Attachment Order, are liable for contempt.  *First*, the orders are unambiguous.  Indeed, the Notice Order by its terms makes express reference to a sale of the Conference Center.

*Second*, proof of HNAI's and Palisades LLC's violations is clear and convincing.  HNAI's violation of the Notice Order is beyond dispute:  it provided Petitioner with no notice of the sale whatsoever.  Petitioner only learned of the sale five days before the PSA is to be signed, and only via an informal communication with an HNA affiliate that provided none of the details that the Notice Order requires, *i.e.*, the name of the parties, sale price, and terms.  Palisades LLC itself expressly acknowledged in the PSA that it is "subject to the Order of Attachment and the Notice Order," and therefore would need either a court order or Petitioner's permission to close the transaction.  The Attachment Order was likewise clearly violated, as HNAI and its affiliates are on the verge of transferring ownership of a property worth tens of millions of dollars to a third party.

*Third*, neither HNAI nor Palisades LLC has been diligent in complying or attempting to comply with these orders.  To the contrary, it is clear that the sale is a last-ditch effort to make an end-run around Petitioner's turnover motion, avoid the consequences of an adverse ruling on that motion, and take the issue out of Judge Wang's hands.

This is not the first time HNAI and its affiliates have sought to evade, frustrate, obstruct, and delay Petitioner's Judgment collection efforts.  For example, HNAI's corporate representative testified in September 2022 that even though its 100% direct interest in HNA North America LLC is its most valuable asset (though still not enough to satisfy the $185 million Judgment), HNAI made "a management decision" not to turn over that interest to Petitioner.  Then, on October 11, 2022—the day before HNAI obtained what amounted to a three-month stay of Petitioner's collection efforts—HNAI's wholly owned subsidiaries attempted to perpetrate a scheme to fraudulently transfer HNA North America's wholly owned indirect interest in a valuable real estate asset in Chicago's West Loop neighborhood, at 181 West Madison Street, to China-based affiliates *for no consideration*.  The Honorable Mary F. Walrath, a District of Delaware bankruptcy judge, agreed with Petitioner's objections to that transfer and refused to permit it, noting that she could not allow the transaction "in good conscience."

The Court should also issue injunctive relief to ensure that the Conference Center, or proceeds from any sale of the Conference Center, remain available to satisfy the Judgment. Petitioner has established the three factors for obtaining such relief: a likelihood of success on the merits, irreparable harm, and the equities tipping in Petitioner's favor.  In fact, this Court already found that the second and third elements existed when it issued a temporary restraining order against HNAI, and the Attachment Order.

Accordingly, the Court should hold HNAI and Palisades LLC in contempt of Court and issue a temporary and preliminary injunction prohibiting Palisades LLC from signing any purchase and sale agreement and from transferring, conveying, gifting, pledging, assigning, or disposing of proceeds from any sale of the Conference Center.

# BACKGROUND

## I.       HNAI And Its Alter Ego Affiliates

### A.       HNAI's Corporate Structure and Assets

HNAI is a company organized under the laws of Hong Kong, and has a registered office in Hong Kong.  ECF No. 1.1, at 3-4, Petition ¶ 7.

HNAI is a subsidiary of a large Chinese conglomerate, HNA Group Company Ltd. ("HNA Group").  Ressler Decl., Ex. A at 42.  At one time previously valued at more than $100 billion, with interests in aviation, real estate, banking, finance, hospitality, and other sectors around the world, the HNA Group conglomerate has, according to numerous media reports, been in free-fall for the last two years.  HNA Group rapidly liquidated some of its trophy assets—including an airline, large stakes in the Hilton hotel chain and Germany's Deutsche Bank, and numerous real estate holdings around the world—in an attempt to raise desperately needed cash and refocus its business.[2]  Ultimately, as widely reported, HNA Group filed for bankruptcy in China, its founders were imprisoned by Chinese regulators, and nearly $10 billion of its funds apparently were embezzled.[3]

Since then, HNAI has been reduced to a cost center for the HNA conglomerate and has no revenue.  Ressler Decl., Ex. B at 157.  However, HNAI owns 100% of HNA North America LLC ("HNA North America") (Ressler Decl., Exs. C, A at 42), which, according to the sworn testimony of HNAI's corporate representative, Mr. Eric Lai, is HNAI's "most valuable asset."  Ressler Decl.,

---

[2] *See* "Fallen Giant HNA to Be Restructured With Asset Sales Planned," *Bloomberg*, available at https://www.bloomberg.com/news/articles/2021-01-29/hna-says-restructure-sought-with-china-said-to-plan-asset-sales; *see also* "China Plans Sale of HNA's Non-Aviation Assets Via Trust," *Bloomberg*, available at https://www.bloomberg.com/news/articles/2021-01-29/china-said-to-plan-sale-of-hna-s-non-aviation-assets-via-a-trust.

[3] https://www.nytimes.com/2021/02/06/business/hna-was-once-chinas-biggest-dealmaker-now-it-faces-bankruptcy.html#:~:text=Its%20chairman%20and%20co%2Dfounder,collapse%20in%20recent%20Chinese%20history.

