**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

245 PARK MEMBER LLC,

        Petitioner,

    v.

HNA GROUP (INTERNATIONAL)
COMPANY LIMITED,

        Respondent.

Case No.: 1:22-cv-05136-JGK

**ORAL ARGUMENT REQUESTED**

---

### RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO
### PETITIONER'S MOTION FOR TURNOVER

KOBRE & KIM LLP

Jeremy O. Bressman
Geoffrey J. Derrick
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1210
Jeremy.Bressman@kobrekim.com
Geoffrey.Derrick@kobrekim.com

Jacob R. Kirkham (*pro hac vice* pending)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6460
Jacob.Kirkham@kobrekim.com

Jiajie Cao
Shengming Shi
Queens Crossing Business Center
136-20 38th Avenue, Suite 3D
Flushing, NY 11354
Telephone: (718) 939-4633
jcao@kktlawfirm.com
sshi@kktlawfirm.com

*Counsel for Respondent HNA Group*
*(International) Company Limited*

February 10, 2023

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

   A.   SLG Member Invests in the Property. ..........................................................................3

   B.   An Arbitration Panel Awards SLG Member the Final Award. ....................................4

   C.   SLG Member Satisfies the Judgment by Acquiring the 245 Park Avenue Office Tower. ...............................................................................................................................5

   D.   SLG Member Seeks to Enforce Against Other HNA Entities, Without Acknowledging It Has Already Recovered Its Damages. ...............................................................................6

   E.   HNA North America Asks the Delaware Court of Chancery for a Declaration that Turnover Is Prohibited. ...........................................................................................................8

   F.   HNA International Moves for Relief from the Judgment While SLG Member Pursues Yet More Assets. ......................................................................................................................8

ARGUMENT ................................................................................................9

   A.   The Court Should Address HNA International's Rule 60(b) Motion for Relief from the Judgment Before Deciding the Motion for Turnover. ...........................................................9

   B.   The Court Should Abstain from Ruling on the Motion for Turnover in Favor of the Delaware Proceeding. ...........................................................................................................10

   C.   Both Delaware and New York Law Prohibit Turnover of the Membership Interests. .14

   D.   If the Court Grants the Motion, it Should Direct Turnover to the Sheriff, Not SLG Member. ...............................................................................................................................18

CONCLUSION ................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*3 W. 16th St., LLC v. Ancona*,
  2013 WL 5459456 (Sup. Ct. N.Y. Cnty. 2013)....................................................................17
*79 Madison LLC v. Ebrahimzadeh*,
  203 A.D.3d 589 (1st Dep't 2022) ..............................................................................17, 18, 19
*ACE Investors, LLC v. Rubin*,
  561 F. App'x. 114 (2d Cir. Apr. 9, 2014) ..........................................................................9
*Am. Ins. v. Cuomo*,
  854 F.2d 591 (2d Cir. 1988) ...........................................................................................11
*Arrowhead Cap. Fin. Ltd. v. Seven Arts Entm't, Inc.*,
  2017 WL 3394604 (S.D.N.Y. Aug. 8, 2017) ....................................................................19
*Borges v. Placeres*,
  61 Misc. 3d 1220(A) (Civ. Ct. N.Y. Cnty. Nov. 2, 2018) ................................................19
*Burrell v. State Farm Fire & Cas. Co.*,
  2001 WL 797461 (S.D.N.Y. July 12, 2001) ....................................................................11
*Colonial Sur. Co. v. Lakeview Advisors, LLC*,
  93 A.D.3d. 1253 (4th Dep't 2012)....................................................................................19
*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ..........................................................................................................11
*Dittmer v. Cnty. of Suffolk*,
  146 F.3d 113 (2d Cir. 1998) ...........................................................................................11
*Exch. Comm'n v. Penn*,
  2021 WL 1226978 (S.D.N.Y. Mar. 31, 2021) ..................................................................9
*Frydman v. Verschleiser*,
  172 F. Supp. 3d 653 (S.D.N.Y. 2016) ..............................................................................11
*Gliklad v. Chernoi*,
  129 A.D.3d 604 (1st Dep't 2015) ......................................................................................18
*GMF ELCM Fund L.P. v. ELCM HCRE GP LLC*,
  2020 WL 2518000 (Del. Ch. May 18, 2020)....................................................................15
*Harris v. TD Ameritrade, Inc.*,
  2018 WL 1157802 (S.D.N.Y. Feb. 14, 2018) ..................................................................13
*Harrison v. Republic of Sudan*,
  309 F. Supp. 3d 46 (S.D.N.Y. 2018) ...............................................................................10
*Hooks v. City of New York*,
  2022 WL 16964010 (S.D.N.Y. Nov. 16, 2022)................................................................11
*Hotel 71 Mezz Lender LLC v. Falor*,
  14 N.Y.3d 303 (2010)........................................................................................................18
*In re Carlisle Etcetera LLC*,
  114 A.3d 592 (Del. Ch. 2015) .........................................................................................15
*Landis v. North American Co.*,
  299 U.S. 248 (1936) ........................................................................................................13
*Maricultura del Norte S. de R. L. de C.V. v. WorldBusiness Cap., Inc.*,
  2020 WL 747207 (S.D.N.Y. Feb. 14, 2020) ....................................................................9
*MLF3 NWJ LLC v. Signature Group Invs. LLC*,
  2017 WL 3979891 (Sup. Ct. N.Y. Cnty. 2017)................................................................17

