UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 245 PARK MEMBER LLC,<br><br>                Petitioner and<br>                Judgment Creditor,<br><br>  -against-<br><br>HNA GROUP (INTERNATIONAL) COMPANY LIMITED,<br><br>                Respondent and<br>                Judgment Debtor. | Case No.: 1:22-cv-05136-JGK-OTW |

**PETITIONER 245 PARK MEMBER LLC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO ORDER A TURNOVER PURSUANT TO CPLR 5225(A)**

KASOWITZ BENSON TORRES LLP
Mark P. Ressler
Paul M. O'Connor III
Henry B. Brownstein
1633 Broadway
New York, New York 10019

February 17, 2023

## **TABLE OF CONTENTS**

                                                       **Page**

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT .................................................................................................................................. 3

    I.   The Court Should Not Delay This Motion In Favor Of The Rule 60(b) Motion .................. 3

    II.  The *Colorado River* Doctrine Does Not Apply ...................................................................... 5

    III. New York Law, Not Delaware Law, Applies To The Turnover Motion ............................. 7

        A.  Delaware Law Does Not Apply; HNAI Is Estopped From Arguing Otherwise ............... 7

        B.  New York's LLC Law Does Not Prohibit A Turnover ..................................................... 10

    IV. Turn Over Should Be To Petitioner, Not The Sheriff .......................................................... 10

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*3 West 16th Street, LLC v. Ancona*,
  2013 WL 5459456 (Sup. Ct., Rockland Cnty, Apr. 27, 2013) .................................................10

*79 Madison LLC v. Ebrahimzadeh*,
  203 A.D.3d 589 (1st Dep't 2022) ...............................................................................1, 3, 7, 10

*Camabo Indus., Inc. v. Liberty Mut. Ins. Co.*,
  2016 WL 368529 (S.D.N.Y. Jan. 27, 2016) .............................................................................7

*Coregis Ins. Co. v. Am. Health Found.*,
  241 F.3d 123 (2d Cir. 2001)......................................................................................................8

*Hotel 71 Mezz Lender LLC v. Falor*,
  14 N.Y.3d 303 (N.Y. 2010) ......................................................................................................9

*Integrity Elecs., Inc. v. Garden State Distributors, Inc.*,
  2016 WL 3637004 (E.D.N.Y. June 30, 2016) .........................................................................9

*King v. Hahn*,
  885 F. Supp. 95 (S.D.N.Y. 1995) .............................................................................................7

*MLF3 NWJ LLC v. Signature Group Investments LLC*,
  2017 WL 3979891 (Sup. Ct. N.Y. Cnty. Sept. 11, 2017)........................................................10

*Multibank, Inc. v. Access Glob. LLC*,
  2017 WL 6028535 (S.D.N.Y. Dec. 4, 2017) ............................................................................8

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
  673 F.3d 84 (2d Cir. 2012).....................................................................................................5, 6

*Ricoh Corp. v. M/V MING PLENTY*,
  2002 WL 109576 (S.D.N.Y. Jan. 25, 2002) .............................................................................8

*Sec. & Exch. Comm'n v. Penn*,
  2021 WL 1226978 (S.D.N.Y. Mar. 31, 2021) ..........................................................................4

*Sirotkin v. Jordan*,
  141 A.D.3d 670 (2d Dep't 2016) ............................................................................................10

*Soley v. Wasserman*,
  2013 WL 3185555 (S.D.N.Y. June 21, 2013) ..........................................................................9

*Sterling Nat. Bank v. Lenar Constr. LLC*,
  2014 WL 12886986 (Sup. Ct. N.Y. Cnty. May 6, 2014) ......................................................... 10

*Sutton 58 Assoc. LLC v. Beninati*,
  2017 WL 2828694 (Sup. Ct. N.Y. Cnty. June 30, 2017) ........................................................ 10

*Swergold v. Lifetime Corp.*,
  1993 WL 512905 (S.D.N.Y. Dec. 3, 1993) ............................................................................ 7

**Other Authorities**

CPLR 5225 ................................................................................................................................. 1, 8

6 Del. C. § 18-703 .......................................................................................................................... 9

Fed. R. Civ. P. 60 .................................................................................................................. *passim*

Fed. R. Civ. P. 69 ........................................................................................................................... 8

Petitioner respectfully submits this reply memorandum of law in further support of its motion to direct HNAI to turn over its interest in HNA North America LLC ("HNA NA").[1]

## PRELIMINARY STATEMENT

Petitioner demonstrated in its moving brief ("Br.") that HNAI should be ordered to turn over its ownership interest in HNA NA to Petitioner, pursuant to CPLR 5225(a) and consistent with *79 Madison LLC v. Ebrahimzadeh*, 203 A.D.3d 589 (1st Dep't 2022) ("*79 Madison*").

