**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

245 PARK MEMBER LLC,

                 Petitioner,

    -against-

HNA GROUP (INTERNATIONAL)
COMPANY LIMITED,

               Respondent.

---

Case No.: 1:22-cv-05136-JGK-OTW

**PETITIONER 245 PARK MEMBER LLC'S MEMORANDUM OF LAW IN**
**OPPOSITION TO THE RULE 60(B) MOTION OF HNA GROUP (INTERNATIONAL)**
**COMPANY LIMITED FOR RELIEF FROM THE JUDGMENT**

KASOWITZ BENSON TORRES LLP
Mark P. Ressler
Paul M. O'Connor III
Henry B. Brownstein
1633 Broadway
New York, New York 10019

February 27, 2023

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 4

   I.    HNAI's Affiliates Require Significant Investment From Petitioner ................. 4

   II.   The Relevant Contracts Protecting Petitioner's Significant Investment ........... 5

        A.    The Joint Venture Agreement ................................................ 6

        B.    The Unconditional, Absolute, and Irrevocable Guaranty ......................... 7

              1.   HNAI And The Other HNA Guarantors Agree To Pay The Guaranteed Obligations, Which Are Unconditional, Absolute, And Irrevocable .............. 7

              2.   The HNA Guarantors Waive Their Rights And Defenses ............................... 8

   III.  HNA JV Member and 245 Park JV Cause a Redemption Trigger Event ...................... 9

   IV.  Based On HNAI's Breach Of The Guaranty, Petitioner Obtains The Arbitration Award, Which Is Confirmed As The Judgment ............................................. 9

   V.   Petitioner Purchases The Common Equity Of The Company And Reserves Rights Under The Guaranty ...................................................... 10

   VI.  HNAI Waits Five Months To File The Motion While Petitioner Takes Significant Enforcement Efforts And HNAI Spends Resources Obstructing Those Efforts .......... 11

ARGUMENT ....................................................................................................... 13

   I.    The Rule 60(b) Motion Should Be Dismissed Because It Was Not Filed Within A Reasonable Time After The Bankruptcy Sale ........................................... 13

   II.   The Rule 60(b) Motion Is Meritless ..................................................... 16

        A.    The Arbitration Award Did Not Cause Petitioner's Rights To Expire ............. 16

        B.    Petitioner's Acquisition Of A Bankruptcy Asset Is Irrelevant And HNAI Waived Any Defense Based On Such Acquisition ................................ 18

   III.  HNAI's Alternative Request To "Write Down" The Judgment By $40 Million Is Premature ........................................................................ 21

CONCLUSION .................................................................................................... 22

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*E. Sav. Bank, FSB v. Ferro*,
2018 WL 5892654 (E.D.N.Y. Nov. 8, 2018) ........................................................15

*Gould v. Entm't Corp. v. Bodo*,
107 F.R.D. 308 (S.D.N.Y. 1985) ..........................................................................14

*Ruotolo v. City of New York*,
514 F.3d 184 (2d Cir. 2008).................................................................................13

*Sec. & Exch. Comm'n v. Penn*,
2021 WL 1226978 (S.D.N.Y. Mar. 31, 2021) .....................................................15

*William v. City of New York*,
2018 WL 11219952 (S.D.N.Y. July 23, 2018), *aff'd,* 771 F. App'x 94 (2d Cir.
2019) ...........................................................................................................2, 13, 14, 15

*Wyche v. Advanced Drainage Sys., Inc.*,
332 F.R.D. 109 (S.D.N.Y. 2019) ..........................................................................14

*Zamora v. FIT Int'l Grp., Corp.*,
2019 WL 2416941 (S.D.N.Y. June 7, 2019) .......................................................14

**Statutes**

Rule 60(b) ........................................................................................................ *passim*

Petitioner 245 Park Member LLC ("Petitioner") respectfully submits this memorandum of law in opposition to the motion of HNA Group (International) Company Limited ("HNAI") for Relief from the judgment, pursuant to Federal Rule of Civil Procedure ("FRCP") 60(b) (the "Motion," or "Br.").

## PRELIMINARY STATEMENT

HNAI's motion seeking relief from the $185 million judgment this Court entered on July 27, 2022 (the "Judgment") is based on irrelevant, misleading, and untrue statements, and defenses HNAI expressly waived, to create the false impression Petitioner has been made whole. In truth, HNAI has not paid Petitioner a dime of the Judgment. There is no factual or legal basis to relieve HNAI from the Judgment, and the Motion should be denied.

The Judgment arises out of an ironclad bad boy guaranty ("Guaranty") in which HNAI guaranteed—as an express inducement for Petitioner to provide HNAI's parent company $148 million in desperately needed capital—to pay Petitioner "unconditionally, irrevocably and absolutely" the "complete payment in full (and not merely the collectability)" of all of the contractually defined "Guaranteed Obligations." HNAI also acknowledged and agreed in the Guaranty that the Guaranteed Obligations are not limited "to any specific liability amount" and terminate only upon "*payment* and performance of the Guaranteed Obligations." Among the Guaranteed Obligations is *payment* of the "full amount of the Redemption Amount." The Redemption Amount—a defined term in the underlying joint venture agreement between Petitioner and HNAI's subsidiary (the "JV Agreement")—is the sum of Petitioner's $148 million investment plus an agreed-to rate of return that accrues until the joint venture pays the total accrued amount in full. Petitioner's rights under the JV Agreement extinguish only when it receives *payment* "in full" of the Redemption Amount. Moreover, as part of HNAI's unconditional,

irrevocable, and absolute payment obligation, HNAI expressly waived any argument or defense based on Petitioner's acquisition of assets in a bankruptcy.