Ex. B at 27:13-22.  Although HNAI has dozens of other subsidiaries, Mr. Lai testified that there is little if any value in those assets because "[t]hey are basically shell companies."  Ressler Decl., Ex. B at 28:2-10.

What makes HNA North America HNAI's "most valuable asset" is its wholly owned, indirect interest in two pieces of commercial real estate in New York and in Chicago.  Ressler Decl., Ex. D.  Those assets are owned through the following subsidiaries.  HNA North America owns 100% of HNA Group North America ("HNA Group NA").  Ressler Decl., Ex. D.  HNA Group NA owns a 100% direct interest in Palisades LLC, a Delaware limited liability company that is authorized to do business in New York.  Ressler Decl., Ex. D; Sitomer Decl. ¶¶ 5-6.  Palisades LLC in turn owns the Conference Center.  Ressler Decl., Ex. D.

HNA Group NA also owns a 100% direct interest in PWM Property Management LLC ("PWM Property"), which in turn owns, through certain subsidiaries, a commercial office building at 181 W. Madison Avenue in Chicago (the "Chicago Property").  Ressler Decl., Exs. D, E at 3.  However, PWM Property and its shell U.S. subsidiaries have, since October 31, 2021, been in bankruptcy in the U.S. District Court for the District of Delaware.  *See In re PWM Property Management LLC, et al.*, No. 21-BK-11445 (MFW) (D. Del.).

Accordingly, the Conference Center is the only significant HNAI asset that is unencumbered.

### B.    HNAI Treats its Affiliates as Alter Egos

Despite the efforts of HNAI and its U.S. affiliates to obstruct Petitioner's discovery, the discovery produced to date contains a remarkable amount of alter ego evidence, including with respect to Palisades LLC.

Because HNAI is a cost center, it relies on its parent company, HNA Group, to send it money on an as-need basis "in order for it to operate."  Ressler Decl., Ex. B at 203-204.

Mr. Lai also testified at his 30(b)(6) deposition that HNAI and its affiliates frequently transferred cash between and among themselves for no consideration, no formal terms or documentation, and no requirement to have those assets returned or repaid.  Specifically, he explained that such cash transfers had "no specific terms, [] written documents or conditions," and were "unsecured, interest free, and ha[d] no fixed repayment terms."  Ressler Decl., Ex. B at 169:24-170:4; 183:21-184:5.  These transfers were commonly made between HNAI and its affiliates, as the affiliates would "help [HNAI] to make some payments on [its] behalf" and "allocate some funds for [HNAI] to use when they ha[d] more money," and HNAI would similarly "help them to make payments" when it had "more money."  Ressler Decl., Ex. B at 210:10-16. Mr. Lai further explained that HNAI was comfortable with these transfers because they constituted "financial support" from HNAI to its affiliates, and testified that some of HNAI's 320 affiliates, and potentially "thousands" of companies that it was related to through its directors or officers, would receive similar transfers from HNAI.  Ressler Decl., Ex. B at 189:16-23; 185:3-16.

According to Mr. Lai, some of these transfers, nominally referred to on the financial statement as "loans" or "advances," were reflected as losses on HNAI's financial statement because the Chinese court overseeing the restructuring of HNAI's parent company, HNA Group, did not recognize them as legitimate "loans" or "advances."  Ressler Decl., Ex. B at 179:7-180:23. HNAI produced consolidated financial statements for 2018 and 2019 (the 2021 financial statement is supposedly not yet complete) that reflect these "loans" and "advances."  Ressler Decl., Ex. F. As of August 1, 2022, at least five companies that are owned by directors or managers of HNAI were recipients of these "loans" provided by HNAI.  *Compare* Dkt. No. 36 [Garnishee Statement] *with* Ressler Decl., Ex. F at D-0222 [incomplete list of related companies].

One such transfer, reflected in HNAI's 2020 Financial Statements, was a HKD $400 million (or, USD $51.4 million) "advance" to a company controlled by the former Chairman of HNA Group. Ressler Decl., Ex. B at 198:2-198:10.  Mr. Lai explained that he did not know the purpose of that transfer, but that HNAI would "not have questions" about its purpose because the "company was held by the chairman of HNA Group."  Ressler Decl., Ex. B at 198:2-21.

HNAI also has significant overlap in its officers and directors with its related entities.  Mr. Lai testified at his 30(b)(6) deposition that the majority of HNAI's directors also served as directors for HNAI's parent, HNA Group, a number of HNAI's directors served as directors for HNAI's affiliates, and at least one of HNAI's directors, Mr. Chen Chao, had served as a director of a "majority" of HNAI's affiliates.  Ressler Decl., Ex. B at 57:1-64:12.  Mr. Lai further testified that while he was unsure if any other HNAI directors were also directors of HNAI's affiliates, "anything [is] possible."  Ressler Decl., Ex. B at 53:20-54:2.  When it comes to the HNA companies, it is indeed.