ii

*Pegaso Dev. Inc. v. Moriah Educ. Mgmt. LP*,
   2020 WL 7080329 (S.D.N.Y. Dec. 3, 2020) ..................................................................10
*Pike Co., Inc. v. Universal Concrete Prod., Inc.*,
   284 F. Supp. 3d 376 (W.D.N.Y. 2018)..........................................................................13
*Sirotkin v. Jordan, LLC*,
   141 A.D.3d 670 (2d Dep't 2016).................................................................................17
*Sterling Nat'l. Bank v. Lenar Constr. LLC*,
   2014 WL 12886986 (Sup. Ct. Rockland Cnty. 2014) ..................................................17
*Sutton 58 Assoc. LLC v. Beninati*,
   2017 WL 2828694 (Sup. Ct. N.Y. Cnty. June 30, 2017) ....................................14, 16, 18
*Swergold v. Lifetime Corp.*,
   1993 WL 512905 (S.D.N.Y. Dec. 3, 1993) ..................................................................12
*TradeWinds Airlines, Inc. v. Soros*,
   2011 WL 309636 (S.D.N.Y. Feb. 1, 2011) ..................................................................14
*United States v. Pikna*,
   880 F.2d 1578 (2d Cir. 1989) .....................................................................................12
*Universitas Educ., LLC v. Nova Grp., Inc.*,
   2021 WL 4443962 (S.D.N.Y. Sept. 28, 2021) .............................................................10
*Wellbilt Equipment Corp. v. El-Gamal*,
   2021 WL 1711552 (Sup. Ct. N.Y. Cnty. Apr. 27, 2021)...........................................14, 16
*WorldCrisa Corp. v. Armstrong*,
   129 F.3d 71 (2d Cir. 1997) .........................................................................................13

Statutes

6 Del. C. § 18-703...............................................................................................................16
6 Del. C. § 18-703(a)....................................................................................................15, 16
6 Del. C. § 18-702(b)(1-2) ...............................................................................................15
6 Del. C. § 18-703(e) ........................................................................................................10
New York LLC Law § 603..................................................................................................18
New York LLC Law § 607..................................................................................................16
New York LLC Law § 607(a)..............................................................................................16
New York LLC Law § 607(b) ......................................................................................16, 18

Rules

CPLR 5201.........................................................................................................................18
CPLR 5225(a)...................................................................................................2, 14, 17, 19
CPLR 6202.........................................................................................................................18
Federal Rule of Civil Procedure 60(b)..........................................................................1, 8

## PRELIMINARY STATEMENT

Through its Motion for Turnover, ECF Nos. 80-82 ("Motion" or "Mot."), Petitioner 245 Park Member LLC ("SLG Member" or "Petitioner") asks the Court to require Respondent HNA Group (International) Company Limited ("HNA International") to turn over its membership (*i.e.*, equity) interests in HNA International's direct subsidiary, HNA North America, LLC ("HNA North America").  By its own admission, SLG Member seeks this turnover because it wants to pursue *other* assets owned by *other* direct and indirect subsidiaries of HNA North America.  In other words, SLG Member seeks to take over HNA North America so that it can strip it for parts, extracting the assets it deems most valuable and letting HNA North America and its subsidiaries otherwise continue on without proper management.  The Court should not permit SLG Member to take this highly disruptive action, and should deny the Motion, for several reasons.

*First*, as HNA International explained in its Motion for Relief from the Judgment, ECF Nos. 111-113, SLG Member's Judgment, ECF No. 34 ("Judgment"), has already been satisfied.  Specifically, SLG Member has already been accorded the relief for its purported damages through a separate, parallel bankruptcy-driven sale of the property at 245 Park Avenue, which SLG Member acquired using the same equity interests that it used to obtain the Judgment, and which netted SLG Member value above and beyond what it is seeking to recover now.  *See generally* ECF No. 112.  Accordingly, HNA International's motion, pursuant to Federal Rule of Civil Procedure 60(b), seeks relief from the Judgment on the grounds that the Judgment has been "satisfied" and that it would be inequitable to prospectively enforce the Judgment.  HNA International respectfully submits that the Court should first rule on its Rule 60(b) motion before addressing SLG Member's requested relief because the request for turnover, or indeed any other enforcement measures, would be moot if the Court grants HNA International's motion.

*Second*, the Court should abstain from deciding this motion in favor of the pending action that HNA North America filed in Delaware, which directly raises the same issue—namely, whether HNA International can be required to turn over its membership interests in a Delaware limited liability company ("LLC"). Both the *Colorado River* doctrine and principles of judicial economy warrant abstaining, because the same issue of Delaware law, involving relief relating to HNA North America, a Delaware LLC, can and will be decided in short order by a Delaware court. The Delaware court is the proper forum to decide this issue of Delaware law in the first instance.

*Third*, if the Court decides not to abstain, it should nevertheless deny the motion on the grounds that both Delaware and New York law prohibit the requested turnover of membership interests in an LLC. As noted, HNA North America is a Delaware LLC, and Delaware law is clear that a turnover of the membership interests in an LLC is impermissible. New York law likewise does not permit such a turnover. The Court should rule accordingly, and limit SLG Member's relief to a charging order, the exclusive remedy available to it under relevant law.

*Finally*, if the Court does order a turnover of HNA International's membership interests in HNA North America, it should not direct turnover to SLG Member, but rather order that any turnover be made to the New York City Sheriff's Office. CPLR 5225(a) requires that a turnover be made "to a designated sheriff," and directing turnover in this manner would allow the sheriff to publicly auction those interests to maximize their value. SLG Member's request that it be handed the membership interests would lead to a waste of judicial resources, as the parties would likely litigate the valuation of these interests and the extent to which they satisfied SLG Member's Judgment, whereas the turnover process would be substantially more efficient through a sheriff-led process.

**FACTUAL BACKGROUND**

A.      **SLG Member Invests in the Property.**

In May 2017, 245 Park JV LLC ("245 Park LLC") purchased the office tower at 245 Park Avenue (the "Property") for approximately US $2.21 billion.      Judgment at 3; Bankr. ECF No. 9 ¶ 7.[1]    Its original investor was HNA 245 Park Ave JV LLC ("HNA Member").  In June 2018, SLG Member made a preferred equity investment of US $148 million in 245 Park LLC, pursuant to an Amended and Restated Limited Liability Company Agreement, subsequently amended on November 19, 2018.   Judgment at 3,  ECF No. 113-1 ("LLC Agreement").