Since Petitioner filed its moving brief on December 8, 2022, HNAI has continued its improper scheme to obstruct, delay and frustrate Petitioner's efforts to obtain the asset that is the subject of this motion, *i.e.*, the Conference Center. At the January 5, 2023 status conference, HNAI's counsel raised myriad excuses—China's COVID-19 outbreak, the Chinese New Year celebration, the need for new counsel to get up to speed, and the inability to communicate with China-based clients—to buy more time to oppose this motion. It is now crystal clear why HNAI was desperate for delay: to try to strip this Court of its ability to decide this motion. HNAI's antics, summarized below, are an assault on the judicial process.

First, even as HNAI sought (and obtained) a months-long stay of Petitioner's Judgment-collection efforts based on HNAI's purported inability to obtain replacement counsel, its affiliates, represented by multiple counsel, were covertly negotiating a massive purchase and sale agreement for the sale of the Conference Center. Its surreptitious plan to sell the Conference Center violated Judge Koeltl's July 25, 2022 order requiring HNAI to provide advance notice of such an asset transfer, and was enjoined by His Honor at an emergency February 3 hearing. In the meantime, HNA NA, through separate counsel, engaged in naked forum shopping and launched, on December 19, 2022, a collateral attack on this Court's ability to address the turnover motion by

---

[1] Capitalized terms used but not defined shall have the meaning given to them in Petitioner's moving brief. "Opp." refers to HNAI's memorandum of law in opposition to the turnover motion.

filing a Delaware state court declaratory judgment action (the "Delaware Action") regurgitating the same irrelevant and meritless argument that turnover is not available here. Then, just yesterday, on February 16, 2023, HNA NA filed a motion for summary judgment in that action. Lastly, contrary to HNAI's previous representations it could not locate replacement counsel, HNAI retained yet another law firm, Kobre & Kim LLP ("Kobre & Kim"), to draft and file a frivolous motion in this Court under Rule 60 seeking relief from the Judgment.

All of these gambits were aimed at wresting the turnover issue from this Court and doing an end-run around the rule of law. Each of HNAI's arguments in opposition is baseless and/or irrelevant, and HNAI should be ordered to turn over its ownership interest in HNA NA.

*First*, HNAI wrongly argues the Court should not decide the pending turnover motion before deciding the Rule 60 motion. Doing so would only and needlessly reward HNAI's misconduct in pleading with the Court for an elongated briefing schedule while concealing its intent to file the Rule 60 motion. Moreover, the turnover motion is now fully briefed and should be decided without regard to HNAI's Rule 60 motion, which must be dismissed on numerous grounds, including that it is unreasonably late under well-established law. The event HNAI contends somehow relieved it from the Judgment occurred on September 9, 2022, yet HNAI failed to file the Rule 60 motion in the intervening *five months* while Petitioner was taking extensive Judgement-enforcement actions. The Rule 60 motion is also baseless on the merits. Among other things, there is no scenario in which Petitioner has obtained $185 million to satisfy the Judgment. HNAI should not be relieved of any obligation to turn over assets to partially satisfy the Judgment, much less be relieved of the entire Judgment.

*Second*, HNAI is wrong in contending the Court should abstain from deciding the motion in favor of the later-filed Delaware Action under the *Colorado River* doctrine. Abstention is rarely

2

granted, and this case is no exception. None of the six factors required for abstention apply.

*Third*, HNAI's contention that turnover is not available under Delaware law ignores that Delaware law does not apply. The *79 Madison* decision confirms that New York law applies. Moreover, HNAI agreed in the Guaranty that New York judgment enforcement law applies, and HNAI is judicially estopped from claiming otherwise.