HNAI's arguments as to why it should be relieved from the entire Judgment would eviscerate these bargained-for rights under the Guaranty. HNAI's two-pronged argument is doubly wrong. First, HNAI incorrectly contends that by diligently obtaining a $185 million arbitration award in April 2022 (the "Arbitration Award")—which comprises, among other things, the accrual of the Redemption Amount through June 30, 2022—Petitioner somehow irrevocably waived its contractual right in the Guaranty for a payment in full of all of the Guaranteed Obligations and its contractual protection that the Guaranteed Obligations are not limited "to any specific liability amount." Second, HNA incorrectly contends that because Petitioner acquired, in September 2022, commercial real estate located at 245 Park Avenue in Manhattan ("the Property"), with a purported value of $2 billion, in a bankruptcy of HNAI's affiliates (the "HNA Debtors") in the United States Bankruptcy Court in the District of Delaware (the "Bankruptcy"), Petitioner has been made whole on the Judgment.

As an initial matter, the Motion should be denied because it was not filed within a reasonable time after the event that is the basis for the relief—*i.e.*, Petitioner's September 9, 2022 Bankruptcy acquisition. Notwithstanding that Petitioner was taking significant (and expensive) judgment enforcement steps as early as August 2022, HNAI delayed five months before filing the Motion. Courts in this circuit "typically consider a delay of approximately three months significant." *William v. City of New York*, 2018 WL 11219952, at *2 (S.D.N.Y. July 23, 2018), *aff'd*, 771 F. App'x 94 (2d Cir. 2019). The filing of the Motion was unreasonably late—indeed, it was purely tactical—and can be denied on this basis alone.

The Motion also lacks merit.  Both of HNAI's arguments as to why it should be relieved from the entire Judgment are completely contrary to the unambiguous terms of the Guaranty and JV Agreement, Petitioner's purchase and sale contract for the asset in the Bankruptcy (which the Honorable Mary F. Walrath confirmed in the Bankruptcy), and common sense itself.

*First*, the Arbitration Award did not cause the JV Agreement or the Guaranty to "expire." The JV Agreement "expires" only upon payment of a "Redemption in Full" and there has been no such payment.  The Guaranty only "expires" upon payment of all the "Guaranteed Obligations," and there has been no such payment.  JAMS arbitrator, the Honorable L. Priscilla Hall, a former Associate Justice of the State of New York Appellate Division, Second Judicial Department, ruled only that HNAI breached the Guaranty and that HNAI owed Petitioner the Guaranteed Obligations that had accrued through June 30, 2022.  Justice Hall did not relieve HNAI from its contractual guaranty to pay Petitioner the full Redemption Amount.  Likewise, the Arbitration Award could not possibly have capped HNAI's obligations under the Guaranty to the specific liability amount of $185 million because the Guaranty unambiguously provides otherwise.

*Second*, Petitioner's purchase of an asset in connection with the Bankruptcy did not relieve HNAI of the Judgment or make Petitioner whole.  Whatever the value of the asset, the fact is that Petitioner and HNA Debtors agreed in the purchase and sale agreement that Petitioner's acquisition would reduce the value of Petitioner's preferred equity interest by only $40 million, not $185 million.  HNAI's attempt to recast the deal other than as reflected in the sale agreement is an improper collateral attack on Judge Walrath's order approving the sale on those terms.

For the reasons set forth herein, the Motion should be denied.

## BACKGROUND

### I.    HNAI's Affiliates Require Significant Investment From Petitioner

HNA's United States affiliates during the relevant time period—HNA 245 Park Ave JV LLC ("HNA JV Member"), 245 Park JV LLC (the "Company") and certain subsidiaries specially created to help finance the acquisition through mezzanine loans (collectively "HNA USA")—acquired the Property in May 2017 for $2.21 billion.  Ressler Decl., Ex. 1.

HNA USA initially owned the Property alone.  Shortly after HNA USA acquired the Property, the Chinese parent entity, HNA Group, required significant capital.  As reported in the press, only eight months after buying the Property, "HNA Group Co., the once-voracious hunter of global trophy assets, is seeking to sell more than $6 billion in properties worldwide as pressure intensifies for the Chinese conglomerate to speed up disposals so it can repay its debts."  Ressler Decl., Ex. 2.  But while HNA shed other real estate assets to come up with cash, it did not sell the Property.  Rather, it sought to use the Property as an alternative source of liquidity by offering a preferential equity position to an investor.  As HNA's global liquidity needs became more acute, it turned to SL Green Realty Corp. ("SLG") to make that investment, given that SLG is New York City's largest owner of commercial office space, is a well-regarded Class-A property manager, and is an experienced investor in assets similar to the Property with the financial resources to fund the investment quickly.

On or about June 22, 2018, SLG, through Petitioner, made a preferred equity investment of $148 million in exchange for an approximately 49% interest in the Company.  Ressler Decl., Ex. 3 § 3.1(b).  The ownership structure after Petitioner's investment is reflected as follows:



## II.     The Relevant Contracts Protecting Petitioner's Significant Investment

Like any sophisticated real estate investor, SLG insisted upon obtaining maximum protection, via a "bad boy" guaranty, to safeguard its $148 million investment with a highly leveraged Chinese owned company.  SLG's insistence on backstopping its investment, via an ironclad guaranty, was validated when HNA Group began to unravel.  Indeed, soon after SLG made its $148 million investment, HNA Group spiraled downward, as its founders were imprisoned in China, its trophy assets were rapidly sold off and nearly $10 billion of its funds were siphoned away.  Ressler Decl., Exs. 4, 5.