Palisades LLC, which is 100% owned by HNA Group NA, has the same relationship with HNA Group NA as HNAI has with its other affiliates.  Palisades LLC's bank accounts are directly accessible by HNA Group NA.  Ressler Decl., Ex. G at 10.  According to its discovery responses, Palisades LLC's "day-to-day administration" is "carried out" by HNA Group NA's "representative" who "oversee[s] the operations" and "ma[kes] business decisions on behalf of Training Center."  Ressler Decl., Ex. G at 6-8.  Palisades LLC has held only one board meeting between November 19, 2018 to the present, and that meeting, which appears to have been attended only by Palisades LLC's sole director and HNA Group NA's representative, was intended to provide "authorization for [Palisades LLC's director] to act in connection with [the Palisades property]."  Ressler Decl., Ex. G at 8.  And Palisades LLC received over $1.5 million of the same

type of "loans," made without "written loan agreements or promissory notes," "not subject to interest," and provided "as needed for [Palisades LLC's] operations and other business needs" from HNA Group NA that HNAI and its affiliates made with each other.  Ressler Decl., Ex. G at 12.

Punctuating the HNA entities' disregard of the corporate form, and as described below, Palisades LLC has acknowledged that any proceeds from the sale of the Conference Center would be subject the Attachment Order and consequently an asset of HNAI.

## II.    Petitioner Obtains the $185 Million Judgment Against HNAI, the Attachment Order,  And the Notice Order

On April 30, 2022, Justice Hall issued the Arbitration Award, totaling $185,412,763.60, in favor of Petitioner and against HNAI.  *See* Dkt. No. 30.  This Court confirmed the Arbitration Award, and denied HNAI's motion to vacate it, in a July 27, 2022 judgment (the "Judgment"). Dkt. No. 34.

Prior to entry of the Judgment, Petitioner sought and obtained a temporary restraining order against HNAI that, among things, "attach[ed] all property of [HNAI], including the proceeds of any sale of the [the Conference Center] . . . to secure and satisfy [the Arbitration Award].  *See* Dkt. No. 15.  During oral argument, the Court found that irreparable harm existed because, among other reasons, there was "a substantial risk that HNA will not be able to satisfy a $185 million judgment against it and that any assets it has can be dissipated," affiliates were in bankruptcy, and "several reports indicat[e] that sales of respondent's assets are imminent."  Ressler Decl., Ex. H at 24-25. The Court also found that the balance of the equities tipped in Petitioner's favor because, among other reasons, "HNA should not be allowed to escape the underlying arbitration award by dissipating assets."  Ressler Decl., Ex. H at 25.

In connection with the Judgment, the Court (i) issued the Attachment Order, (ii) issued the Notice Order, and (iii) lifted the automatic stay of enforcement of the Judgment to permit HNAI to take immediate Judgment-enforcement discovery.  Dkt. No. 45.

The Attachment Order applied not just to HNAI but also to "its agents, subdivisions, servants, officers, employees, and attorneys, and all persons in possession of the property and/or debts described above, and all persons acting in concert or participation with the foregoing, and all persons receiving actual notice of this Order of Attachment by personal service or otherwise." Dkt. No. 31 at 3.  HNAI and these other persons and entities were "PROHIBITED until further order of this Court from selling, assigning, transferring, or paying over to any person other than the Sheriff, interfering with, otherwise disposing of, or in any way affecting the value of any such property or debt, or directing or allowing any other person to do so . . . ."  *Id*.

The Notice Order, meanwhile, imposed the following notice obligation:

> Respondent shall provide Petitioner 14 days advance notice on the sale of any assets in excess of $1 million in which the Respondent has a direct or indirect interest—including any sale of [the Conference Center]—by informing Petitioner of (i) the date of the sale, (ii) the parties to the sale, and (iii) the terms of the sale.

Dkt. No. 32.

In the July 25, 2022 Memorandum Opinion and Order concerning the Notice Order (Dkt. No. 29), the Court again acknowledged "the substantial risk that HNAI could not satisfy the potential judgment."  Dkt. No. 29 at 10.  The Court explained that "several of respondent's United States affiliates [*i.e.*, PWM and its subsidiaries] are currently engaged in bankruptcy proceedings," and noted "the glaring lack of evidence from respondent concerning its assets and business operation is probative evidence of the substantial risk that the respondent could not satisfy a substantial judgment."  *Id*. at 8-9.

On August 24, 2022, HNAI filed a notice of appeal but thereafter dismissed it with prejudice.  *See* Dkt. No. 49.

### III.   HNAI And Its Affiliates Have Obstructed Petitioner's Efforts To Collect Its $185 Million Judgment

The Court's concerns about the substantial risk that HNAI would not pay the Judgment were well-founded.  To date, HNAI has not paid Petitioner any portion of the Judgment, despite promises of payment.  Instead, HNAI and its affiliates repeatedly have attempted to hide HNAI's assets and obstruct Petitioner's Judgment-collection efforts.