The LLC Agreement was the governing agreement between HNA Member and SLG Member.   The LLC Agreement stated that, based on its capital investment, SLG Member owned a 48.869% preferred member interest in 245 Park LLC.  LLC Agreement at 1.  SLG Member originally pledged an additional US $75 million for this interest, but HNA International reduced the purchase price and forgave that promise.  LLC Agreement at 1. Among its other terms, the agreement provided for a defined return on what was now SLG Member's approximately US $148 million investment.    SLG Member was to receive quarterly distributions up to the agreed-upon return amount by the defined redemption date (June 30, 2022), unless an event triggered earlier payment of the "redemption amount." LLC Agreement §§ 1.1, 3.1(b), 3.3.    Upon occurrence of a trigger event, the LLC

_____

[1] As explained below, on October 31, 2021, several HNA International affiliates filed a voluntary bankruptcy petition in the U.S. Bankruptcy Court for the District of Delaware, pursuant to Chapter 11 of the U.S. Bankruptcy Code.  *See In re PWM Property Management LLC et al.*, No. 21-11445 (Bankr. D. Del.).  HNA International will cite to docket entries from the bankruptcy proceeding with the identifier "Bankr. ECF No."

Agreement entitled SLG Member to a defined "Redemption Amount" of its US $148 million principal investment plus a contractually agreed upon return and a "make-whole premium." LLC Agreement §§ 3.3-3.4.

Payment of the "Redemption Amount" was the means for HNA Member to "redeem" SLG Member's preferred equity interests: "Redemption in Full" is defined as "redemption of the entire Preferred Member Interest by payment in full of the Redemption Amount." LLC Agreement § 1.1.   "Upon Redemption in Full, [SLG Member] shall have no further rights or obligations hereunder."  LLC Agreement § 3.3.  Under the LLC Agreement, SLG Member's remedy to collect the "Redemption Amount," once due, is its ability to force a sale of the Property, including to itself.  LLC Agreement § 11.4(a)(iii).

In connection with the LLC Agreement, HNA International signed a guaranty agreement in favor of SLG Member ("Guaranty").   ECF No. 113-2; *see also* LLC Agreement § 3.7.   The Guaranty provided SLG Member an alternative route, in the event the forced sale remedy was not available, to receive its bargained-for return on investment—*i.e.*, payment of the Redemption Amount, as well as of certain other costs and expenses.  *See* Guaranty § 1.3.

**B.**     **An Arbitration Panel Awards SLG Member the Final Award.**

On October 31, 2021, several HNA International affiliates, including HNA Member, filed a voluntary bankruptcy petition in the U.S. Bankruptcy Court for the District of Delaware.   HNA International has never filed a voluntary bankruptcy petition in U.S. Bankruptcy Courts pursuant to Chapter 11 of the U.S. Bankruptcy Code, and HNA International is not a party to the affiliates' proceeding.

SLG Member moved to dismiss the bankruptcy proceeding on the grounds that the debtors failed to seek its consent, were not in financial distress, and lacked a valid bankruptcy purpose when filing.   Bankr. ECF No. 78 ¶¶ 12, 17-18, 33-35 (Nov. 11, 2021).   On December 13, 2021, the bankruptcy court denied SLG Member's motion from the bench, rejecting each

of the grounds on which SLG Member sought to set aside the proceeding.    Bankr. ECF No. 248 at 153:14-159:7 (Dec. 13, 2021).

On December 21, 2021, having failed to derail the bankruptcy, SLG Member brought an arbitration against HNA International to enforce the Guaranty, and, through the arbitral award ("Final Award"), SLG Member was awarded the contractually agreed-upon Redemption Amount, its purported damages.  ECF No. 1-1 ¶ 26 & Exhibit E at 33-34.  Under the LLC Agreement, the Final Award "redeemed" (*i.e.*, extinguished) SLG Member's preferred equity interests.  *See* LLC Agreement § 3.3.

On July 25, 2022, the Court entered an order confirming the Final Award in the amount of US $185,412,763.60, and, on July 27, 2022, entered the Judgment in favor of SLG Member. ECF Nos. 30 & 34.

**C.    SLG Member Satisfies the Judgment by Acquiring the 245 Park Avenue Office Tower.**

After securing the Final Award, SLG Member bid US $40 million of the same equity interests, plus cash, to acquire full ownership of the Property in the bankruptcy of HNA International's affiliates.  Bankr. ECF No. 762 ¶ 2 (July 9, 2022).  As noted above, these "preferred equity interests" had already been converted into the Final Award, and thus were redeemed (*i.e.*, extinguished).  Because SLG Member was the only party that was able to bid using these equity interests, it was the only party that put in a qualifying bid.  Thus, SLG Member's bid was successful, and SLG Member purchased the Property in September 2022. Bankr. ECF No. 1002 (September 12, 2022).

Through this parallel track in the bankruptcy proceeding, SLG Member netted equity that made it whole, and it thus no longer has suffered any of the damages which served as the basis for the Final Award.  The most recent appraisal of the Property (on March 21, 2022) valued it at US $2 billion.  *See* ECF No. 113-3 at 4.  Based on the Property's net operating income and its capitalization rate, the Property's value is expected to appreciate far above US

$2 billion—to approximately US $2.76 billion—by 2029.  *Id.* at 86.  In SL Green's 10-Q filing for the period ended September 30, 2022, it also valued the Property at approximately $1.96 billion.[2]  SLG Member's bid included the US $40 million in already converted equity interests and approximately US $79 million in cash and to purchase the Property, which at the time had US $1.768 billion in mortgage and mezzanine debt.  *See* Bankr. ECF No. 762 at 3 at n.4.  Thus, SLG Member was able to purchase an asset with a *current* positive value of US $192 million (and a significantly higher value in the future).  Including what it received in cash reserves, SLG Member has gained nearly US $195 million—approximately US $9.5 million *more* than the Final Award.  *See generally* ECF 112 at 11-12.[3]

**D.    SLG Member Seeks to Enforce Against Other HNA Entities, Without Acknowledging It Has Already Recovered Its Damages.**

Despite having already been made whole through the parallel bankruptcy proceeding, SLG Member turned back to its arbitration strategy and has continued in its attempts to recover under the Judgment, including by pursuing HNA International's interests in HNA North America through this Motion.