*Finally*, HNAI's argument that its membership interest should be turned over to a sheriff and not Petitioner is frivolous, as Petitioner meets the two-prong standard in *79 Madison*: HNAI has engaged in well-documented efforts to obstruct, delay, and frustrate Petitioner's judgment enforcement, and does not dispute that its membership interest in HNA NA is difficult to value. *79 Madison* is dispositive.

## ARGUMENT

### I.   The Court Should Not Delay This Motion In Favor Of The Rule 60(b) Motion

HNAI's request (Opp. at 9-10) that the Court rule on its Rule 60 motion before the turnover motion should be rejected. The Rule 60 motion was filed unreasonably late and, in any event, a ruling on the motion would not impact Petitioner's right to a turnover.

HNAI did not file its Rule 60 motion within a "reasonable time," as required under Rule 60(c)(1). The timing of its filing is wholly tactical, not reasonable. HNAI contends it is relieved from the Judgment because Petitioner received a windfall after acquiring an asset in the Bankruptcy on September 5, 2022—*five months* before HNAI filed the Rule 60 motion. This is wrong, but rather than diligently filing a Rule 60 motion soon thereafter, HNAI kept this purported "ace" up its sleeve while Petitioner was engaging in significant and expensive enforcement efforts. Such efforts included taking a two-day deposition of HNAI's corporate representative in September 2022 and taking other discovery of HNAI, its affiliates, and lawyers that continues today. Moreover, in November 2022, Petitioner filed a second arbitration seeking over $90 million

3

arising out of the Guaranty that gave rise to the Judgment HNAI now claims is satisfied. If there was any right to relief from the Judgment, any one of these events should have caused HNAI to file the Rule 60 motion sooner. Indeed, Mr. Lai testified that, as of September 13, 2022, HNAI believed it had "already satisfied the arbitral award or judgment" due to the Bankruptcy. Reply Ressler Decl., Ex. 1 at 24:12-25:3.

Seeking again to prevent the Court from ruling on the turnover motion, which was filed on December 8, 2022, HNAI waited until the last minute under threat of contempt to file the Rule 60 motion. In requesting and obtaining an elongated turnover motion briefing schedule, HNAI concealed from the Court its intent to file a Rule 60 motion, only to argue now the Court should wait *even longer* to rule on the turnover motion. HNAI also concealed from the Court, in seeking both a stay and an extension of the briefing schedule, that it had retained a second law firm, Kobre & Kim, for the Rule 60 motion. Kobre & Kim has baselessly refused to answer Petitioner's question as to when it was retained, thereby suggesting it was retained before the stay was lifted on January 5, 2023. The Rule 60 motion can and should be denied on the basis of HNAI's tactical delay alone.[2] *See Sec. & Exch. Comm'n v. Penn*, 2021 WL 1226978, at *6 (S.D.N.Y. Mar. 31, 2021) (relied on by HNAI, Opp. at 9) (motion denied as untimely where debtor waited to file motion two months after Supreme Court decision, which was basis of motion, and noting debtor's "series of strategic moves to delay the Court's issuance of judgments against him and against the entities he controls" was part of "larger pattern of dilatory conduct that wastes judicial time and that has delayed this case for no legitimate reason" and shows a "disregard for court deadlines").

HNAI's Rule 60 motion is also wrong on the merits. The only way the Rule 60 motion could impact Petitioner's turnover rights is if HNAI can show that the entire $185 million

---

[2] Neither of the two cases HNAI cites in which the court considered a Rule 60 motion first established a rule requiring that sequencing. Nor did they involve the type of delay and gamesmanship HNAI has engaged in here.

4

Judgment has been satisfied. HNAI makes the irrelevant and incorrect assertion that the Property has a value of approximately $2 billion, and that Petitioner obtained it. *See* Dkt. No. 112 at 6, 12, 19. Petitioner will show otherwise in opposition to the Rule 60 motion. To preview, Petitioner did not acquire the *Property*; the sale documents unambiguously reflect that, after an auction that drew no interested bidders, Petitioner (i) acquired the common equity in the *Company* in exchange for paying the debtor's Bankruptcy-related expenses of approximately $61 million and credit bid $40 million of its preferred equity interest (Reply Ressler Decl. Ex. 2 ¶¶ 5, 6; *id*., Ex. 3 at 14 (definition of "Purchase Price"); *id*. Ex. 4); (ii) acquired the enormous debt on the Property and mezzanine levels (*id*., Ex. 2 ¶¶ 6, 19-20); and (iii) expressly preserved its rights under the Guaranty (*id*., Ex. 2 ¶ 17, Art. VIII.F.). If the parties in the Bankruptcy had agreed that the acquisition of the asset nullified Petitioner's $185 million Judgment, the sale agreement would have said so; it says the opposite. HNAI's attempt to recast the deal other than as reflected in the sale agreement is an improper collateral attack on Judge Walrath's order approving the sale on those terms.