Accordingly, as consideration and express "inducement" for the $148 million preferred equity investment in the Company and for entering into the investment contract (*i.e.*, the Amended and Restated Limited Liability Company Agreement, which was subsequently amended on November 19, 2018 (the JV Agreement)), SLG negotiated for and secured substantial contractual rights and protections, including the absolute, unconditional, and irrevocable Guaranty at issue here.  Ressler Decl., Ex. 6.  Without the Guaranty, SLG would not have made such a significant investment.

### A.  The Joint Venture Agreement

In connection with Petitioner's preferred equity investment in the Company, on or about June 22, 2018, Petitioner and HNA JV Member entered into a joint venture agreement, which was subsequently amended on November 19, 2018, *i.e.*, the JV Agreement.

**Redemption Amount.**  As consideration for its equity investment, Petitioner was entitled to "payment in full of the Redemption Amount" by the "Mandatory Redemption Date," specified as no later than June 30, 2022.  Ressler Decl., Ex. 3 § 3.5; *id.* at 18 (definition of "Mandatory Redemption Date"); *id.* at 23 (definition of "Redemption Amount").  The Redemption Amount is the sum of the Petitioner's $148 million investment, a return on the investment at an agreed-to rate until the Redemption Amount is paid in full, defined as a "Redemption in Full," and a guaranteed minimum return on the investment through June 30, 2022 in the event the Redemption Amount is paid prior to June 30, 2022.  *Id.*, Ex. 3 at 23 (definition of "Redemption in Full"); *id.* § 3.3.

The occurrence of "Cause Events"—which are contractually defined bad acts including, among other things, filing a petition for bankruptcy or taking a "Major Decision" without Petitioner's consent—accelerates the Mandatory Redemption Date from June 30, 2022, to "ten (10) days following the occurrence of any Cause Event."  Ressler Decl., Ex. 3 at 18 (definition of "Mandatory Redemption Date"); *id.* at 5-6 (definition of "Cause Event"); *id.* at 13-17 (definition of "Major Decision").

**Petitioner's Preferred Right to Recover the Redemption Amount.**  The Company's failure to pay the full Redemption Amount by the Mandatory Redemption Date is a "Redemption Trigger Event," which provides additional protection to Petitioner in connection with its investment.  Ressler Decl., Ex. 3 at 23 (definition of "Redemption Trigger Event").  Upon a Redemption Trigger Event, Petitioner is entitled to payment of the full Redemption Amount and in preference to any other distributions made by the Company.  *Id.*, Ex. 3 §§ 9.2(a), 9.2(b).

### B.  The Unconditional, Absolute, and Irrevocable Guaranty

To obtain the "prompt and punctual" payment of damages in the event that HNAI's affiliates engaged in the enumerated bad acts, or that the Company would not or could not meet its payment obligations under the JV Agreement, Petitioner entered into the Guaranty with three separate HNA entities:  HNAI, HNA JV Member and HNA Group Co. Ltd. (collectively, the "HNA Guarantors").  Ressler Decl., Ex. 6.

#### 1.  HNAI And The Other HNA Guarantors Agree To Pay The Guaranteed Obligations, Which Are Unconditional, Absolute, And Irrevocable

Pursuant to the Guaranty, the HNA Guarantors agreed to pay Petitioner three categories of damages relevant here.  In the event HNAI's affiliates filed for bankruptcy—which is not only a "Cause Event" under the JV Agreement but one of the core bad acts the Guaranty was intended to deter HNA from committing—the range of potential damages is appropriately expansive.  In sum, those include, among others:  (1) the full Redemption Amount, (2) fees and costs in any way related to a bankruptcy filing, and (3) the cost of enforcement of the JV Agreement.  Each are discussed below.

The first two categories—payment of the full Redemption Amount and bankruptcy-related fees and costs—are defined in the Guaranty as the "Guaranteed Obligations."  The Guaranty provides that HNAI "unconditionally, absolutely and irrevocably" guaranteed to Petitioner "the punctual and complete payment in full (and not merely the collectability) of and shall pay or cause to be paid" the Guaranteed Obligations.  Ressler Decl., Ex. 6 § 1.2.  The Guaranty reiterates in Section 1.3 that the Guaranty was a "guaranty of payment and not merely of collection."  *Id*. § 1.3(a).

To accentuate the full scope of HNAI's exposure and its ongoing obligations, the Guaranty expressly provides that "the amount of the Guaranteed Obligations ***shall not be limited to any***

*specific liability amount* and this Guaranty shall terminate only upon the indefeasible payment and performance of the Guaranteed Obligations," not just the Redemption Amount. *Id*. § 1.2 (emphasis added). The JV Agreement similarly provides that "the Guaranty [] **will not provide for either a maximum liability amount** or an expiration date." *Id*. § 3.7 (emphasis added).

As to the third category, Section 1.7 of the Guaranty provides that if HNA Debtors fail to perform within ten days after demand, they must "pay SLG all costs and expenses (including court costs and reasonable attorneys' fees) incurred by SLG in the enforcement hereof or the preservation of SLG's rights hereunder." *Id*. § 1.7. This obligation survives even if the Guaranteed Obligations are repaid in full. *Id*.