#### A.   HNAI Admitted It Is Obstructing Petitioner's Judgment Collection Efforts

On September 13 and 15, 2022, Petitioner took the deposition of HNAI's 30(b)(6) corporate representative, Mr. Lai.  Mr. Lai testified that while it would be difficult for HNAI to satisfy the entire $185 Judgment, HNAI's interest in HNA North America was its "most valuable asset."  Ressler Decl., Ex. B at 27:13-21.  Mr. Lai also testified that HNAI "will try its best to satisfy the relevant judgment, and . . . to cooperate with the court issued order."  *Id.* at 24:15-18. When asked directly why HNAI has not transferred its interest in HNA North America to Petitioner in order to partially satisfy the Judgment, Mr. Lai testified that it was "a management decision." Ressler Decl., Ex. B at 34:5-11.

#### B.   HNAI and its Wholly Owned Subsidiaries Attempt to Fraudulently Convey Valuable Assets

On December 8, 2022, Petitioner filed a motion in this Court seeking a turnover of HNAI's interest in HNA North America, which will be fully briefed by February 17, 2023.  If Petitioner is successful, it will become the indirect owner of all of HNAI's subsidiaries' assets, including the Conference Center and the Chicago Property.

With Petitioner on the precipice of finally being able to enforce the Judgment, HNAI and its alter ego affiliates attempted to fraudulently convey the Chicago Property and the Conference Center.

### i. HNAI's Affiliates Attempted to Fraudulently Convey the Chicago Property Without Notice to Petitioner

On the same day that HNAI's counsel filed a motion to stay collection actions against it (*see* Dkt. No. 52), which was granted the next day (Dkt. No. 56), its wholly owned subsidiaries attempted in October 2022 to effectuate a fraudulent conveyance of a substantial asset of HNAI and HNA North America—namely, their indirect interest in the Chicago Property—which, as noted above, has been the subject of a bankruptcy action in the U.S. Bankruptcy Court for the District of Delaware.  On October 11, 2022, HNAI's wholly owned subsidiaries submitted a proposed amended bankruptcy plan that included the transfer of that Chicago Property—*for no consideration*—to its China-based affiliates.  Ressler Decl., Ex. I at 36. The proposed transfer is depicted in the simplified organizational chart below:



As is plain, HNA Group would remain the ultimate owner of the Chicago Property; the planned transfer would simply transfer ownership of the Chicago Property from the HNAI silo of HNA subsidiaries to a silo of HNA entities based in China, and beyond the reach of U.S. courts.

Petitioner filed an objection with the Bankruptcy Court (Ressler Decl., Ex. J), and, at a hearing on November 2, 2022, Judge Walrath agreed with Petitioner that HNA's transfer of the Chicago Property to itself was not proposed in good faith, noting that the Court could not affirm the proposed plan "in good conscience."  Ressler Decl., Ex. K at 38:2-6.

### ii.   HNAI and Palisades LLC Recently Attempted to Fraudulently Convey the Conference Center Without Notice to Petitioner

This past Sunday, January 29, 2023, Petitioner learned through a representative of an HNAI affiliate that Palisades LLC had negotiated the sale of the Conference Center, that the buyer had already signed the PSA, and that Palisades LLC intended to counter-sign the agreement this Friday, February 3, 2023.  Sitomer Decl. ¶ 11.  Petitioner only received a copy of the PSA, which is dated January 2023, on February 2, 2023.  HNAI did not advise Petitioner of this imminent sale, let alone provide Petitioner with the Court-ordered 14-day advance notice by informing Petitioner "of (i) the date of the sale, (ii) the parties to the sale, and (iii) the terms of the sale."  Sitomer Decl. ¶ 12.

In the PSA, Palisades LLC specifically acknowledged the Notice Order and the Attachment Order.  Sitomer Decl., Ex. 2 at 21-22.  Furthermore, Palisades agreed "to instruct [HNAI] to comply with the Notice Order by giving the requisite notice required thereby."  Palisades LLC further acknowledge that it is currently "subject to the Order of Attachment and the Notice Order," and that it would be afforded additional time to close on the sale "to attempt to secure a court order permitting Closing proceeds to be used for the [certain] purposes and/or to attempt to negotiate acceptable terms with 245 Park Member LLC to permit the same."  *Id*. at 22.  In other words, Palisades LLC acknowledged that the sale proceeds are the property of HNAI and thus subject to the Attachment Order.

13

### iii.   HNAI's Prior Attempt to Sell the Conference Center

Media reports revealed that in or about September 14, 2021—just weeks before the October 31, 2021 Bankruptcy—HNA North America attempted, but failed, to sell the Conference Center to a third party.  Sitomer Decl., Ex. 1 at 1.  Notably, HNAI and its affiliates structured the proposed transaction so that the Conference Center would first transfer to a Hong Kong affiliate, which would then sell the Conference Center to the third party so that the sale proceeds would remain offshore.  *Id.*  In other words, just prior to the Bankruptcy, HNAI and its affiliates attempted to transfer a significant asset and any sale proceeds therefrom outside the country.

### iv.   HNAI and Its Wholly Owned Subsidiaries Have Attempted to Frustrate Discovery Concerning HNAI's Assets and Alter Ego Relationships

Since the Judgment was entered, Petitioner has made significant, timely efforts to pursue discovery of HNAI's assets and obtain alter ego evidence.  While Petitioner was able to obtain such evidence, its efforts have been met with obfuscation, obstruction, evasion, and delay, both by HNAI and its affiliates.