SLG Member distorts the record in asserting that HNA International and its subsidiaries have "obfuscate[ed], obstruct[ed], and delay[ed]" its discovery and enforcement efforts (Mot. at 6-11):

- As SLG Member notes, HNA International produced a corporate representative, Eric Lai, to testify on SLG Member's requested topics.  But SLG Member takes his testimony out of context.  Looking at that testimony in

---

[2]  United States Securities and Exchange Commission, SL Green Realty Corp. Form 10-Q, at 32 (Nov. 4, 2022), *available at* https://tinyurl.com/yh6cjbvk.

[3]  Additional background relevant to SLG Member's prior satisfaction of the Judgment is described in HNA International's Memorandum of Law in Support of its Motion for Relief from the Judgment.  *See* ECF No. 112.

its proper context, it is clear that counsel for SLG Member was asking Mr. Lai to take a position on a legal issue that, as a non-lawyer, Mr. Lai was not prepared to do—that is, whether HNA International would (and could) turn over its membership interests in HNA North America, the precise legal issue posed to this Court. *See generally* Declaration of Geoffrey J. Derrick ("Derrick Decl."), Exhibit 1 (Transcript of Deposition of Eric Lai (Sept. 15, 2022)) at 33:1-47:9. Moreover, Mr. Lai raised in that deposition the exact same concern that HNA International raised in its Rule 60(b) motion—that SLG Member's Judgment had already been satisfied through the bankruptcy. *See* Derrick Decl., Exhibit 1 at 24:19-25:3 ("[O]ur company believes that . . . [through the approved bankruptcy] plan, the 245 Park [SLG Member] can convert its equity into a hundred percent of the ordinary shares, and we believe that that has already satisfied the arbitral award or judgment.").

- SLG Member ignores the fact that the proposed plan regarding the 50-story building in Chicago (the "Chicago Property") was submitted to the Delaware bankruptcy court for approval. This was done publicly, on notice to SLG Member, and, as it admits, SLG Member had an opportunity to object to the plan, as it did. *See* Mot. at 7. There was nothing "fraudulent" about the proposed plan.

- The transfers from HNA International to other HNA affiliates that SLG Member describes (Mot. at 8-9) have no connection to SLG Member's Judgment and its enforcement thereof. For example, SLG Member points to an advance described in HNA International's 2020 financial statement (Mot. at 9)—years before SLG Member brought the underlying arbitration. Furthermore, SLG Member's questioning at the deposition focused on specific transfers that HNA International made in 2019 and 2020—again, years before the arbitration award—and Mr. Lai accurately stated that HNA International did make legitimate transfers at times to provide financial support, to address operational needs, and for investment purposes. *See generally* Derrick Decl., Exhibit 1 at 170:10-173:2, 176:25-210:22. SLG Member's Motion elides this fact, giving the impression that the transfers described were made *after* the Judgment. SLG Member has put forward no evidence or deposition testimony indicating that HNA International made any transfers to evade enforcement of the Judgment, which was not entered until July 2022.

Furthermore, on September 16, 2022, SLG Member filed for recognition of the Judgment in Delaware Superior Court. *245 Park Member LLC v. HNA Group (International) Company Limited*, No. N22J-02644 (Del. Super. Ct.). Del. Sup. DE 1. The Delaware Superior Court directed HNA North America[4] to disclose "all money, stock, goods, credits and effects, stocks, bonds, personal property, and/or real estate belonging to the defendant [HNA

---

[4] SLG Member concedes that HNA North America is a Delaware entity. Mot. at 13 n.5.

International] you currently possess or as currently appears on your books."  Del. Sup. DE 6 (October 18, 2022).  On November 15, 2022, HNA North America responded that it holds no such assets.  Del. Sup. DE 8 (November 15, 2022).

Undeterred, SLG Member immediately raced back to this Court and filed its Motion, seeking turnover of HNA International's interest in HNA North America.  SLG Member concedes in its papers that the real target of its campaign is what it describes as two "valuable assets" in the United States: 1) an indirect interest in the Chicago Property; and 2) an indirect interest in a conference center in Rockland County, New York (the "Palisades Property").  Mot. at 6.

### E.   HNA North America Asks the Delaware Court of Chancery for a Declaration that Turnover Is Prohibited.

After SLG Member returned to this Court seeking the prohibited turnover, on December 19, 2022, HNA North America sought a ruling from the Delaware Court of Chancery that turnover is not permitted under applicable, black letter Delaware law. *See* Derrick Decl., Ex. 2 Verified Complaint for Declaratory Judgment, *HNA North America, LLC v. 245 Park Member LLC*, No. 2022-1167-JTL (Del. Ch. Dec. 19, 2022).  SLG Member has submitted the "cover motion" of a motion to dismiss the action under Delaware procedure but has not yet briefed its motion or explained its justification.  *See* Derrick Decl., Ex. 3 (Defendant's Motion to Dismiss or Stay Plaintiff's Verified Complaint, *HNA North America, LLC v. 245 Park Member LLC*, No. 2022-1167-JTL (Del. Ch. Jan. 30, 2023)).  HNA North America expects that motion to be fully briefed within 65 days or less and will seek to expedite the proceedings.