HNAI's alternative meritless request—that the $185 million Judgment be reduced by $40 million (Dkt. No. 112 at 19-21)—would still have no impact on the turnover motion because HNAI has made no showing that its interest in HNA NA is worth in excess of $145 million.

## II. The *Colorado River* Doctrine Does Not Apply

HNAI does not come close to meeting its heavy burden to show that *Colorado River* abstention is appropriate. *See* Opp. at 10-14.

"[A]bstention is generally disfavored, and federal courts have a virtually unflagging obligation to exercise their jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) ("*Niagara*") (quotations and citation omitted). In considering abstention, federal district courts consider six factors "'with the balance heavily weighted in favor of the exercise of jurisdiction'" (*id*. (citation omitted)):

5

>   (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Id*. at 100-01. "Only the clearest of justifications will warrant dismissal." *Id*. at 101 (citation omitted). HNAI fails to show these factors are met.

HNAI calls factors (1), (2) and (6) "neutral." Opp. 12. However, neutrality "is a basis for retaining jurisdiction, not for yielding it." *Id.* at 101.

HNAI asserts (Opp. at 13) that the fourth factor—"the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other"—weighs in favor of abstention because HNA NA proceeded on an "expedited" basis soon after Petitioner filed the turnover motion. That is false. Petitioner's turnover motion was filed first on December 8, 2022, and likely would have been resolved but for HNAI's delay tactics. *See* Dkt. No. 82; Dkt. No. 100. In any event, the turnover motion is now fully submitted. On the other hand, the Delaware Action is not "more advanced"; it is still at the pleading stage and HNA NA has not "expedited" that case. HNA NA filed the Delaware Action complaint on December 19, 2023, delayed serving it by almost one month, and a briefing schedule on Petitioner's motion to dismiss the Delaware Action is not even set. Reply Ressler Decl. Ex. 5. Whether and when the merits of the Delaware Action will be decided is unknown.

HNAI's assertion that factors (3) and (5) "decidedly favor abstention" (Opp. at 12) is false. Any piecemeal litigation (factor (3)) is only occurring because HNAI and its affiliate manufactured it. Whether turnover is available pertains to HNAI, not its wholly owned subsidiary. That is because the membership interest in dispute is *HNAI's* membership interest that *HNAI* itself possesses, and a turnover would require no action to be taken by HNA NA. That is, "[a]ll of the

6

relevant parties are before this Court," which weighs against abstention. *King v. Hahn*, 885 F. Supp. 95, 98 (S.D.N.Y. 1995). In the Delaware Action, HNA NA makes the same legal arguments in Delaware, on HNAI's behalf, that HNAI makes here. Petitioner is therefore moving to dismiss that action under the first-filed rule. If HNAI's and HNA NA's antics weighed in favor of abstention, "dismissals pursuant to *Colorado River* would be the rule, not the exception." *Id.*

Finally, because HNAI claims repeatedly that "black-letter" Delaware law controls (Opp. at 8, 10, 13), which Petitioner denies, factor (5) is at best neutral—and thus weighs against abstention—because "[t]he state law issues here presented are . . . relatively straightforward."[3] *See Camabo Indus., Inc. v. Liberty Mut. Ins. Co.*, 2016 WL 368529, at *4 (S.D.N.Y. Jan. 27, 2016).

### III. New York Law, Not Delaware Law, Applies To The Turnover Motion

Respondent wrongly asserts (Opp. at 14-18) that neither Delaware law nor New York law permits turnover of a membership interest in an LLC to a judgment creditor. Delaware law is not relevant here; New York collection procedures apply, and they unquestionably permit the turnover relief Petitioner seeks.