## 2. The HNA Guarantors Waive Their Rights And Defenses

Because the Guaranty is by its terms "unconditional, absolute and irrevocable," each of the HNA Guarantors agreed that "the liability of Guarantors under this Guaranty shall not be affected, released, terminated, discharged or impaired, in whole or in part, by, and [Petitioner] may proceed to exercise any right or remedy hereunder irrespective of, and Guarantors irrevocably and unconditionally waive any common law, equitable, statutory or other rights which Guarantors might possess as a result of or in connection with, any or all of" 22 rights and defenses (the "Waived Rights and Defenses"), including "any [] circumstance which might in any manner or to any extent constitute a defense available to Guarantors[.]" *Id*. § 1.3. The HNA Guarantors further assured Petitioner that it was their "unambiguous and unequivocal intention . . . that Guarantors shall be obligated to fulfill the Guaranteed Obligations and all liabilities under this Guaranty, notwithstanding any occurrence, circumstance, [or] event . . . whether or not otherwise or particularly described herein" and "whether occurring before or after any default." *Id*. § 1.3. As demonstrated below, HNAI and the other HNA Guarantors waived any right or defense to payment

based on Petitioner's acquisition of the Company's or HNA JV Member's assets from a bankruptcy. *Id.* §§ 1.3(c)(xiii), 1.3(c)(xiv).

### III.   HNA JV Member and 245 Park JV Cause a Redemption Trigger Event

On October 31, 2022, HNA JV Member, the Company, and certain of its affiliates (the "HNA Debtors") commenced the unauthorized Bankruptcy.  *See In re PWM Property Management LLC, et al.*, Case No. 21-11445 (MFW).

As Justice Hall found in issuing the arbitration award that became the Judgment, the Bankruptcy filing, along with  Major Decisions taken without Petitioner's consent leading up to the Bankruptcy, were "Cause Events" that accelerated the Mandatory Redemption Date to no later than November 10, 2021.  Ressler Decl., Ex. 7 at 31-33.  Yet the Company did not pay the Redemption Amount by November 10, 2021 (or ever), thereby triggering a Redemption Trigger Event.

### IV.   Based On HNAI's Breach Of The Guaranty, Petitioner Obtains The Arbitration Award, Which Is Confirmed As The Judgment

HNAI's failure to pay the full Redemption Amount upon demand led Petitioner to file a demand for JAMS arbitration against HNAI on December 21, 2021.  Following substantial briefing and argument, Justice Hall awarded Petitioner $185,412,763.60 (the "Arbitration Award"), comprising the Redemption Amount that accrued through June 30, 2022 as well as legal fees and costs.  Ressler Decl., Ex. 7 at 34-35.  On July 27, 2022, this Court granted Petitioner's motion to confirm the Arbitration Award and denied HNAI's motion to vacate it, resulting in the Judgment. Dkt. No. 34.

At no time has HNAI paid the full (or any of the) Redemption Amount, and thus the Redemption Amount has continued to accrue at the Preferred Equity Return rate.

**V.    Petitioner Purchases The Common Equity Of The Company And Reserves Rights Under The Guaranty**

In connection with establishing Court-approved bidding procedures for an auction, the HNA Debtors assigned a value to their interest in the Company of no more than $108 million. Ressler Decl., Ex. 8 § 1.1, p. 14 (definition of "Purchase Price"). When no other party participated in the auction process, Petitioner acquired the common equity of the Company by making a credit bid of only $40 million of its preferred equity interest (*id*.), which as of the date of the purchase and sale agreement had grown from approximately $184 million to over $190 million due to the non-payment of any portion of the Redemption Amount (*i.e.*, the Redemption Amount of $184 million that Justice Hall awarded through June 30, 2022 plus the additional Preferred Equity Return that had accrued since). Petitioner also paid out-of-pocket the HNA Debtors' Bankruptcy-related expenses of approximately $61 million.

The Bankruptcy parties, including the HNA entities, agreed to Petitioner's plan to purchase the Company, and Judge Walrath confirmed the sale in the Confirmation Order and Plan. Ressler Decl., Ex. 9.

Because Petitioner credit bid only $40 million, the Bankruptcy Confirmation Order and Plan expressly and emphatically reserved Petitioner's right to enforce the Guaranty against any "non-Debtor," *i.e.*, against HNAI. The relevant provision in the Confirmation Order—which was carefully negotiated to ensure that Petitioner's ongoing right to obtain payment of the Judgment and the Guaranteed Obligations was thoroughly preserved—provides:

> Notwithstanding anything herein or in the Plan, this Confirmation Order is without prejudice to the rights of [Petitioner] and its Affiliates . . . regarding the assertion of any Claims, demands, rights, Causes of Action, defense, affirmative defenses, or remedies . . . with respect to the redemption of the . . . Guarantee.

> [N]othing in the Plan shall constitute a release . . . (ii) by [Petitioner] and/or any of its Affiliates against HNA or any of its non-Debtor Related Parties . . . that may have direct or indirect liability, each in their respective capacities as such

(including, without limitation, any Claim or Cause of Action relating to the . . . Guarantee.