HNAI's responses to Petitioner's written discovery requests, including requests relating to HNAI's assets and alter ego relationships with its affiliates, were incomplete, and HNAI failed to cure these deficiencies after Petitioner called attention to them.  Ressler Decl., Ex. L.  HNAI's corporate representative, Mr. Lai, was unprepared to testify on a number of the agreed-upon 30(b)(6) deposition topics that are critical to ascertaining HNAI's alter-ego relationships, including: (i) the names of each of HNAI's and its affiliates' officers and directors; and (ii) the assets of HNAI and its affiliates as reported in HNAI's financial statements.  *See, e.g.*, Ressler Decl., Ex. B at 53:20-54:2; 88:2-9; 89:18-20; 100:18-101:9; Ex. M; Ex. L at 4.

At the conclusion of the deposition, Petitioner requested that HNAI produce the list of related parties that received or made transfers of cash to, from, or with HNAI (discussed above),

and its financial statements from 2018, 2019 and 2021.  *See, e.g.*, Ressler Decl., Ex. B at 239:21-240:20; Ex. N.  HNAI gave numerous assurances, both verbally and in writing, through its then counsel, King & Woods Mallesons ("KWM") that it would do so, but failed to produce any documents or even address any of its discovery deficiencies.  Ressler Decl., Ex. N.  On the day after HNAI's counsel promised the production, counsel filed a motion to withdraw as counsel and requested a stay of all collection efforts against HNAI.  Dkt. No. 56.  The stay was granted.  Dkt. No. 56.  After a months-long search for new counsel and with the stay in place that prevented from Petitioner from continuing to pursue its Judgment-collection discovery, Magistrate Judge Wang noted that HNAI "may not actually be interested in a smooth transition to new counsel."  Ressler Decl., Ex. O at 5:20-23.

Since then, HNAI has continued its attempts to delay or avoid producing this potential evidence of its alter-ego relationships.  It was only after Judge Wang threatened HNAI with contempt, sanctions, and default (Dkt. No. 84) that HNAI started partially complying with its discovery obligations.  But even then HNAI dragged its feet.  Judge Wang ordered HNAI to produce the list of "related companies"—numbering in the hundreds and potentially thousands—by January 21, 2023.  On January 21, 2023, HNAI produced a list that contained only twelve related companies.  Ressler Decl., Ex. F.  HNAI explained that the "employees who previously had knowledge of the related company list" were no longer working for HNAI, that HNAI no longer "maintain[ed] th[at] information," and that the "auditors who previously had related information had also left the auditor's firm."  Ressler Decl., Ex. P.  In other words, HNAI's delay appears to have resulted in critical alter ego evidence being lost or destroyed.

HNAI then claimed that it would "conduct another round of search[es] immediately" as soon as Chinese New Year ended, as "no employee is working this week in observance of the

[Chinese New Year]."  Ressler Decl., Ex. Q.  On January 31, after the end of Chinese New Year, HNAI asked for still more time to produce the list as "[its] contact person is currently on leave" until February 2, 2023.  Ressler Decl., Ex. Q.

Petitioner received similarly incomplete and evasive discovery responses from HNAI's U.S.-based subsidiaries.  Ressler Decl., Ex. R.   Both HNA North America and HNA Group NA refused to respond to a number of written discovery requests relating to HNAI's alter ego relationships, including requests seeking (i) transfers of assets between HNAI, HNA North America, and HNA Group NA, and any affiliates or related parties, including Palisades LLC, and (ii) the identities of the officers and directors of HNA North America and HNA Group NA.  Ressler Decl., Ex. R.  These delay tactics persist as Petitioner continues to seek complete responses from these third parties.  Ressler Decl., Ex. S.

## ARGUMENT

### I.    This Court Has Jurisdiction Over Palisades LLC

As a threshold matter, this Court has jurisdiction to order the requested contempt and injunction orders against Palisades LLC pursuant to FRCP 65(d)(2)(C) because HNAI and Palisades LLC are "in active concert or participation" with each other in connection with the sale of the Conference Center.  FRCP 65 applies to non-parties who "'receive actual notice' of the injunction to be bound by it."  *Scalia v. Paragon Contractors Corp.*, 796 F. App'x 962, 968 (10th Cir. 2019).  The purpose of extending the reach of a court's authority to non-parties is so that

> that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.   If entities or individuals are the instrumentalities through which [a] defendant seeks to evade an order or ... come within the description of persons in active concert or participation with [a defendant] in the violation of an injunction, then they are brought within scope of contempt proceedings. Accordingly, contempt orders are binding on entities that operate as

> merely a disguised continuance of the old employer. This analysis
> depends on an appraisal of [the entity's] relations and behavior.

*Id.* (internal citations and quotations omitted; modifications).

As shown above, Palisades LLC was aware of the Attachment Order and the Notice Order; Palisades LLC agreed to advise HNAI of its notice obligations under the Notice Order; and Palisades LLC acknowledged that the proceeds from the sale were subject to the Attachment Order.