### F.   HNA International Moves for Relief from the Judgment While SLG Member Pursues Yet More Assets.

On February 3, 2023, HNA International filed a motion for relief from the Judgment, pursuant to Federal Rule of Civil Procedure 60(b).  In its motion, HNA International explained, as noted above, that SLG Member already has recovered its purported damages and all that it

is entitled to under the parties' agreement.  ECF Nos. 111, 112.  A favorable ruling on the Rule 60 motion would moot this Motion, as well as any further Judgment enforcement efforts.

## ARGUMENT

The Court should decline to order the relief SLG Member requests for numerous reasons.  First, the Court should (at least temporarily) defer consideration of the Motion until after it has considered and ruled on HNA International's Motion for Relief from the Judgment, ECF Nos. 111-113.  Furthermore, the Court should abstain from considering the Motion to permit the Delaware Court of Chancery to first address the identical dispositive issue of Delaware law that is before both courts.  If the Court does consider the merits of SLG Member's Motion, it should, in any event, deny the request because both Delaware law and New York law prohibit for the turnover of the interests in a Delaware-formed LLC.  Finally, should the Court grant SLG Member's motion, the Court should order that any turnover be made to the sheriff, not directly to SLG Member, to permit an orderly auction of the membership interests.

### A.     The Court Should Address HNA International's Rule 60(b) Motion for Relief from the Judgment Before Deciding the Motion for Turnover.

When faced with both a motion for relief from a judgment under Rule 60 and a motion seeking to enforce that same judgment, courts consistently first address the Rule 60 motion. *See, e.g., Maricultura del Norte S. de R. L. de. C.V. v. WorldBusiness Cap., Inc.*, 2020 WL 747207, at *4 (S.D.N.Y. Feb. 14, 2020) ("It is first necessary to address each Rule 60 motion in turn before deciding the proper value of the turnover order . . . ."); *Sec. & Exch. Comm'n v. Penn*, 2021 WL 1226978, at *1, *14 (S.D.N.Y. Mar. 31, 2021) (deciding turnover motion after ruling on Rule 60 motion), *aff'd sub nom.* 2022 WL 2517218 (2d. Cir. July 7, 2022).  This sequencing makes sense because whether a judgment has already been satisfied or whether continued application of the judgment would be inequitable is a gating issue to deciding whether enforcement of that judgment via turnover is proper.  Indeed, a turnover order itself may be challenged pursuant to Rule 60.  *See ACE Investors, LLC v. Rubin*, 561 F. App'x. 114

(2d Cir. Apr. 9, 2014) (considering challenge to turnover order under Rule 60); *Universitas Educ., LLC v. Nova Grp., Inc.*, 2021 WL 4443962, at *8 (S.D.N.Y. Sept. 28, 2021) (same); *Harrison v. Republic of Sudan*, 309 F. Supp. 3d 46, 47 (S.D.N.Y. 2018) (same).

Here too, the Court should address HNA International's Rule 60(b) motion before turning to SLG Member's Motion.  A favorable ruling on the Rule 60(b) motion would moot the request for turnover, and indeed any further judgment enforcement.  *See Pegaso Dev. Inc. v. Moriah Educ. Mgmt. LP*, 2020 WL 7080329, at *5 (S.D.N.Y. Dec. 3, 2020) (payment of funds sought in judgment enforcement "moots [a] turnover motion.").

Sequencing the Rule 60(b) motion first will not jeopardize SLG Member's enforcement efforts or cause undue delay.  Briefing on HNA International's Rule 60(b) motion will be complete by March 6, 2023.  *See* ECF No. 114.  In its Motion, SLG Member notes that the only two assets it is ultimately targeting are the Palisades Property and the Chicago Property. *See* Motion at 6.  There is no concern about dissipation as to either property.  As to the Palisades Property, the Court recently enjoined any sale of that Property.  ECF No. 108.  And as to the Chicago Property, as SLG Member itself notes, that property is bound up in a bankruptcy process, and thus action taken with respect to that party will be subject to approval by the bankruptcy court.  Mot. at 7.

**B.**   **The Court Should Abstain from Ruling on the Motion for Turnover in Favor of the Delaware Proceeding.**

Furthermore, the Court should abstain from addressing SLG Member's Motion.  The Motion requires the application of black-letter Delaware law, which is most effectively addressed by a Delaware court. Delaware's LLC law prohibits the turnover of membership interests in an LLC: "No creditor of a member or of a member's assignee shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company." 6 Del. C. § 18-703(e).  For that reason, on December 19, 2022, HNA North America sought a declaration from the Delaware Court of Chancery that

Delaware law prohibits HNA International—HNA North America's parent—from turning over its membership interests in HNA North America, which would have the deleterious effect of undermining the affairs and management of the LLC.

Under the doctrine of *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976), "a federal court may abstain from exercising jurisdiction over a federal case where certain 'exceptional circumstances exist which justify dismissal in deference to a pending state court proceeding.'" *Hooks v. City of New York*, 2022 WL 16964010, at *8 (S.D.N.Y. Nov. 16, 2022) (JGK) (quoting *All. of Am. Ins. v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1988)). In *Colorado River* "the Supreme Court held that abstention can be proper in certain situations involving the contemporaneous exercise of concurrent jurisdiction for reasons of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Burrell v. State Farm Fire & Cas. Co.*, 2001 WL 797461, at *4 (S.D.N.Y. July 12, 2001) (JGK) (quoting *Colorado River*, 424 U.S. at 817). "Before a court evaluates the appropriateness of abstention under *Colorado River*, it must make a threshold determination that the federal and state court cases are 'parallel.' Proceedings in state and federal court are 'parallel for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.'" *Id.* (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).