#### A. Delaware Law Does Not Apply; HNAI Is Estopped From Arguing Otherwise

HNAI asserts (Opp. at 14-16) that Delaware law applies because non-party HNA NA is organized under Delaware law. That is irrelevant for at least three reasons.

*First*, HNAI's assertion is contrary to the First Department's 2022 *79 Madison* decision. Br. at 11-15. HNAI cites (Opp. at 14) two earlier New York trial court decisions that were overruled by *79 Madison*. HNAI's attempt to distinguish *79 Madison* on the grounds that the pattern of obstruction found in that case "is clearly lacking here" (Opp. at 18) is nonsense. HNAI's schemes to frustrate, obstruct, and delay Petitioner's collection efforts are detailed in Petitioner's

---

[3] Tellingly, of the five cases HNAI cites (Opp. at 10-14), only one abstained in part because, unlike here, there was an "unsettled" question of state law. *See Swergold v. Lifetime Corp.*, 1993 WL 512905, at *3 (S.D.N.Y. Dec. 3, 1993).

7

moving brief (Dkt. No. 82) and contempt motion pending before Judge Koeltl (Dkt. No 100).

*Second*, courts apply the enforcement procedures and law to which the parties contractually agree. *See Multibank, Inc. v. Access Glob. LLC*, 2017 WL 6028535, at *5 (S.D.N.Y. Dec. 4, 2017) (applying CPLR 5225 involving Delaware LLC debtor because of New York law clause). The only relevant contract at issue is the Guaranty, in which (i) the parties agreed that New York law governs, and (ii) HNAI consented to the New York jurisdiction "with respect to enforcement of . . . any awards" and for any disputes "related to this Guaranty." Reply Ressler Decl., Ex. 6 § 5.3. Rule 69 requires application of "the [judgment enforcement] procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). By agreeing to New York law and submitting to New York courts for disputes "relating to" the Guaranty, HNAI agreed that New York enforcement procedures will apply to all property over which a New York court has jurisdiction, such as HNAI's membership interest in HNA NA. *See Coregis Ins. Co. v. Am. Health Found.*, 241 F.3d 123, 129-30 (2d Cir. 2001) (construing "relating to" in choice of law clause broadly). Those bargained-for provisions should not be disturbed without a "compelling reason," and there is none. *See Ricoh Corp. v. M/V MING PLENTY*, 2002 WL 109576, at *2 (S.D.N.Y. Jan. 25, 2002).

The Guaranty's New York choice of law and forum provisions were intended to ensure Petitioner had access to New York's enforcement mechanisms if Petitioner needed to enforce a judgment against a Hong Kong guarantor. Whatever default rules Delaware law may provide, HNAI—the sole member of HNA NA—agreed to modify them in the Guaranty. *See* 6 Del. C. §18-1101(b) ("It is the policy of this chapter to give the maximum effect to the principle of freedom of contract[.]"). Neither HNAI nor its cited cases address the fact the parties agreed New York enforcement law would apply.

*Third*, HNAI is judicially estopped from disputing that New York enforcement procedures

8

apply because HNAI has been subject to, without objection, the application of the New York enforcement rules HNAI now contends are inconsistent with Delaware law.  The Court's July 25, 2022 order (the "Attachment Order") attaches "any tangible and intangible property of [HNAI], which could be assigned or transferred."  Dkt. No. 31.  Such intangible property includes HNAI's membership interest in HNA NA.  *See Hotel 71 Mezz Lender LLC v. Falor,* 14 N.Y.3d 303, 313-14 (N.Y. 2010).  If HNAI were proceeding in good faith, it would have long ago claimed (wrongfully) that such attachment is inconsistent with the same Delaware statute that HNAI now claims bars a turnover.  *See* 6 Del. C. § 18-703(d) ("attachment . . . or other legal or equitable remedies are not available" to judgment creditor).  Since the July 2022 Attachment Order was issued, HNAI has never contended its membership interests were inappropriately attached, or such a post-judgment enforcement remedy is not permitted, under Delaware law.  Allowing HNAI to all of a sudden select which enforcement remedies are unavailable under Delaware law, at this late post-judgment enforcement stage, would prejudice Petitioner's rights and afford HNAI an unfair advantage.  Judicial estoppel applies to prevent such unfairness.  *See Integrity Elecs., Inc. v. Garden State Distributors, Inc.*, 2016 WL 3637004, at *5 (E.D.N.Y. June 30, 2016) (estoppel applies where "parties have consented through their conduct to the application of New York law"); *Soley v. Wasserman*, 2013 WL 3185555, at *11 (S.D.N.Y. June 21, 2013) (estoppel applied where party never previously "raised the possibility that Delaware law applies," even though court "never explicitly addressed which forum's law applies," and accepting party's "new position at this late stage risks creating inconsistent results and providing [party] with [an] unfair advantage").