Notwithstanding anything to the contrary in the Plan, nothing herein shall constitute a release of (i) any Claim or Cause of Action (including, without limitation, any Claim or Cause of Action relating to the . . . Guarantee) that has been or could be asserted by [Petitioner] and/or any of its Affiliates, whether arising before or after the Effective Date, known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise contingent, against HNA (including, without limitation, [HNAI] . . .) or any other non-Debtor entity that may have direct or indirect liability[.]

Ressler Decl., Ex. 9 ¶ 17, Art. VIII.F.

## VI.   HNAI Waits Five Months To File The Motion While Petitioner Takes Significant Enforcement Efforts And HNAI Spends Resources Obstructing Those Efforts

Since the Bankruptcy purchase and sale on September 9, 2022, Petitioner has been aggressively pursuing Judgment enforcement.  Such efforts included taking a two-day deposition of HNAI's corporate representative, Mr. Eric Lai, in September 2022 and taking other discovery of HNAI, its affiliates, and lawyers that continues today.[1]

On December 8, 2022, Petitioner filed a motion seeking to have HNAI's membership interest in its wholly owned subsidiary, HNA North America LLC ("HNA North America"), turned over to Petitioner in partial satisfaction of the Judgment.  Dkt. No. 82.  In requesting, and obtaining, an elongated briefing schedule on that motion, HNAI's counsel reached for myriad excuses—China's COVID-19 outbreak, the Chinese New Year celebration, the need for new

---

[1] Because HNAI failed to pay the Redemption Amount at any time, including after the Judgment, the amounts HNAI owed under the Guaranty continued to grow.  Accordingly, on November 18, 2022, Petitioner filed a second arbitration against HNAI, seeking over $94 million under the Guaranty.  The second arbitration is ongoing.

counsel to get up to speed, the inability to communicate with China-based clients—to buy more time to oppose this motion.  Dkt. No. 94, Hr'g Tr. at 11:14-12:25.  Accordingly, HNAI's opposition was due February 10, 2023.

While Petitioner was pursuing Judgment enforcement, HNAI and its affiliates were spending significant resources in a coordinated effort to delay, frustrate, and obstruct those efforts. As set forth in Petitioner's pending motion for contempt (Dkt. No. 100), and in its turnover briefing (Dkt. No. 82, at 7), HNAI and its affiliates attempted to fraudulently convey assets.  They attempted to fraudulently transfer a commercial property located in Chicago (the "Chicago Property") to China-based affiliates for no consideration.  They covertly negotiated for the sale of a conference center located in Rockland County, New York (the "Conference Center") in violation of the Court's July 25, 2022 order requiring HNAI to provide 14 days' advance notice of such an asset transfer (the "Sale Notice Order").  Dkt. No. 32.  In fact, HNAI's affiliates planned to distribute the sale proceeds to other HNA entities for repayment of supposed loans—which discovery has shown are not loans at all but undocumented, interest-free, and uncollateralized cash transfers (Ressler Decl., Ex. 10 at 169:24-170:4; 183:21-184:5.)—while masking them as closing costs to reduce the amount of net proceeds available to judgment creditors like Petitioner.  HNAI similarly planned to pay HNA Debtor's Bankruptcy counsel, White & Case LLP, and its counsel in this action, Kobre & Kim LLP ("Kobre & Kim"), their attorneys' fees in opposing the turnover motion and drafting the Motion, also as purported closing costs for the sale of Conference Center.

HNAI and its affiliates have also frustrated discovery concerning HNAI's assets and alter-ego evidence.  In violation of the Court's January 5, 2022 order requiring HNAI to produce the full list of related companies (the "Discovery Order") (Dkt. No. 91) with which it has made undocumented, interest-free cash transfers on an as-needed basis, HNAI still has not produced a

complete list, and has not even responded to Petitioner's document requests served in September 2022.

To wrest the turnover issue away from this Court, HNA North America filed on December 19, 2023 a declaratory judgment action in Delaware state court (the "Delaware Action") making the same frivolous argument that HNAI makes here, *i.e.*, that turnover is not available under Delaware law.

After obtaining an elongated schedule on the turnover motion such that its opposition would not be due until February 10, 2023, a second law firm (Kobre & Kim) retained by HNAI filed this Motion on February 3, 2023—five months after the Bankruptcy sale. The timing of the Motion was clearly calculated. HNAI argued in its February 10 turnover opposition that the Court should wait even longer to rule on the turnover motion, filed in December, pending resolution of this Motion.

## ARGUMENT

Because Rule 60(b) is "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances," *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (cleaned up), HNAI faces a heavy burden—one it fails to meet. HNAI comes nowhere close to showing that such exceptional circumstances exist to warrant relief from the Judgment. *See William v. City of New York*, 2018 WL 11219952, at *2 (S.D.N.Y. July 23, 2018) (moving party "has the burden of demonstrating 'exceptional circumstances'"), *aff'd*, 771 F. App'x 94 (2d Cir. 2019).

**I.    The Rule 60(b) Motion Should Be Dismissed Because It Was Not Filed Within A Reasonable Time After The Bankruptcy Sale**

A Rule 60 motion must be made within "a reasonable time" after entry of a judgment. Fed. R. Civ. P. 60(c)(1). "A 'reasonable time' depends on 'the particular circumstances of the case,'

including 'the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality.'" *Zamora v. FIT Int'l Grp., Corp.*, 2019 WL 2416941, at *2 (S.D.N.Y. June 7, 2019).