## II.    HNAI and Palisades LLC Should Be Held In Contempt Of Court

"A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (quoting *King v. Allied Vision, Ltd.,* 65 F.3d 1051, 1058 (2d Cir. 1995)). The movant need not show that the alleged contemnor violated the court's orders willfully. *See Telenor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 615 (S.D.N.Y. 2008). Each of the three elements exist here.

*First*, this Court previously found that a materially identical attachment order was clear and specific. *See JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 2006 WL 1206372, at *2 (S.D.N.Y. May 1, 2006) (Koeltl, J.) (attachment order that prohibited non-movant "and all persons acting in concert with [non-movant] who have notice of this Order. . .[to] cause or permit the sale, transfer or disposition of any of [non-movant's] assets, whether held in [non-movant's] name or in the name of any other person or entity...." and further states that "no person or entity with notice of this Order shall assist defendant to sell, transfer or otherwise dispose of any of [non-movant's] assets, whether held in [non-movant's] name or in the name of any other

person or entity," was "unmistakably clear"). The Notice Order is likewise unambiguous and expressly applies to a sale of the Conference Center by name. *See* Dkt. No. 32 ("Respondent shall provide Petitioner 14 days advance notice on the sale of any assets in excess of $1 million in which the Respondent has a direct or indirect interest—including any sale of [the Conference Center]"). Palisades LLC has essentially admitted that these orders are unambiguous, having referenced them in the PSA and acknowledged that they govern the conduct of HNAI and Palisades LLC in connection the proposed sale of the Conference Center.

*Second*, the proof of HNAI's and Palisades LLC's non-compliance is without question "clear and specific," *i.e.*, there is "a reasonable certainty that a violation occurred." *See Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (citation and internal quotation marks omitted); *see also Panix Promotions, Ltd. v. Lewis*, 2004 WL 421937, at *8 (S.D.N.Y. Mar. 5, 2004) ("The Court does not credit [the contemnor's] theory as it is obviously contrary to both the spirit and the letter of the Order."). Here, HNAI of course was aware of the Court's orders and the imminent sale of the Conference Center and failed to comply. Palisades LLC itself expressly acknowledged in the PSA that it is currently "subject to the Order of Attachment and the Notice Order," and that it would be need to secure a court order for the proceeds to be transferred to third parties and/or to attempt to negotiate acceptable terms with Petitioner. Sitomer Decl., Ex. 2 at 22.

*Third*, HNAI and Palisades LLC were the opposite of diligent. They ignored both the 14-day notice obligation and the prohibition on transferring assets, despite expressly acknowledging their obligation to do so in the PSA, and Palisades LLC intends to sign the PSA this Friday. *See Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, 2020 WL 1900502, at *7 (S.D.N.Y. Apr. 17, 2020) ("[a] defendant is not reasonably diligent when he or she ignores the order or takes only superficial actions that strain both the language and intent of the order") (internal quotation marks omitted).

Moreover, the timing of the sale—after Petitioner filed the turnover motion, which will be fully briefed in a few weeks—confirms that HNAI and Palisades LLC are attempting to evade Judgment enforcement and the reach of this Court.

HNAI will likely attempt to defend its misconduct by pointing to the February 2, 2023 letter to the Court from its counsel, Jeffrey Cao, seeking guidance on whether it was required to provide notice of the sale prior to a closing. Dkt. No. 96. Any such argument should be rejected. That letter omits the fact that on that date, Petitioner's counsel requested a copy of the PSA at 4:41 PM—30 minutes before HNAI filed the letter. Ressler Decl., Ex. T. In other words, Mr. Cao's letter was a transparent after-the-fact attempt to create the appearance of diligence. There can be little doubt that but for Petitioner's 4:41 PM email requesting a copy of the PSA, HNAI would not have filed Mr. Cao's letter. Indeed, that letter merely states that *counsel* recently became aware of the sale, and says nothing about when *HNAI*—the party actually subject to the Court's orders—became aware of the sale.

### A.    HNAI And Palisades LLC Are Each Other's Alter Egos

HNAI will also likely attempt to hide behind the corporate form of Palisades LLC to argue that the Conference Center is not technically an asset of HNAI such that HNAI could not have violated the Court's orders. Of course, that is no defense to HNAI's violation of the Notice Order, which required HNAI to provide Petitioner 14 days advance notice of sales "of any assets in excess of $1 million in which Respondent has a direct or indirect interest." Dkt. No. 32.

Moreover, HNAI and Palisades LLC are each other's alter egos, just as HNAI treats its other wholly owned subsidiaries. As a result, Palisades LLC's assets should be treated as HNAI's. Where an alter ego's "corporate form [is] so disregarded" that it "primarily transact[s] [another entity's] business rather than [its] own corporate business," courts are allowed to pierce the corporate veil if the entity was used to commit a fraud. *Clipper Wonsild Tankers Holding A/S v.*

19

*Biodiesel Ventures, LLC*, 851 F. Supp. 2d 504, 509-10 (S.D.N.Y. 2012).  Courts typically consider the following equitable factors in determining whether such domination or disregard of the corporate form exists:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, *i.e.*, issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*In re Ryan*, 2022 WL 4486736, at *10 (Bankr. E.D.N.Y. Sept. 27, 2022) (quoting *Wm. Passalacqua, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)).