These factors are met here. SLG Member and HNA International are parties to both proceedings. *See* Derrick Decl., Ex. 2 (Verified Complaint for Declaratory Judgment, listing HNA International as nominal defendant). Although HNA North America, the plaintiff in the Delaware case, is not a party to this proceeding, it is the subject of SLG Member's instant turnover motion, and, its direct parent, HNA International, is the respondent here. *See Frydman v. Verschleiser*, 172 F. Supp. 3d 653, 663 (S.D.N.Y. 2016) (declining to abstain but noting "[p]erfect symmetry of parties and issues is not required.").

Most important, the Delaware proceeding involves the same issues of Delaware Law and requested relief. HNA North America's Complaint in the Delaware action squarely presents the same legal issue that the Court must address here in deciding SLG Member's turnover motion: whether Delaware law prohibits turnover of HNA International's membership interests in HNA North America, a Delaware LLC. *See* Derrick Decl., Ex. 2.

In addition, courts are asked to balance certain additional, discretionary factors in applying the *Colorado River* doctrine: "(1) whether the controversy involved a res over which one of the courts has assumed jurisdiction, (2) whether one forum is more inconvenient than the other for the parties, (3) whether staying the federal action will avoid piecemeal litigation, (4) whether one action is significantly more advanced than the other, (5) whether federal or state law provides the rule of decision, and (6) whether the federal plaintiff's rights will be protected in the state proceeding.'" *Frydman*, 172 F. Supp. 3d at 663 (quoting *United States v. Pikna*, 880 F.2d 1578, 1582 (2d Cir. 1989)).

Whereas certain of these factors are neutral (neither favoring a decision nor disfavoring abstention), factors (3) and (5) decidedly favor abstention in the instant case. The question presented in both cases is one of Delaware law—best addressed to a Delaware court—and deciding the turnover motion now risks wasting judicial resources if the Delaware Court reaches a contrary conclusion. *See Swergold v. Lifetime Corp.*, 1993 WL 512905, at *3 (S.D.N.Y. Dec. 3, 1993) ("Unsettled questions of Delaware state law should be decided by Delaware state courts . . . . Plaintiffs have not shown that the Delaware Action will not adequately protect the rights of plaintiffs, and since plaintiffs may be bound by its determination, this action is potentially superfluous.").[5]

---

[5] This Court need not stay this entire proceeding to abstain from deciding the instant Motion under *Colorado River*. "Although the federal appellate courts have not ruled on the propriety

Furthermore, factor (4)—the respective progress of the proceedings—also favors abstention here.  This factor is to be applied flexibly and pragmatically.  *See, e.g.*, *Pike Co., Inc. v. Universal Concrete Prod., Inc.*, 284 F. Supp. 3d 376, 390 (W.D.N.Y. 2018) (holding jurisdictional priority factor "is to be applied in a pragmatic, flexible manner . . . [and] priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.").  Although, admittedly, the declaratory judgment action was filed after the turnover motion, this was *only necessary* because of the turnover motion.  After SLG Member sought to circumvented black-letter Delaware law and through its application to this Court, HNA North America properly sought a ruling from the Delaware Court that under Delaware law, the requested turnover of an LLC interest is prohibited.  As noted above, HNA North America has sought expedited resolution of the discrete issue before the Delaware court and expects a decision in the near term. *See supra* at 12-13.  Therefore, abstention is warranted.

The Court also has the inherent authority "to control the disposition of the [cases] on its docket," and to stay or otherwise sequence an action.  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (noting that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see also, e.g., WorldCrisa Corp. v.*

---

of staying some but not all of a plaintiff's claims while awaiting decision in a parallel state court case, district courts outside of our Circuit have 'repeatedly found partial stays permissible.'"  *Harris v. TD Ameritrade, Inc.*, 2018 WL 1157802, at *6 & n.6 (S.D.N.Y. Feb. 14, 2018) (staying claim "since the decision of the Nevada Supreme Court may be wholly dispositive of plaintiff's claims.").

*Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (noting court's inherent power to stay an action); *TradeWinds Airlines, Inc. v. Soros*, 2011 WL 309636, at *3 (S.D.N.Y. Feb. 1, 2011) (same).

Here, at the very least, a stay as to this Motion is warranted.  HNA International is not asking the Court to stay the entire proceeding.  Rather, it asks for the more limited relief that the Court defer ruling on the request for turnover until the Delaware Court has addressed the identical issue of Delaware law.  This limited stay is warranted in these circumstances.

### C.   Both Delaware and New York Law Prohibit Turnover of the Membership Interests.

If the Court reaches the merits of the Motion, it should deny the Motion on the basis that Delaware law prohibits turnover of membership interests in an LLC.  To the extent the Court applies New York law, it should still deny the motion on the grounds that CPLR 5225(a) and 5240 likewise prohibit such turnover.

#### 1.   Delaware Law Prohibits Turnover of the HNA North America Membership Interests.

This Court should apply Delaware law to the motion for turnover.  New York courts routinely look to Delaware law when assessing the post-judgment remedies available with respect to Delaware LLCs.  *See Sutton 58 Assoc. LLC v. Beninati*, 2017 WL 2828694, at *3-4 (Sup. Ct. N.Y. Cnty. June 30, 2017) (applying Delaware LLC law to limit remedy to charging order over a Delaware LLC); *Wellbilt Equipment Corp. v. El-Gamal*, 2021 WL 1711552, at *1 n.1 (Sup. Ct. N.Y. Cnty. Apr. 27, 2021) (holding plaintiff would be "limited to a charging lien" over an LLC organized in Delaware).  Here, SLG Member concedes, as it must, that HNA North America is a Delaware LLC.  *See* Motion at 13 at n.5.  HNA North America's formation documents show the same.  *See* Derrick Decl., Ex. 4 (Limited Liability Company Agreement of HNA North America LLC (June 11, 2015)).