HNAI's assurance (Opp. at 16) that a charging order will "still accord[]" Petitioner with "substantial relief" is wrong.  HNAI admitted it has received no dividends from HNA NA from November 19, 2018 through the present.  Reply Ressler Decl., Ex. 1 at 154:8-19; *id.*, Ex. 7 at 22.

9

A charging order would thus provide Petitioner with no relief whatsoever.

### B.   New York's LLC Law Does Not Prohibit A Turnover

HNAI's incorrect fallback argument (Opp. at 16-18) is that New York law also limits a judgment creditor's recovery on an LLC member's interest to a charging order, citing Section 607 of New York's LLC law. *79 Madison* addressed and rejected that argument. *79 Madison*, 203 A.D.3d at 590 (Section 607(a) is not an "exclusive remedy") (citing NY Limit Liab Co § 607(a) ("the court may charge the membership interest of the member with payment of the unsatisfied amount")). One of HNAI's cases held that "a charging order is [not] a creditor's exclusive remedy." *3 West 16th Street, LLC v. Ancona*, 2013 WL 5459456, at *5 (Sup. Ct., Rockland Cnty, Apr. 27, 2013). HNAI's suggestion (Opp. at 16) that Section 607(b) limits the enforcement remedies available to Petitioner is equally unavailing. Section 607(b) restricts a creditor from "obtain[ing] possession of . . . the property of" an LLC. The turnover motion does not seek property of an LLC; it seeks a turnover of an asset of HNAI, a Hong Kong limited company.[4]

## IV.   The Turnover Should Be To Petitioner, Not The Sheriff

In wrongly contending (Opp. at 19) that a direct turnover is permissible only where the interests at issue "likely ha[ve] no value," HNAI ignores *79 Madison*'s holding that direct turnover to a judgment creditor is permissible where the value of the interest is difficult to determine. HNAI does not contest (*see* Br. at 14) that HNAI's interest in HNA NA is difficult to value.

### CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that its motion be granted.

---

[4] Two cases HNAI cites (Opp. at 16-17) do not support HNAI. *See Sirotkin v. Jordan*, 141 A.D.3d 670, 671-72 (2d Dep't 2016) (exercising discretion not to order turnover where, unlike here, the LLC was a multimember LLC); *Sutton 58 Assoc. LLC v. Beninati*, 2017 WL 2828694, at *3-4 (Sup. Ct. N.Y. Cnty. June 30, 2017) (same). The other two cases HNAI cites, *MLF3 NWJ LLC v. Signature Group Investments LLC*, 2017 WL 3979891, at *4-5 (Sup. Ct. N.Y. Cnty. Sept. 11, 2017) and *Sterling Nat. Bank v. Lenar Constr. LLC*, 2014 WL 12886986, at *1-2 (Sup. Ct. N.Y. Cnty. May 6, 2014), are trial-level decisions from 2014 and 2017, and thus were overruled by *79 Madison.*

DATED:  February 17, 2023                    Respectfully submitted,

                                                                   KASOWITZ BENSON TORRES LLP

                                                                   By:  /s/ Mark P. Ressler
                                                                         Mark P. Ressler
                                                                         Paul M. O'Connor III
                                                                         1633 Broadway
                                                                         New York, New York 10019
                                                                         T: (212) 506-1700
                                                                         mressler@kasowitz.com
                                                                         poconnor@kasowitz.com

                                                                         Henry B. Brownstein
                                                                         1401 New York Ave., NW, Ste. 401
                                                                         Washington, D.C. 20005
                                                                         T:  (202) 760-3400
                                                                         hbrownstein@kasowitz.com

*Attorneys for Petitioner and Judgment Creditor 245 Park Member LLC*

11