HNAI did not file its Rule 60 motion within a "reasonable time" as required under FRCP. 60(c)(1). The timing of the filing is wholly tactical, not reasonable. The core reason HNAI contends it is relieved from the Judgment is that Petitioner received a windfall after acquiring an asset in the Bankruptcy on September 9, 2022—*five months* before HNAI filed the Motion. This is not only wrong, but waiting five months is not reasonable under the circumstances. *See Wyche v. Advanced Drainage Sys., Inc.*, 332 F.R.D. 109, 116 (S.D.N.Y. 2019) (holding that four and one-half month delay was unreasonable); *Gould v. Entm't Corp. v. Bodo*, 107 F.R.D. 308, 311 (S.D.N.Y. 1985) (holding that an unexplained five-month delay was unreasonable considered under 60(b)(6)); *see also William*, 2018 WL 11219952, at *2 ("Courts typically consider a delay of approximately three months significant."). Rather than diligently filing its Motion within a reasonable time after the Judgment, HNAI kept this purported "ace" up its sleeve while Petitioner was engaging in significant and expensive enforcement efforts well after its acquisition, as detailed above. Moreover, since July 2022, HNAI has been subject to the onerous terms of the attachment order, which precludes it from transferring assets. Dkt. No. 31. If there was any right to it, any one of these significant events should have caused HNAI to file the Motion sooner. Indeed, Mr. Lai testified that, as of September 13, 2022, HNAI believed it had "already satisfied the arbitral award or judgment" due to the Bankruptcy, yet HNAI did nothing. Ressler Decl., Ex. 10 at 24:12-25:3.

Notwithstanding HNAI's acute awareness of a basis (however incorrect) to seek relief from the Judgment immediately after the sale, HNAI and its affiliates focused their resources on

14

delaying and obstructing Judgment enforcement.  As set forth above, HNAI and its affiliates attempted to fraudulently convey the Chicago Property, covertly negotiated for the sale of the Conference Center in violation of the Sale Notice Order, and frustrated discovery concerning HNAI's assets and alter-ego evidence in violation of the Court's Discovery Order.   In the meantime, HNA North America, through separate counsel, engaged in naked forum shopping and launched, on December 19, 2022, a collateral attack on this Court's ability to address the turnover motion by filing the Delaware Action.

All of these resources should have, and could have, been spent filing a motion under Rule 60, or paying off the Judgment for that matter.  It is clear, however, that HNAI has no interest in satisfying the Judgment; its only interest is delay and obstructing Petitioner's Judgment enforcement.  The Rule 60 motion can and should be denied on this basis alone.  *See Sec. & Exch. Comm'n v. Penn*, 2021 WL 1226978, at *6 (S.D.N.Y. Mar. 31, 2021) (relied on by HNAI, Dkt. No. 118 at 9) (motion denied where debtor waited to file motion two months after Supreme Court decision, which was basis of motion, and noting debtor's "series of strategic moves to delay the Court's issuance of judgments against him and against the entities he controls" was part of "larger pattern of dilatory conduct that wastes judicial time and that has delayed this case for no legitimate reason" and "disregard for court deadlines"); *William*, 2018 WL 11219952, at *2 (motion denied because (i) inaction by movant presumptively prejudiced non-movant, (ii) movant delayed ten months, and (iii) "garden-variety attorney inattention . . . fails to rise to excusable neglect"); *see E. Sav. Bank, FSB v. Ferro*, 2018 WL 5892654, at *3 (E.D.N.Y. Nov. 8, 2018) ("The relief provided by Rule 60(b) is equitable in nature and, in exercising its discretion under Rule 60(b), a court may always consider whether the moving party has acted equitably.") (cleaned up).

## II.      The Rule 60(b) Motion Is Meritless

HNAI argues (Br. at 17-19) it should be relieved from the Judgment because (i) the Arbitration Award "effectively" caused Petitioner's equity interest under the LLC to "expire"—essentially relieving HNAI from its ongoing contractual commitments in the Guaranty to actually pay Petitioner the full amount of the Guaranteed Obligations—and (ii) Petitioner recovered the full amount of the $185 million Judgment "through the bankruptcy process."  Thus, HNAI claims that the Guaranty is totally satisfied and should be voided.

As shown below, this is nonsensical and contrary to the parties' agreements.

### A.      The Arbitration Award Did Not Cause Petitioner's Rights To Expire

HNAI asserts (Br. at 17-18) that the Arbitration Award "effectively converted [SLG Member's] equity interests [in the JV Agreement] into the Final Award, and its equity interests expired." Br. at 11.  HNAI is wrong for at least two reasons.

*First*, Petitioner's Judgment relates to the Guaranty and not the JV Agreement, so HNAI's first argument concerning the JV Agreement is irrelevant.  It is also wrong, as shown below.  As to the Guaranty,  the Arbitration Award neither extinguished Petitioner's rights under the Guaranty nor capped HNAI's liability under the Guaranty at $185 million Judgment.  To the contrary, HNAI agreed to pay "unconditionally, absolutely and irrevocably" to Petitioner the "complete payment in full (and not merely the collectability) of" the Guaranteed Obligations.  Ressler Decl., Ex. 6 § 1.2; *see also id*., § 1.3(a) (Guaranty was "guaranty of payment and not merely of collection"); *id*., § 1.3(c) (HNAI "obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations").  The Guaranty also expressly provides that "the amount of the Guaranteed Obligations ***shall not be limited to any specific liability amount*** and this Guaranty shall terminate only upon the indefeasible payment and performance of the Guaranteed Obligations" (*id*., § 1.2 (emphasis added)), and the JV Agreement contains a similar

16

representation (Ressler Decl., Ex. 3 § 3.7 (HNAI "agreed that the Guaranty itself **will not provide for [] a maximum liability amount**") (emphasis added)). These provisions would make no sense at all if HNAI's obligation to pay the full the Redemption Amount was limited to the $185 million liability amount and terminated before HNAI actually paid all of the Guaranteed Obligations.