While there is "no set rule" as to how many of the above factors must be present to pierce the corporate veil, not every factor must be present.  *In re Ryan*, 2022 WL 4486736, at *10; *see also New York State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 225 (2d Cir. 2014) (allowing veil piercing based on showing of some of the above factors); *In re Ryan*, 2022 WL 4486736, at *9; *see also Platina Bulk Carriers Pte Ltd. v. Praxis Energy Agents DMCC*, 2021 WL 4137528, at *5 (S.D.N.Y. Sept. 10, 2021) (same); *Copper v. Cavalry Staffing, LLC*, 2021 WL 3775288, at *5 (E.D.N.Y. July 27, 2021) (allegations that defendant owned the company, controlled its business, and "intermingled the funds of the corporation" with his own funds sufficient); *Paguirigan v. Prompt Nursing Employment Agency LLC*, 286 F. Supp. 3d 430, 441 (E.D.N.Y. 2017) (alleging "intertwined relationships" among entities and the "ways in which those relationships were coordinated" to effectuate the harm sufficient).

20

Here, HNAI and Palisades LLC cannot dispute that the Conference Center, or proceeds from any sale of the Conference Center, should be treated as HNAI's asset. Palisades LLC has admitted as much in the  PSA by acknowledging that both it and HNAI were subject to the Attachment Order.

The alter ego relationship between HNAI and Palisades LLC is entirely consistent with HNAI's long history of disregarding the corporate form in its interactions with its affiliates. As shown above, HNAI relies on distributions from its affiliates to issue countless "loans" with no specific terms, written documents or conditions, interest, or fixed repayment terms.  HNAI's directors also served as directors for its parent, its subsidiaries, and many of its other related entities. Palisades LLC has the same relationship with its 100% owner, HNA Group NA. Palisades LLC's "day-to-day" business is managed by HNA Group NA's corporate representative. Ressler Decl., Ex. G at 6-7.  And Palisades LLC received over $1.5 million from HNA Group NA through the same unsecured "loans" that HNAI and its affiliates used.

Even if the Court does not find that Petitioner has fully established an alter ego relationship between HNAI and Palisades LLC sufficient to pierce the corporate veil (and it should so find), Petitioner has at a minimum established facts sufficient to support a temporary restraining order. *Jianjun Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 346 (S.D.N.Y. 2012) (enjoining the "withdrawal or transfer of any funds" from an account owned by potential alter ego to allow moving party to "present evidence that [the potential alter ego] is the successor or alter ego [of defendant]"; *Klein v. City of New York*, 2011 WL 5248169, at *10-11 (S.D.N.Y. Oct. 28, 2011) (party need only allege sufficient facts to "survive a motion to dismiss" to establish likelihood of success).

Petitioner's efforts to obtain still more alter ego evidence have been thwarted by HNAI's and its affiliates' obfuscation, evasion, and obstruction.  Thus, at a minimum, "serious questions

going to the merits of the dispute" exist that militate towards the granting of the temporary restraining order. *Brown v. Peregrine Enterprises, Inc.*, 2022 WL 17593321, at *2 (S.D.N.Y. Dec. 13, 2022) (likelihood of success if "serious questions going to the merits of the dispute" exist and the "balance of hardships tips 'decidedly' in the movant's favor") (internal citations and quotations omitted); *Zachman v. Hudson Valley Federal Credit Union*, 2021 WL 1873235, at *1 (S.D.N.Y. May 10, 2021) ("serious questions" exist where court "cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of granting the stay") (internal citations and quotations omitted).

The Court has broad discretion to fashion the appropriate remedy to enforce its orders. *See Paramedics Electromedicina Comercial, Ltda*, 369 F.3d at 657. Issuing a status quo injunction preventing Palisades LLC from transferring the proceeds from the sale of the Conference Center is not only appropriately tailored to HNAI's and Palisades LLC's violations of the Attachment Order and Notice Order, but is also necessary to ensure that, if successful, Petitioner's turnover motion will not be pyrrhic.

HNAI's only significant assets are its interests in the Chicago Property and the Conference Center, but the Chicago Property is in bankruptcy. If Petitioner cannot obtain the Conference Center, or proceeds from any sale of the Conference Center, the Judgment would be essentially worthless. Ensuring that assets remain available to partially satisfy Petitioner's Judgment is wholly appropriate under the circumstances.

## III. Petitioner Has Met All The Elements For A Temporary Restraining Order And Preliminary Injunction

Petitioner has satisfied each of the requirements for the Court to issue the requested status-quo injunction: likelihood of success on the merits or a sufficiently serious question going to the

merits to "make them a fair ground for litigation," irreparable harm, and the equities tip in Petitioner's favor. *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 602 F. Supp. 3d 358 (E.D.N.Y. 2022).