The Delaware Limited Liability Company Act (the "LLC Act") makes clear that "[a] judgment creditor has only the right to receive any distribution or distributions to which the

judgment debtor would otherwise have been entitled in respect of such limited liability company interest." 6 Del. C. § 18-703(a).  Section 703(d) of the LLC Act further provides that a charging order is the *exclusive* remedy available to judgment creditors, and that a turnover of the LLC interests is not permissible:

> The entry of a charging order is the exclusive remedy by which a judgment creditor of a member or a member's assignee may satisfy a judgment out of the judgment debtor's limited liability company interest **and attachment, garnishment, foreclosure or other legal or equitable remedies are not available to the judgment creditor**, whether the limited liability company has 1 member or more than 1 member.

*Id.* § 18-703(d) (emphasis added).  Section 703(e) likewise makes clear that "[n]o creditor of a member . . . shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company."  *Id.* § 18-703(e); *see also GMF ELCM Fund L.P. v. ELCM HCRE GP LLC*, 2020 WL 2518000, at *3 (Del. Ch. May 18, 2020) (observing that a charging order gives "*only* the right to receive [a] distribution," and that "[n]o rights, equitable or legal, transfer.").[6]

Here, SLG Member's sole entitlement under Delaware law is to a charging order against HNA International's membership interests in HNA North America.  Indeed, in applying

---

[6] Furthermore, any assignment of an LLC interest entitles the assignee only "to share in such profits and losses, to receive such distribution or distributions . . . to which the assignor was entitled," "[u]nless otherwise provided in a limited liability company agreement." 6 Del. C. § 18-702(b)(1-2).  HNA North America's LLC Agreement here does not "provide otherwise," *see* Derrick Decl., Ex. 4 § 12, and thus its membership interest cannot be turned over.  *See In re Carlisle Etcetera LLC*, 114 A.3d 592, 598 (Del. Ch. 2015) (holding that, because the LLC Agreement did not entitle an assignee to membership, the transfer of interest made the entity an assignee, not a member).

Delaware law in similar circumstances, New York courts have limited a judgment creditor's enforcement power against membership interests in a Delaware LLC to that of a charging order. *See Sutton 58 Assoc. LLC,* 2017 WL 2828694, at *3 (issuing "exclusive remedy" of charging order over Delaware LLC under 6 Del. C. § 18-703(a) because "under Delaware law, a charging order is the judgment creditor's exclusive remedy with respect to the judgment debtor's interest in a Delaware LLC, and attachment, garnishment, foreclosure or other legal or equitable remedies are not available."); *Wellbilt Equipment Corp.*, 2021 WL 1711552, at *1 n.1.   A charging order still accords SLG Member substantial relief, as it would have a lien against any distributions that HNA North America makes to HNA International.

### 2.     New York Law, Too, Prohibits Turnover of the Membership Interests.

Even if the Court applies New York law, it should deny SLG Member's motion for turnover.  Under New York's own LLC Law, a judgment creditor may seek a charging order against an LLC member's interest, and "[t]o the extent so charged, the judgment creditor *has only the rights of an assignee of the membership interest*."  N.Y. LLC Law § 607(a) (emphasis added).  Furthermore, Section 607(b) of the New York LLC Law expressly bars a creditor from obtaining possession of an LLC's property or exercising "legal or equitable remedies" with respect to such property.  *Id.* § 607(b) ("No creditor of a member shall have any right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, the property of the limited liability company.").  Indeed, at least some New York courts have read these provisions to prohibit a turnover of membership interests in an LLC under New York law.  *See Sutton 58 Assoc. LLC*, 2017 WL 2828694, at *2-3 ("*Under both New York LLC Law § 607 and 6 Del. C. § 18-703*, a judgment creditor of a member of a New York or Delaware LLC may apply to a court having jurisdiction for an order charging the membership interest of the member with payment of the unsatisfied amount of the judgment. The judgment creditor cannot

obtain possession of, or exercise legal or equitable remedies with respect to, the property of the LLC itself.") (emphasis added).

It is for that reason that New York courts routinely only grant charging orders over, and not turnovers of, membership interests in LLCs.  For example, in *Matter of Sirotkin v. Jordan, LLC*, 141 A.D.3d 670 (2d Dep't 2016)—a case SLG Member itself cites (*see* Motion at 13)—the Second Department affirmed a ruling of the Supreme Court that *declined* to issue a turnover order, and instead granted relief "only to the extent of directing the issuance of an order, pursuant to Limited Liability Company Law § 607 *charging* [the judgment debtor's] membership interest in the LLC." *Id.* at 671 (emphasis added).  Other New York courts have ruled similarly.  *See MLF3 NWJ LLC v. Signature Group Invs. LLC*, 2017 WL 3979891, at *4 (Sup. Ct. N.Y. Cnty. 2017) ("A plain reading of Sections 603(a) and 607 of the Limited Liability Company Law makes it clear that, at best, a creditor . . . may only obtain an interest in a member's share of the profits and losses of a limited liability company, not the membership interest itself."); *see also Sterling Nat'l. Bank v. Lenar Constr. LLC*, 2014 WL 12886986, at *2 (Sup. Ct. Rockland Cnty. 2014) (same); *3 W. 16th St., LLC v. Ancona*, 2013 WL 5459456, at *5 (Sup. Ct. N.Y. Cnty. 2013) (noting in context of a fraudulent conveyance action that remedy other than charging order for membership interests is "a rare event").

Thus, the plain language of both the Delaware and New York statutes shows that a turnover of interests in an LLC is not permissible, and that a charging order is the exclusive remedy available with respect to a judgment debtor's interests in an LLC. The Court should apply these statutes at written.