HNAI has not paid Petitioner the Guaranteed Obligations in full, and so neither Petitioner's rights under the Guaranty nor HNAI's ongoing payment obligations have expired. Justice Hall merely confirmed that HNAI breached the Guaranty and in fact owed Petitioner the Redemption Amount that had accrued through June 30, 2022. Justice Hall did not rewrite the parties' contract or otherwise relieve HNAI of its ongoing payment obligations therein.[2] HNAI's contention would yield the perverse result that a guarantor of a bad boy guaranty with ongoing payment obligations would benefit by confessing to liability and never paying the amounts due, thereby avoiding the very payment terms to which it agreed, whereas the guaranteed party would be penalized for diligently enforcing its rights with respect to some of the guaranteed payments. HNAI cites no legal authority for this absurdity, which should be rejected.

---

[2] Even if the Redemption Amount is capped (it is not), and even if the Arbitration Award constituted a Redemption in Full (it did not), HNAI would *still* be liable under the Guaranty. Payment of the Redemption Amount is only one of HNAI's payment obligations under the Guaranty. The second definition of Guaranteed Obligations includes Bankruptcy-related damages and out-of-pocket costs. The Guaranty only terminates upon payment in full of all the Guaranteed Obligations—not just the Redemption Amount. Ressler Decl., Ex. 6 § 1.2. Likewise, Section 1.7 requires HNAI to reimburse Petitioner for its fees and costs to enforce the Guaranty, which similarly "survive[s] the payment and performance of the Guaranteed Obligations." *Id.*, § 1.7.

*Second*, even if the JV Agreement were relevant to the Motion, Petitioner's rights under the JV Agreement only expire upon actual "payment" of the full Redemption Amount (Ressler Decl., Ex. 3 § 3.3), and there has been no such "payment."   The JV Agreement further unambiguously provides that the Redemption Amount accrues until there is a payment, and it is not capped.  Section 3.3 of the JV Agreement provides that "[t]he Preferred Equity Return *shall* accrue on the Net Preferred Equity and *shall* be compounded quarterly, and, as so compounded shall be paid to the Investor Member . . . ."  *Id.* (emphasis added).  Section 3.3 does not state, suggest, or imply that mandatory accrual somehow ceases to accrue at a particular time or is somehow capped at a particular amount.  HNAI latches on to the name of the defined term "Make Whole Premium" to argue (Br. at 18) that the Arbitration Award made Petitioner whole under the JV Agreement.  The Make Whole Premium is simply a component of the Redemption Amount and provides Petitioner with a recovery floor, *i.e.*, through June 30, 2022.  To state the obvious, a floor is not a ceiling.

As of the date of the Arbitration Award, Petitioner's rights under the JV Agreement did not expire.  Nor could they have.  After the Arbitration Award and Judgment, Petitioner credit bid a portion ($40 million) of its extant preferred equity interest towards the purchase of the asset in Bankruptcy, and Petitioner's bid did not draw a peep from HNAI or its affiliates in the Bankruptcy, as none of them objected on the ground that its preferred equity interest "expired."  Any argument to the contrary is waived and would amount to a collateral attack on Judge Walrath's order confirming the sale.

## B.   Petitioner's Acquisition Of A Bankruptcy Asset Is Irrelevant And HNAI Waived Any Defense Based On Such Acquisition

HNAI next argues (Br. at 18-19) it would be "inequitable" to allow Petitioner to enforce the $185 million Judgment after (i) obtaining the Property valued at $2 billion, (ii) receiving $82

million in cash reserves, and (iii) acquiring a net equity value of $192 million.  Each of these defenses to payment are irrelevant, misleading, and/or overtly false and expressly waived in the Guaranty.

Petitioner did not acquire the *Property*; the sale documents unambiguously reflect that, after an auction that drew no interested bidders, Petitioner (i) acquired the common equity in the *Company* in exchange for paying out-of-pocket HNA Debtor's own Bankruptcy-related expenses of approximately $61 million and credit bidding only $40 million of its preferred equity interest (Ressler Decl., Ex. 9 ¶¶ 5, 6; *id*., Ex. 8 at 14 (definition of "Purchase Price")); (ii) acquired the enormous debt on the Property and mezzanine levels (*id*., Ex. 9 ¶¶ 6, 19-20); and (iii) expressly preserved its rights under the Guaranty (*id*., Ex. 9 ¶ 17, Art. VIII.F.).  If the parties in the Bankruptcy had agreed that the acquisition of the asset nullified Petitioner's $185 million Judgment and otherwise terminated the Guaranty, the sale agreement would have said so; it says the opposite.  In short, whatever the value of the asset Petitioner received in the Bankruptcy, the parties agreed that it reduced Petitioner's preferred equity interest by only $40 million, not $185 million or $192 million, and certainly not $2 billion.  That is not an "inequitable windfall," as HNAI contends (Br. at 5); it is what the parties agreed.  Accordingly, the value of the Property (which is saddled with debt), Petitioner's net equity value, and the receipt of cash reserves are utterly irrelevant to the Motion.[3]  HNAI's attempt to recast the deal other than as reflected in the

---

[3]  Although irrelevant for purposes of this Motion, HNAI asserts falsely that Petitioner received $82 million from the cash reserve.  The settlement sheet, to which HNAI cites, reflects a reserve balance at closing of $81,977,315.56.  Dkt. No. 113-4, Derrick Decl., Ex. 4.  Of that amount, $50,430,143.46 were amounts generated by cash flow from the Property during the Bankruptcy

sale agreement is an improper collateral attack on Judge Walrath's order approving the sale on those terms.