### A.    Petitioner Is Likely to Succeed on the Merits of its Motion for Contempt and Pending Motion for a Turnover

Petitioner is likely to succeed on the merits of this motion for contempt.  As shown above, Petitioner has shown that the Attachment Order and Notice Order are clear and unambiguous; HNAI's proof of non-compliance is clear and convincing; and that HNAI did not diligently attempt to comply with those orders in a reasonable manner.

Petitioner is also likely to succeed on the merits of its pending motion for a turnover of HNAI's membership interest in HNA North America pursuant to CPLR 5225(a).  Dkt. No. 82.  As detailed in that motion, which Petitioner incorporates by reference, a recent First Department decision squarely on point supports Petitioner's request for a turnover.  *See 79 Madison LLC v. Ebrahimzadeh*, 203 A.D.3d 589, 590 (1st Dep't 2022) (affirming turnover of guarantor' membership interest where, as here, "the value of defendant's membership interest is uncertain and that defendant has obstructed plaintiff's efforts to pursue the judgment").

### B.    Petitioner Will Suffer Irreparable Harm Absent the TRO and Preliminary Injunction

A showing of irreparable harm is the "single most important prerequisite" for the issuance of injunctive relief.  *Greater Chautauqua Fed. Credit Union v. Marks*, 600 F. Supp. 3d 405, 431 (S.D.N.Y. 2022).   This Court previously found in connection with the first TRO and the Attachment Order that Petitioner would suffer irreparable harm absent an order attaching the assets of HNAI because, among other reasons, there is "a substantial risk that HNA will not be able to satisfy a $185 million judgment against it and that any assets it has can be dissipated."  Ressler Decl., Ex. H at 24; *see also* Dkt. No. 29 at 9.  Discovery and HNAI's conduct since then has fully borne out the Court's assessment.

HNAI cannot satisfy the judgment and threatened filing for bankruptcy.  Ressler Decl., Ex. B at 36:11-16, 56.  HNAI has deliberately avoided satisfying any part of the Judgment by deciding not to transfer its "most valuable asset" in HNA North America to Claimant.  Ressler Decl., Ex. B at 34:5-11.  HNAI's wholly owned subsidiaries attempted in October 2022 to fraudulently convey the Chicago Property to its China-based affiliates for no consideration only to be rebuffed by Judge Walrath, who pointedly stated she could not affirm the planned transfer "in good conscience." Ressler Decl., Ex. K at 38:2-6.  And, the sale of the Conference Center is imminent.

For all these reasons, Petitioner will be irreparably harmed absent injunctive relief.  *See Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 250 (2d Cir. 1999) (insolvency is exception to rule that monetary harm is not irreparable); *Take-Two Interactive Software, Inc. v. Zipperer*, 2018 WL 4347796, at *9 (S.D.N.Y. Aug. 16, 2018) (finding irreparable harm where party appeared to be insolvent).

### C.    The Balance of the Equities Tips Decidedly in Petitioner's Favor

In granting the first TRO, this Court ruled that the TRO was "in the public interest because HNA should not be allowed to escape the underlying arbitration award by dissipating assets," that "[t]he proposed restraining order is limited in scope."  Ressler Aff., Ex. H.  Nothing has changed. In fact, this motion seeks to prevent HNAI from engaging in precisely the kind of asset dissipation about which the Court presciently warned.  HNAI should not be allowed to escape paying the $185 million Judgment by selling, or otherwise dissipating proceeds from any sale of, the Conference Center.

The proposed injunction, meanwhile, is limited in scope.  It is a status-quo injunction.  *See D'Arrigo Bros. Co. of New York v. Jefe Produce LLC*, 2022 WL 161455, at *2 (S.D.N.Y. Jan. 18, 2022) (balance in favor of movant where defendant's assets "may be dissipated"); *S. Katzman*

24

*Produce Inc. v. Abraham Produce Corp.*, 2022 WL 17805592, at *2 (S.D.N.Y. Dec. 19, 2022) (same).

### D. Petitioner Has Already Posted an Undertaking

In compliance with the Court's Attachment Order, Petitioner posted a bond for $25,000, which was a condition for securing the $185 million Judgment.  Dkt. Nos. 31, 33.  The Court should therefore not require Petitioner to post any additional undertaking since the requested injunction is in essence an extension of the Attachment Order.  The chance that Palisades LLC will be injured as a result of the injunction is slim to none.  Petitioner only seeks to attach the net proceeds, *e.g.*, the proceeds that exist after taxes and other legitimate closing expenses are paid. In all likelihood, Palisades LLC will be dissolved once the Conference Center is sold.

### CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that its motion for contempt and application for a status quo injunction concerning the Palisades LLC's assets, including any proceeds from the sale of the Conference Center, be granted.

Dated: New York, New York
February 2, 2023

KASOWITZ BENSON TORRES LLP
By: */s/ Mark P. Ressler*
_____

Mark P. Ressler
Paul M. O'Connor III
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
mressler@kasowitz.com
poconnor@kasowitz.com

Henry B. Brownstein
1401 New York Avenue, NW, Ste. 401
Washington, D.C. 20005
Telephone: (202) 760-3400
hbrownstein@kasowitz.com

*Attorneys for Petitioner 245 Park Member LLC*