In support of its motion, however, SLG Member cites cases it contends stand for the proposition that "a judgment debtor's ownership interests in a limited liability company . . . is considered property under New York law and is thus subject to turnover under CPLR 5225(a)" (Mot. at 12).  These cases are both distinguishable and non-binding here.  In *79 Madison LLC*

*v. Ebrahimzadeh*, 203 A.D.3d 589 (1st Dep't 2022), for example, the First Department was clearly troubled by the defendant's "obstruct[ion] [of] plaintiff's efforts to pursue the judgment." 203 A.D.3d at 591. This pattern is clearly lacking here, as explained above. *See supra* at 7. Furthermore, the *79 Madison* court failed to address section 607(b) of the New York LLC Law (let alone Delaware law) that clearly states that turnover is unavailable in these circumstances. Similarly, in *Gliklad v. Chernoi*, 129 A.D.3d 604 (1st Dep't 2015), the First Department did not address these issues, including the New York LLC Law, at all. And in *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303 (2010), the New York Court of Appeals addressed a CPLR 6202 attachment, not a motion for turnover, and in that context simply repeated the language from CPLR 5201. 14 N.Y.3d at 313-14.

For these reasons, the Court should deny SLG Member's Motion requesting an order for HNA International to turn over its interests in HNA North America, whether under Delaware law or New York law. To the extent that the Court grants this motion, it should fashion the remedy so that SLG Member receives only the economic benefits of these interests (*i.e.*, the right to any distributions) and not full ownership of the interests. *See Sutton 58 Assoc. LLC*, 2017 WL 2828694, at *1 n.3 (noting that, even assuming membership interests in an LLC could be assigned, "[u]nder New York LLC Law § 603 . . ., [e]xcept as provided in the operating agreement . . . the only effect of an assignment of a membership interest is to entitle the assignee to receive, to the extent assigned, the distributions and allocations of profits and losses to which the assignor would be entitled.").

### D. If the Court Grants the Motion, it Should Direct Turnover to the Sheriff, Not SLG Member.

If the Court does order turnover of the HNA North America membership interests (it should not), it should order that turnover be made to the New York City Sherriff's Office, not directly to SLG Member. The turnover statute states explicitly that property is to be delivered

"to a designated sheriff."  CPLR 5225(a).  Thus, the Court should apply CPLR 5225(a) as written and require any turnover be made to the sheriff.

SLG Member's argument that the membership interests should be turned over to it directly because the value of the membership interests is "difficult to determine" (Mot. at 15) flips the relevant considerations on their head.  Directing a turnover to the sheriff would allow for a robust, public auction of the HNA North America membership interests that would maximize the value of the interests; in other words, the auction will "determine" the value of the interests.  SLG Member's alternative approach of direct turnover to SLG Member itself would require this Court on its own to determine the value of the interests—likely litigated by the parties through competing expert valuation opinions—so the Court can determine the portion of the Judgment that has been satisfied through the turnover of these interests.  This would be inefficient and a waste of judicial resources, given the procedure set by statute.

The cases SLG Member cites that permitted turnover of assets directly to a judgment creditor (Mot. at 13-15) are inapposite.  As SLG Member itself admits, the courts in those cases directed turnover to the judgment creditor because the interests likely had no value—and thus the only benefit to the judgment creditor in obtaining the interests was the ability to hold those interests—or because there was evidence that the judgment debtor sought to obstruct enforcement.  *See 79 Madison*, 203 A.D.3d at 589 (ordering direct turnover "given that the value of defendant's membership interest is uncertain and that defendant has obstructed plaintiff's efforts to pursue the judgment"); *Arrowhead Cap. Fin. Ltd. v. Seven Arts Entm't, Inc.*, 2017 WL 3394604, at *5 (S.D.N.Y. Aug. 8, 2017) (ordering turnover of contract rights to creditor that the debtor implied "may ultimately prove worthless"); *Borges v. Placeres*, 61 Misc. 3d 1220(A), at *3 (Civ. Ct. N.Y. Cnty. Nov. 2, 2018) (ordering direct turnover of legal malpractice claim where "value of the claim is unclear, and thus may garner no bids of value at a sheriff's auction."); *Colonial Sur. Co. v. Lakeview Advisors, LLC*, 93 A.D.3d 1253, 1256

(4th Dep't 2012) (considering an order directing payment into an escrow account during proceedings and noting the debtors' efforts to prevent judgment enforcement).

Neither of those factors are present here.  SLG Member itself admits that the HNA North America interests have value given HNA North America's indirect interest in the Chicago Property and the Palisades Property (*see* Mot. at 6), and that value can be identified and maximized through a public auction of the shares through the sheriff.  And, as explained above, SLG Member has put forward no credible evidence that HNA International has obstructed SLG Member's enforcement of the Judgment.  *See supra* at 7.  Thus, turnover, if ordered, should be made to the sheriff.

## **CONCLUSION**

For the foregoing reasons, Respondent respectfully requests that the Court deny Petitioner's motion for turnover.

Dated:          February 10, 2023
                New York, New York

Respectfully submitted,

KOBRE & KIM LLP

 /s/ *Jeremy O. Bressman*
Jeremy O. Bressman
Geoffrey J. Derrick
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1210
Jeremy.Bressman@kobrekim.com
Geoffrey.Derrick@kobrekim.com

Jacob R. Kirkham (*pro hac vice*
pending)
600 North King Street, Suite 501
Wilmington, Delaware 19801
Telephone: (302) 518-6460
Jacob.Kirkham@kobrekim.com

Jiajie Cao
Shengming Shi
Queens Crossing Business Center
136-20 38th Avenue, Suite 3D
Flushing, NY 11354
Telephone: (718) 939-4633
jcao@kktlawfirm.com
sshi@kktlawfirm.com

*Counsel for Respondent HNA
Group (International) Company
Limited*

## CERTIFICATION OF COMPLIANCE

Jeremy O. Bressman, counsel for Respondent, hereby certifies that this memorandum of law complies with the word count limit and formatting rules in Section II.D of the Court's Individual Practices because it contains 6,685 words.

 /s/ *Jeremy O. Bressman*
Jeremy O. Bressman