Moreover, HNAI's core argument that the Bankruptcy sale should satisfy the Redemption Amount as a matter of equity is negated by at least two of the 22 Waived Rights and Defenses in the Guaranty. Specifically, the Guaranty provides that if Petitioner acquires the "Forced Sale Property," *i.e.*, acquiring the Property through a Forced Sale under Section 11.4(a)(i) of the JV Agreement, the Guaranteed Obligations "shall not include payment of the Redemption Amount," "unless there shall have occurred [] a Bankruptcy Action." Ressler Decl., Ex. 6 § 1.3(c)(xiii). In other words, HNAI unambiguously agreed that the Redemption Amount would be satisfied only if Petitioner (i) exercised its Forced Sale right under the JV Agreement (ii) to purchase the Property (iii) outside of a bankruptcy. None of those conditions exist here. HNAI admits that Petitioner "did not invoke the forced sale provision" (Br. at 18) and Petitioner purchased the common equity of the Company (not the Property) in connection with the Bankruptcy (not outside the Bankruptcy).

For the avoidance of doubt, HNAI affirmatively waived any defense to payment of the Redemption Amount portion of the Guaranteed Obligations based on a sale of any other kind of

---

that were due to the various third parties (the "Mortgage Lender Reserves"). The Mortgage Lender Reserves were held in escrow pending resolution of the Bankruptcy. At closing, these amounts were released to the third parties identified in the settlement; none was released to Petitioner. The remaining $31,547,172.10 held in reserves was *paid by Petitioner* to the lenders in order for them to reinstate their loans at the Property and mezzanine levels. In sum, Petitioner did not "receive" any of the reserves, which would be irrelevant anyway, and did not use any of those funds to purchase an interest in the Company.

asset in any other context.  *See id.*, § 1.3(c)(xiv) (HNAI waived any defense in any way relating to the "bankruptcy . . . of [the Company]. . . or any sale . . . of any or all assets of [the Company], HNA [JV] Member . . . or any changes in the members [of the Company]").  Thus, contrary to its assertion in the Motion, HNAI is not automatically relieved of its obligation to pay in full the Redemption Amount portion of the Guaranteed Obligations simply because Petitioner  acquired an asset from the Bankruptcy.

Finally, it is as galling as it is ironic that HNAI now complains the circumstances in which it finds itself are "inequitable."  HNAI is a highly sophisticated entity that entered into the bad boy Guaranty to induce Petitioner to provide its Chinese affiliate $148 million; its affiliates committed the contractually defined bad act by filing the unauthorized Bankruptcy; it breached the Guaranty; it failed to pay Petitioner a single penny; it attempted to fraudulently convey two of its assets to frustrate Petitioner's Judgment enforcement; it violated the Sale Notice Order and Discovery Order; and it has forced Petitioner to protect its rights in three forums, *i.e.*, here, in Delaware, and in a second arbitration, at considerable cost.  Meanwhile, Petitioner has not been paid in full on either the $185 million Judgement or the Guaranteed Obligations.  The equities tilt solely in Petitioner's favor.

## III.   HNAI's Alternative Request To "Write Down" The Judgment By $40 Million Is Premature

HNAI's alternative request (Br. at 19-21) to reduce the $185 million Judgment now is premature.  HNAI has not paid a single penny, Petitioner's turnover motion is now fully briefed, Petitioner's contempt motion is pending, and a final decision in a second arbitration in which Petitioners seeks an additional $94 million from HNAI under the Guaranty is expected in March.  All of these pending motions and the arbitration will significantly affect the total dollar amount that HNAI owes, and there is no scenario in which Petitioner will receive more that it is owed.

Rather than recalculating the total amount HNAI owes piecemeal, Petitioner respectfully submits that the Court should wait until these matters have concluded before "writing down" any portion of the Judgment.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that HNAI's Rule 60(b) motion be denied.

Dated:  New York, New York
        February 27, 2023

Respectfully submitted,

KASOWITZ BENSON TORRES LLP
By: */s/ Mark P. Ressler*

    Mark P. Ressler
    Paul M. O'Connor III
    1633 Broadway
    New York, New York 10019
    Telephone: (212) 506-1700
    mressler@kasowitz.com
    poconnor@kasowitz.com

    Henry B. Brownstein
    1401 New York Avenue, NW, Ste. 401
    Washington, D.C. 20005
    Telephone: (202) 760-3400
    hbrownstein@kasowitz.com

    *Attorneys for Petitioner 245 Park Member LLC*

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this brief contains 6,509 words, excluding the parts of the brief exempted by this Court's Individual Practices § II(D), as calculated by the word-processing software used to prepare this brief.  Accordingly, this brief complies with the formatting rules provided in the Court's Individual Practices § II(D).

*/s/ Mark P. Ressler*
Mark P. Ressler
