**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————

**245 PARK MEMBER LLC,**

                           **Petitioner,**

        **- against -**

**HNA GROUP (INTERNATIONAL) COMPANY**
**LIMITED,**

                         **Respondent.**
————————————————————————

**22-cv-5136 (JGK)**

**OPINION AND ORDER**

**JOHN G. KOELTL, District Judge:**

On July 25, 2022, this Court confirmed an arbitration award
of $185,412,763.60 (the "Award") issued in favor of the
petitioner, 245 Park Member LLC ("245 Park"), against the
respondent, HNA Group (International) Company Limited ("HNA
International"). 245 Park Member LLC v. HNA Grp. (Int'l) Co.
Ltd., No. 22-cv-5136, 2022 WL 2916578, at *1 (S.D.N.Y. July 25,
2022) (the "Confirmation Decision"). The same day, the Court
granted 245 Park's motion for a pre-judgment order of attachment
of HNA International's assets and ordered HNA International to
provide 245 Park with 14 days' advance notice of the sale of any
asset that HNA International owned directly or indirectly. 245
Park Member LLC v. HNA Grp. (Int'l) Co. Ltd., No. 22-cv-5136,
2022 WL 2916577, at *5 (S.D.N.Y. July 25, 2022) (the "Attachment
Decision"). On July 27, 2022, the Clerk of Court entered
judgment against HNA International. ECF No. 34 (the "Judgment").

Now before the Court are two motions concerning enforcement of the Judgment. First, 245 Park moves pursuant to Federal Rule of Civil Procedure 69 and New York Civil Practice Law and Rules ("C.P.L.R.") Sections 5225(a) and 5240 for an order directing HNA International to turn over its 100% membership interest in HNA North America, LLC ("HNA North America"), a Delaware limited liability company, to 245 Park in partial satisfaction of the Judgment. ECF No. 80. Second, HNA International moves pursuant to Federal Rule of Civil Procedure 60(b) to be relieved from the Judgment on the ground that 245 Park already has received more than the final Award and Judgment. ECF No. 111.

For the following reasons, 245 Park's motion for a turnover is **granted**, and HNA International's motion for relief from the Judgment is **denied**.

### I.

### A.

This action arose from the purchase of a commercial skyscraper at 245 Park Avenue in New York City (the "Property"). Petition, ECF No. 1-1, ¶ 11; Confirmation Decision, 2022 WL 2916578, at *2; Attachment Decision, 2022 WL 2916577, at *1. In May 2017, a group of entities affiliated with HNA International, including an entity called 245 Park JV LLC (the "Company"), purchased the Property for $2.21 billion. Petition ¶ 11. In June 2018, 245 Park Member LLC -- an entity owned by SL Green Realty

2

Corp. ("SL Green"), New York City's largest owner of commercial office space -- helped finance this acquisition by making a preferred equity investment of $148 million in the Company. Petition ¶¶ 12-13. The investment was memorialized in an Amended and Restated Limited Liability Company Agreement. Id. ¶ 13; see also ECF No. 130-3 (the "LLC Agreement"). The LLC Agreement secured 245 Park substantial contractual rights and protections in exchange for its investment in the Company, including "payment in full of the Redemption Amount" by the "Mandatory Redemption Date" of June 30, 2022. Petition ¶ 15; LLC Agreement § 3.5; id. at 18, 23 (defining "Mandatory Redemption Date" and "Redemption Amount"). The Redemption Amount was the sum of 245 Park's $148 million investment, a return on the investment at an agreed-to rate until the Redemption Amount was paid in full, defined as a "Redemption in Full," and a guaranteed minimum return on the investment through June 30, 2022 in the event the Redemption Amount was paid before that date. LLC Agreement § 3.3; id. at 23 (defining "Redemption in Full").

The LLC Agreement also gave 245 Park consent rights to 43 defined "Major Decisions" of the Company, including approving the budget, engaging professional and legal assistance, and the right to consent to the Company's filing for bankruptcy. Id. § 4.2. Making a Major Decision without 245 Park's consent

3

was a "Cause Event" under the LLC Agreement, as was filing for
bankruptcy. Petition ¶ 16; LLC Agreement at 6. A Cause Event
accelerated the Mandatory Redemption Date from June 30, 2022 to
ten days after the Cause Event. Petition ¶ 16; LLC Agreement at
18. The Company's failure to pay the Redemption Amount by the
Mandatory Redemption Date was a "Redemption Trigger Event." LLC
Agreement at 23. On a Redemption Trigger Event, 245 Park was
entitled to the Redemption Amount in preference to any other
distributions made by the Company. Id. §§ 9.2(a), (b).

To ensure payment under the LLC Agreement, 245 Park
obtained a Guaranty from three HNA entities: HNA International,
HNA JV Member, and HNA Group Co. Ltd. (together, the "HNA
Guarantors"). ECF No. 130-6 (the "Guaranty"), § 1.2. Relevant
here, if the Company or any of the HNA Guarantors filed for
bankruptcy, each Guarantor agreed to pay 245 Park (1) the full
Redemption Amount, (2) fees and costs related to a bankruptcy
filing, and (3) the cost of enforcement of the LLC Agreement.
Id. The Guaranty "unconditionally, absolutely and irrevocably"
guaranteed to 245 Park "the punctual and complete payment in
full (and not merely the collectability) of" the first two
categories of payments, referred to as the "Guaranteed
Obligations." Id.; see also id. § 1.3(a) (reiterating that the
Guaranty was a "guaranty of payment and not merely of

4

collection"). [1] The Guaranty also provided that "the amount of the
Guaranteed Obligations shall not be limited to any specific
liability amount and this Guaranty shall terminate only upon the
indefeasible payment and performance of the Guaranteed
Obligations." Id. § 1.2; see also LLC Agreement § 3.7(a)
(similarly providing that "the Guaranty [] will not provide for
either a maximum liability amount or an expiration date"). The
HNA Guarantors further assured 245 Park that it was their
"unambiguous and unequivocal intention . . . that [they] shall
be obligated to fulfill the Guaranteed Obligations and all
liabilities under this Guaranty, notwithstanding any occurrence,
circumstance, [or] event . . . whether or not otherwise or
particularly described herein" and "whether occurring before or
after any default." Guaranty § 1.3(c). [2]

---

[1] "The difference between a guaranty of collection and a guaranty of
payment is quite simple." N.Y.C. Dep't of Fin. v. Twin Rivers, Inc., 920
F. Supp. 50, 52 (S.D.N.Y. 1996). "In a guaranty of collection, the
guarantor undertakes the responsibility to pay if and only if the debt
cannot be collected from the principal through legal proceedings." Id.
(citing, inter alia, McMurray v. Noyes, 72 N.Y. 523, 525 (1878) and N.
Ins. Co. v. Wright, 76 N.Y. 445 (1879)). "In contrast, a guarantor of
payment undertakes an unconditional guaranty that the debtor will pay on
the debt. If for some reason, the debtor fails to make payment to the
creditor, he can proceed directly against the guarantor . . . [and] need
not take any preliminary steps against the principal debtor before he
seeks to collect the debt owed from the guarantor of payment." Id. at 53;
see also, e.g., In re S. Side House, LLC, 470 B.R. 659, 675 (Bankr.
E.D.N.Y. 2012) ("New York State courts have long recognized that when a
party guarantees payment of a debt, as opposed to collection of a debt,
the guaranty is absolute and unconditional.").

[2] As to the third category of payments (the cost of enforcement of
the LLC Agreement), if the Guarantors failed to perform within ten days
after demand, they would be required to "pay [245 Park] all costs and
expenses (including court costs and reasonable attorneys' fees) incurred

5

In the Guaranty, each of the HNA Guarantors also
unconditionally waived any common law, equitable, statutory or
other right -- including 22 specifically enumerated rights and
defenses (the "Waived Rights and Defenses") -- the Guarantors
might have had in connection with the Guaranteed Obligations.
Id. § 1.3. The Waived Rights and Defenses included any right or
defense to payment based on 245 Park's acquisition of the
Company's or HNA JV Member's assets from a bankruptcy.
Id. §§ 1.3(c)(xiii), (xiv). But if 245 Park acquired the
Property through a "Forced Sale" under Section 11.4(a)(i) of the
LLC Agreement, the Guaranteed Obligations would "not include
payment of the Redemption Amount," "unless there shall have
occurred [] a Bankruptcy Action of or with respect to any of the
Guarantors," the Company, or an HNA subsidiary.
Id. § 1.3(c)(xiii).

**B.**

On October 31, 2021, the Company and certain of its
affiliates (together, the "HNA Debtors") filed for bankruptcy
without 245 Park's approval. See In re PMW Prop. Mgmt. LLC, Case
No. 21-11445 (Bankr. D. Del.) (the "Bankruptcy");
Petition ¶¶ 18-19. On December 21, 2021, 245 Park filed a JAMS
arbitration demand against HNA International pursuant to the

---

by [245 Park] in the enforcement hereof or the preservation of [245
Park's] rights hereunder." Guaranty § 1.7. This obligation survived even
if the Guaranteed Obligations were repaid in full. Id.

Guaranty's expedited arbitration provision. Petition ¶ 23. 245
Park argued that the bankruptcy filing, along with several Major
Decisions taken without 245 Park's consent leading to the
Bankruptcy, were Cause Events that accelerated the Mandatory
Redemption Date to November 10, 2021; that because the Company
did not pay the Redemption Amount by that date, a Redemption
Trigger Event had been triggered; and that HNA International's
failure to pay the Redemption Amount breached the Guaranty.
Petition ¶ 22.

On April 30, 2022, the Honorable L. Priscilla Hall (Ret.),
a former Associate Justice of the New York State Supreme Court,
Appellate Division, whom the parties selected as the arbitrator,
issued the Award in favor of 245 Park, concluding that 245 Park
had demonstrated each of the elements of a claim to collect on a
guaranty, namely, "the existence of the guaranty, the underlying
debt, and the guarantor's failure to perform under the
guaranty." Petition ¶ 27; see also Confirmation Decision, 2022
WL 2916578, at *2. Justice Hall found HNA International liable
to 245 Park for a redemption amount of $184,557,377.25,
attorney's fees and costs of $752,700.24, and fees and
disbursements due to JAMS, for a total of $185,412,763.60.
Confirmation Decision, 2022 WL 2916578, at *1 n.1.

On May 20, 2022, 245 Park petitioned the New York State
Supreme Court to confirm the Award. ECF No. 1. On June 17, 2022,

HNA International removed the action to this Court pursuant to 28 U.S.C. § 1441. ECF No. 1. On July 25, 2022, this Court confirmed the Award. Confirmation Decision, 2022 WL 2916578, at *5. The same day, the Court granted 245 Park's motion for a pre-judgment order of attachment of HNA International's assets and ordered HNA International to provide 245 Park with 14 days' advance notice of the sale of any asset that HNA International owned directly or indirectly. Attachment Decision, 2022 WL 2916577, at *5; ECF No. 32 (the "Advance Notice Order"). The Advance Notice Order clarified that the notice requirement applied to any intended sale of the Palisades Premier Conference Center, a conference center in Rockland County, New York (the "Conference Center"). ECF No. 32. The Conference Center is owned by Palisades Training Center NY LLC ("Palisades LLC"), an affiliate of HNA International. See ECF No. 102-4.

On July 27, 2022, following the Confirmation and Attachment Decisions, the Clerk of Court entered the Judgment against HNA International. ECF No. 34.

### C.

The current motions center on events that followed the issuance of the Judgment. The first is 245 Park's purchase of the Company through a sale in the Bankruptcy Court. On June 9, 2022, the HNA affiliates in the bankruptcy began auction proceedings for the sale of the Company, which indirectly owned

the Property. No. 21-11445 (Bankr. D. Del.), Bankr. ECF No. 669 ¶ 20. The auction was open to the public for bidding, and 245 Park submitted a "stalking horse bid" to acquire full ownership of the Company.[3] The bid included the payment of approximately $68 million of the debtors' bankruptcy-related expenses, the acquisition of substantial mortgage and mezzanine debt, and a "credit bid" of $40 million of 245 Park's preferred equity interest in the Company. See Bankr. ECF No. 762 ¶ 2 (July 9, 2022). No other party participated in the auction process, and 245 Park acquired the common equity of the Company.

In the Confirmation Order and Plan confirming the sale, Judge Walrath of the Bankruptcy Court concluded that "[t]he Plan has been proposed in good faith and not by any means forbidden in law with respect to the" debtors, that the "Plan is the result of extensive, good faith, arm's length negotiation," and that the transactions "are in the best interests of the estates[] and will maximize value for all stakeholders." ECF No. 130-9 ("Confirmation Order"), at 4-5. Through the sale, 245 Park also expressly reserved its rights to collect from HNA International under the Guaranty. See id. at 21; ECF No. 130-9,

---

[3] A "stalking horse bid" is "an initial bid on the assets of a bankrupt company" that "sets the low-end bidding bar so that other bidders can't underbid the purchase price." Stalking Horse Bid: Definition, How It Works, Example, INVESTOPEDIA, https://www.investopedia.com/terms/s/stalkinghorsebid.asp (last accessed May 18, 2023).

Ex. 1 ("Confirmation Plan"), at 58, Art. VIII.F. Following 245
Park's acquisition of the Company, 245 Park's owner, SL Green,
reported in a 10-Q filing with the SEC that it had acquired the
Property in September 2022 and that it valued the Property at
approximately $1.96 billion. See U.S. Secs. & Exch. Comm'n, SL
Green Realty Corp. Form 10-Q at 32 (Nov. 4, 2022), available at
https://www.sec.gov/Archives/edgar/data/1492869/0001040971220000
44/slg-20220930.htm (last accessed May 18, 2023).

        Beyond acquiring the Company, 245 Park also has sought to
satisfy its $185 million Judgment against HNA International,
including through the turnover motion now before the Court. That
motion seeks to have HNA International turn over its 100%
membership interest in HNA North America, a Delaware LLC that,
according to HNA International's corporate representative, is
the company's "most valuable asset." ECF No. 81-2 at 27:13-21;
see also ECF No. 81-1 at 41 (organizational chart reflecting HNA
International's 100% direct ownership of HNA North America); ECF
No. 81-2 at 133:13-17 (deposition testimony confirming HNA
International's 100% ownership of HNA North America). HNA North
America holds interests in at least two valuable assets in the
United States: (1) a wholly owned indirect interest in a 50-
story building in Chicago's West Loop neighborhood, at 181 West
Madison Street (the "Chicago Property"); and (2) a wholly owned

indirect interest in the Conference Center in Rockland County.
ECF No. 81-2 at 80:23-81:10; ECF No. 81-3; ECF No. 81-6 at 3.

On October 11, 2022, subsidiaries of HNA International
submitted a proposed amended bankruptcy plan in the Bankruptcy
Court that included the transfer of the Chicago Property to
China-based affiliates of HNA International for no
consideration. ECF No. 81-7 at 36. After 245 Park filed an
objection, Judge Walrath agreed that the proposed transfer of
the Chicago Property was not proposed in good faith and that the
court could not affirm the proposed plan "in good conscience."
ECF No. 81-9 at 38:2-6.

On December 8, 2022, 245 Park filed its motion seeking
turnover of HNA North America. ECF No. 82. Eleven days later, on
December 19, 2022, HNA North America filed a declaratory
judgment action against 245 Park in the Delaware Court of
Chancery (the "Delaware Action"), naming HNA International as a
nominal defendant and seeking a ruling that such a turnover
would be prohibited under Delaware law. See ECF No. 119-2. On
January 30, 2023, 245 Park noticed its intent to dismiss the
Delaware Action, see ECF No. 119-3, but at the time the current
motions in this action were briefed, no briefing schedule on any
motion in the Delaware Action had yet been set.

Then, on February 1, 2023, counsel for HNA International
advised this Court that HNA International was "in the process of

11

receiving or reviewing a prospective buyer's offer to purchase"
one of HNA International's assets, "the size of which might fall
into the scope of the Advance Notice Order." ECF No. 96. The
next day, on February 2, 2023, 245 Park informed the Court that
it recently had learned that Palisades LLC had negotiated the
sale of the Conference Center, that the buyer had already signed
the Purchase/Sale Agreement, and that Palisades LLC intended to
counter-sign the agreement by Friday, February 3, 2023. ECF No.
100 at 13. 245 Park represented that HNA International had not
advised 245 Park of this imminent sale, let alone provided 245
Park with two weeks' notice. Id. On February 3, 2023, this Court
enjoined HNA International, Palisades LLC, and any persons
acting in concert with them from reaching agreement on a
purchase and sale of the Conference Center. ECF No. 108.

Also on February 3, 2023, HNA International filed its
motion under Rule 60(b) for relief from the Judgment. The Rule
60(b) motion argues that relief from the Judgment is warranted
because 245 Park has already received more than the final Award
and Judgment through its purchase of the Company in the
Bankruptcy, and that, in the alternative, the Court should write
down the Judgment by $40 million, the amount of 245 Park's
equity interest that 245 Park credit bid to purchase the
Company. ECF No. 111.

**II.**

Although 245 Park's turnover motion was filed first, the Court will begin with the Rule 60(b) motion, because granting that motion might moot the turnover motion.[4]

**A.**

Rule 60(b) allows a court to relieve a party from a final judgment on several grounds. HNA International seeks relief under Rule 60(b)(5), on the grounds that "the judgment has been satisfied, released, or discharged" and that "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5); ECF No. 112 at 5. HNA International also invokes Rule 60(b)(6), which allows relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). HNA International argues that it should be relieved from the Judgment because the arbitration Award caused 245 Park's equity interest in the Company to expire and because 245 Park recovered the full amount of the $185 million Judgment through the bankruptcy sale. Both arguments are without merit.[5]

---

[4] Unless otherwise noted, this Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

[5] As an initial matter, 245 Park argues that the Rule 60(b) motion is untimely. Motions under Rule 60(b)(5) and (6) "must be made within a reasonable time," Fed. R. Civ. P. 60(c)(1), which is "determined based on the particular circumstances of the case, taking into account the reason for any delay, the possible prejudice to the non-moving party, and the interests of finality," Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic, 864 F.3d 172, 182 (2d Cir. 2017). HNA International filed its Rule 60 motion six months after the Judgment, less than five months after 245 Park credit bid its preferred equity interests

HNA International first argues that "through the Guaranty arbitration" that resulted in the Award, 245 Park "effectively converted its equity interests into the [] Award, and its equity interests expired." ECF No. 112 at 18. But the Award neither extinguished 245 Park's rights nor capped HNA International's liability under the Guaranty. To the contrary, HNA International "unconditionally, absolutely and irrevocably" committed to paying 245 Park the "complete payment in full (and not merely the collectability) of" the Guaranteed Obligations. Guaranty § 1.2. Under the Guaranty, that "obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations," "the amount of the Guaranteed Obligations shall not be limited to any specific liability amount," and the "Guaranty shall terminate only upon the indefeasible payment and performance of the Guaranteed

---

in the bankruptcy sale, and less than two months after 245 Park moved for a turnover. This time is well within the time limits that courts in this Circuit have found to be reasonable. See, e.g., TAL Props. of Pomona, LLC v. Vill. of Pomona, No. 17-cv-2928, 2019 WL 3287983, at *5-6 (S.D.N.Y. July 22, 2019) (motion filed five months after newly discovered evidence was timely); JAT Yugoslav Airlines v. Agencija Rudenjak, Inc., No. 91-cv-7941, 1995 WL 146229, at *3 (S.D.N.Y. Mar. 31, 1995) (motion filed more than a year after the judgment was timely); cf. Rowe Ent. v. William Morris Agency Inc., No. 98-cv-8272, 2012 WL 5464611, at *2 (S.D.N.Y. Nov. 8, 2012) ("In this Circuit, a reasonable time is within eighteen months of the entry of judgment[.]"). Moreover, considering the Rule 60(b) motion would not prejudice 245 Park, which still has been able to pursue satisfaction of the Judgment, including through the pending turnover motion. Finally, the interests of finality do not bar the Court from considering the Rule 60(b) motion. Because enforcement of the Judgment remains ongoing, whether HNA International is entitled to relief from the Judgment is an important and ongoing issue.

Obligations." Id. §§ 1.2, 1.3(c); see also Twin Rivers, 920 F.
Supp. at 53 ("[A] guarantor of payment undertakes an
unconditional guaranty that the debtor will pay the debt."). HNA
International has not paid 245 Park the Guaranteed Obligations
in full. Therefore, neither 245 Park's rights under the Guaranty
nor HNA International's ongoing payment obligations has expired.
Far from relieving HNA International of its obligations, the
Award merely confirmed that HNA International breached the
Guaranty and in fact owed 245 Park the Redemption Amount that
had accrued through June 30, 2022.

Alternatively, HNA International argues that it would be
"inequitable" to allow 245 Park to enforce the $185 million
Judgment after using $40 million of its equity interests in the
Company to acquire the Company and its interest in the Property
when HNA International asserts the Property is valued at
approximately $2 billion. See ECF No. 112 at 18-19. But there is
nothing inequitable about allowing 245 Park to continue
enforcing the Guaranty after the bankruptcy sale. Through that
sale, 245 Park did not simply spend $40 million to acquire a $2
billion skyscraper. Rather, 245 Park acquired the common equity
of the Company, which was burdened by substantial debt, in
exchange for paying approximately $61 million of the debtors'
bankruptcy-related expenses and credit bidding $40 million of
245 Park's preferred equity interest. The Confirmation Order on

15

the agreement makes clear that, whatever the value of the
Property, 245 Park's purchase of the Company reduced its equity
interests by only $40 million and preserved its rights under the
Guaranty. See Confirmation Order at 21 ¶ 17; Confirmation Plan,
at 58, Art. VIII.F.

Judge Walrath's oversight and approval of the sale supports
this conclusion. Judge Walrath concluded that 245 Park's $40
million credit bid maximized the Company's value and that the
sales process was fair and conducted in good faith. In view of
this oversight, there is "no reason for this Court to override
the contractually specified understanding of the parties, the
conclusions of the bankruptcy court, and the market's valuation
of [the] assets at the time of the sale" by finding, contrary to
the bankruptcy court's order, that the bankruptcy sale fully
relieved HNA International of its obligations under the
Guaranty. See Tennenbaum Cap. Partners L.L.C. v. Kennedy, 372 F.
App'x 180, 181 (2d Cir. 2010) (declining to assign purported
excess value to assets acquired in bankruptcy sale pursuant to
credit bid where, as here, the "bankruptcy court found the sale
to be substantively and procedurally fair," the sale was
"conducted with full notice," and "no better offer was found");
In re Futterman, 602 B.R. 465, 476 (Bankr. S.D.N.Y. 2019)
(finding that approval of auction procedures
"foreclose[d] . . . collateral attacks on the 'commercial

reasonableness' of the procedures that the [Bankruptcy] Court approved"). Nor has HNA International offered any reason to conclude that the sale was tainted by fraud, mistake, or exploitative overreaching or that the sale price was unconscionably low. See Futterman, 602 B.R. at 477 (explaining that, under New York law, there must be proof of fraud, mistake, or exploitative overreaching during a judicial sale for a court to exercise its inherent equitable authority to set aside the sale). HNA International speculates that 245 Park's credit bid discouraged other bidders, but that speculation -- unsupported by any evidence -- is contrary to Judge Walrath's determination that the credit bid maximized value for all stakeholders.[6]

It is true that, under the Guaranty, if 245 Park acquired the Property through a Forced Sale under Section 11.4(a)(i) of the LLC Agreement, the Guaranteed Obligations would "not include payment of the Redemption Amount," "unless there shall have

---

[6] After briefing on these motions concluded, HNA International filed a supplemental letter alerting the Court to a presentation to investors prepared by SL Green in December 2022 that purported to show that the "equity" that SL Green, through 245 Park, received through its indirect acquisition of the Property through the bankruptcy sale was $192 million. See ECF No. 146. HNA International argues that this presentation confirms that "the fair market value of the property, minus debts, when [245 Park] purchased it in September 2022 was at least approximately US $192 million." Id. at 1. But the presentation does not change the analysis. As explained above, 245 Park's $40 million credit bid for the Company was the value that the parties to an arm's-length transaction assigned to it and that Judge Walrath confirmed. Under New York law, it is appropriate to use this court-approved credit bid in concluding that the Judgment has not been fully satisfied. See, e.g., Tennenbaum, 372 F. App'x at 181.

occurred [] a Bankruptcy Action." Guaranty § 1.3(c)(xiii). In other words, the Redemption Amount would be satisfied if 245 Park (1) exercised its Forced Sale right under the LLC Agreement (2) to purchase the Property (3) outside of a bankruptcy. But none of those conditions exist here. First, 245 Park did not invoke the forced sale provision. See ECF No. 112 at 18 (HNA International acknowledging this). Second, 245 Park purchased the common equity of the Company, not the Property. And third, 245 Park did so in connection with the Bankruptcy, not outside it. Thus, under the LLC Agreement and the Guaranty, 245 Park's purchase of the Company through the bankruptcy sale did not satisfy HNA International's obligations to 245 Park.

Because the Judgment has not been fully satisfied and because neither the arbitration award nor the bankruptcy sale fully relieved HNA International of its payment obligations to 245 Park, HNA International's motion for relief from the Judgment is **denied without prejudice**.[7]

## B.

Alternatively, HNA International asks the Court to "write down" 245 Park's judgment by $40 million, the amount of 245 Park's credit bid in the bankruptcy sale. But there is no basis to do so at this time. There is no reason to believe that

---

[7] The denial is without prejudice because HNA International may be able to satisfy the Judgment at some future time.

granting a turnover of HNA International's interest in HNA North
America would come close to satisfying 245 Park's Judgment
against HNA International. As 245 Park continues to pursue
enforcement and satisfaction of the Judgment, HNA International
may renew its motion for relief from the Judgment.

**III.**

The Court now turns to 245 Park's motion for a turnover of
HNA International's interest in HNA North America.[8]

---

[8] HNA International asks the Court to abstain pursuant to <u>Colorado
River Water Conservation District v. United States</u>, 424 U.S. 800 (1976),
from ruling on the turnover motion in light of the Delaware Action. <u>See</u>
ECF No. 118 at 10. But the Delaware Action now has been stayed pending
resolution of the turnover motion. <u>See</u> ECF No. 147-1 at 4. Abstention
therefore is unwarranted.

In any event, abstention is unwarranted regardless of the Delaware
Action's stay. HNA International concedes that the first, second, and
sixth <u>Colorado River</u> factors (whether the controversy involves a res over
which one court has assumed jurisdiction, the relative convenience of the
fora, and whether the petitioner's rights will be protected in state
court) are neutral, and neutrality "is a basis for retaining jurisdiction,
not for yielding it." <u>Niagara Mohawk Power Corp. v. Hudson River-Black
River Regulating Dist.</u>, 673 F.3d 84, 100 (2d Cir. 2012). As to the third
factor (whether abstaining would avoid piecemeal litigation), whatever
risk of duplicative judgments may exist in this case was precipitated by
HNA International's decision, following the filing of the turnover motion
in this action, to file the Delaware Action to adjudicate the exact same
issue, and it would make little sense to reward HNA International's
creation of the inconsistency that HNA International now argues justifies
abstention. <u>See, e.g.</u>, <u>Dalzell Mgmt. Co. v. Bardonia Plaza, LLC</u>, 923 F.
Supp. 2d 590, 600 (S.D.N.Y. 2013) ("Defendants here are the ones who
brought the state court action after Plaintiff had filed an action in
federal court, thereby creating the potential for piecemeal litigation of
which they complain"). The fourth factor (how advanced the actions are)
also counsels against abstention, because this action has progressed
further than the Delaware Action. Finally, the fifth factor (whether state
or federal law provides the rule of decision on the merits) counsels
against abstention: Although state law will provide the rule of decision
for the turnover motion, the "absence of federal issues does not strongly
advise dismissal, unless the state law issues are novel or particularly
complex," <u>Niagara Mohawk</u>, 673 F.3d at 102, and the state law issues here
are not especially novel or complex. As explained below, 245 Park's
entitlement to a turnover in these circumstances is well established under

**A.**

245 Park seeks an order directing HNA International to turn over its 100% ownership interest in HNA North America directly to 245 Park. The parties dispute two aspects of this motion: first, whether a turnover is authorized at all, or whether only a charging order is permitted; and second, if a turnover is authorized, whether the Court should direct that HNA International turn over its interest in HNA North America to 245 Park directly, as opposed to the sheriff for a sale.

**1.**

The first issue is whether 245 Park is entitled to a turnover of HNA International's interest in HNA North America, a Delaware LLC, in partial satisfaction of the Judgment.

The "procedure on execution" in federal court upon a money judgment "must accord with the procedure of the state where the court is located," here New York. Fed. R. Civ. P. 69(a)(1). Article 52 of the C.P.L.R. governs the enforcement and collection of money judgments in New York. C.P.L.R. §§ 5201-53. Under Section 5225(a), a judgment creditor may recover money or property owed a judgment creditor through a court order directing the turnover of such money or property to the judgment

---

New York law. See 79 Madison LLC v. Ebrahimzadeh, 166 N.Y.S.3d 126, 128 (App. Div. 2022). Thus, the "exceptional circumstances" required for Colorado River abstention are not present. See Vill. of Westfield v. Welch's, 170 F.3d 116, 124 (2d Cir. 1999).

creditor, either directly or to the sheriff for sale.
C.P.L.R. § 5225(a).[9] To obtain such an order, the judgment
creditor need only establish that the judgment debtor owns and
possesses the property at issue. Allstar Mktg. Grp., LLC v.
AFACAI, No. 20-cv-8406, 2021 WL 2555636, at *5 (S.D.N.Y. June
22, 2021). Once this showing is made, "the court shall order
that the judgment debtor pay the money, or so much of it as is
sufficient to satisfy the judgment, to the judgment creditor."
C.P.L.R. § 5225(a); see also Allstar Mktg. Grp., 2021 WL
2555636, at *5.

Under New York law, a judgment creditor's turnover petition
"can be granted with respect to the interest that the judgment
debtor concedes he owns in an LLC." 79 Madison, 166 N.Y.S.3d at
128 (affirming order directing defendant to turn over membership
interest in a non-New York LLC directly to the plaintiff); see
also Hotel 71 Mezz Lender LLC v. Falor, 926 N.E.2d 1202, 1209

---

[9] C.P.L.R. § 5225(a) provides:

Property in possession of judgment debtor. Upon motion of the
judgment creditor, upon notice to the judgment debtor, where
it is shown that the judgment debtor is in possession or
custody of money or other personal property in which he has an
interest, the court shall order that the judgment debtor pay
the money, or so much of it as is sufficient to satisfy the
judgment, to the judgment creditor and, if the amount to be
paid is insufficient to satisfy the judgment, to deliver any
other personal property, or so much of it as is of sufficient
value to satisfy the judgment, to a designated sheriff. Notice
of the motion shall be served on the judgment debtor in the
same manner as a summons or by registered or certified mail,
return receipt requested.

(N.Y. 2010) (establishing that "ownership/membership interests in [] out-of-state limited liability companies" are "clearly assignable and transferable" and thus qualify as executable property); Sirotkin v. Jordan, LLC, 35 N.Y.S.3d 443, 445 (App. Div. 2016) ("A membership interest in a limited liability company is clearly assignable and transferrable, and, therefore, such interest is property for purposes of CPLR article 52."). In this case, there is no dispute that HNA International, the judgment debtor, owns and possesses HNA North America, its wholly owned subsidiary. See ECF Nos. 20, 20-1.

HNA International argues that because HNA North America is a Delaware LLC, the Court should apply Delaware law, not New York law, to the turnover motion. ECF No. 118 at 14. But New York courts have applied New York law to order turnovers of foreign LLCs. See, e.g., 79 Madison, 166 N.Y.S.3d at 128. Courts also routinely apply the enforcement procedures and law to which parties contractually agree. See, e.g., Multibank, Inc. v. Access Glob. Cap. LLC, No. 17-cv-3467, 2017 WL 6028535, at *5 n.3 (S.D.N.Y. Dec. 4, 2017) (applying C.P.L.R. § 5225 involving foreign LLC debtor because of choice of law clause in contract specifying that New York law will apply). In this case, the Guaranty specifies that New York law governs, and HNA International consented to jurisdiction in New York "with respect to enforcement of . . . of any awards" and for any

22

disputes "related to this Guaranty." Guaranty § 5.3; <u>see also</u>
Fed. R. Civ. P. 69 ("The procedure on execution -- and in
proceedings supplementary to and in aid of judgment or execution
-- must accord with the procedure of the state where the court
is located[.]"). New York law therefore applies.[10]

There is likewise no merit to HNA International's argument
that, even applying New York law, a charging lien, rather than a
turnover, is the only appropriate remedy. HNA International
cites New York LLC Law § 607(a), which provides that a judgment
creditor "may charge the membership interest of the member with
payment of the unsatisfied amount of the judgment with
interest." But <u>79 Madison</u> rejected the argument that a judgment
creditor "is limited to a charging order" under New York law in

_____

[10] HNA International cites two New York State trial court cases that
denied motions to turn over interests in Delaware LLCs on the ground that
a charging order, rather than a turnover, is the "'exclusive remedy'
available under Delaware law for a judgment creditor of a member of an
LLC." <u>Sutton 58 Assocs. LLC v. Beninati</u>, No. 651296/2016, 2017 WL 2828694,
at *3-4 (N.Y. Sup. Ct. June 30, 2017) (quoting 6 Del. C. § 18-703(d)); <u>see
also Wellbit Equipment Corp. v. El-Gamal</u>, No. 653917/2019, 2021 WL
1711552, at *1 n.1 (N.Y. Sup. Ct. Apr. 27, 2021), <u>modified on reargument</u>,
2021 WL 2548320 (N.Y. Sup. Ct. June 17, 2021). But <u>79 Madison</u>, a later
decision by the New York State Supreme Court, Appellate Division, rejected
similar arguments. <u>See</u> 166 N.Y.S.3d at 128 (applying New York law after
rejecting argument that, because the LLC at issue was "either a Wyoming
LLC [] or a Delaware LLC," "Wyoming or Delaware law applies"). To the
extent <u>Sutton 58 Assocs.</u> or <u>Wellbit</u> conflicts with <u>79 Madison</u>, <u>79 Madison</u>
controls. <u>See, e.g.</u>, <u>Fieger v. Pitney Bowes Credit Corp.</u>, 251 F.3d 386,
399 (2d Cir. 2001) ("The holding of an intermediate appellate state court
is a datum for ascertaining state law which is not to be disregarded by a
federal court unless it is convinced by other persuasive data that the
highest court of the state would decide otherwise.").

Because New York law applies, it is unnecessary to consider HNA
International's argument that Delaware law would prohibit a turnover of a
Delaware LLC in these circumstances. <u>See</u> ECF No. 118 at 15.

these circumstances. 166 N.Y.S.3d at 128. As that court explained, "[t]o the extent [Section] 607(a) permits a judgment creditor to obtain a charging lien against a membership's interest, it does not say that this is the creditor's exclusive remedy, nor does it purport to abolish or limit CPLR 5225(a)." Id. at 128-29. HNA International also cites Section 607(b), which restricts a creditor from "obtain[ing] possession of . . . the property of" an LLC. N.Y. LLC Law § 607(b). But 245 Park's turnover motion does not seek property of an LLC; it seeks the turnover of an LLC, something New York courts do order.

Because HNA International has conceded that it holds a 100% ownership interest in HNA North America, and because this interest in an LLC is property subject to turnover under C.P.L.R. § 5225(a), a turnover of HNA International's interest in HNA North America is appropriate.

**2.**

245 Park asks the Court to order HNA International to turn over its interest in HNA North America directly to 245 Park, rather than to the sheriff for a sale.

C.P.L.R. § 5225(a) "envisions that personal property other than money will be delivered to the sheriff." 79 Madison, 166 N.Y.S.3d at 129. But C.P.L.R. § 5240 "says that the court may modify the use of any enforcement procedure." Id.; see also

24

C.P.L.R. § 5240 ("The court may, at any time, on its own
initiative or the motion of any interested person, and upon such
notice as it may require, make an order denying, limiting,
conditioning, regulating, extending or modifying the use of any
enforcement procedure."). Courts applying New York law have
ordered direct turnovers of membership interests in LLCs to a
creditor where "the value of [the] defendant's membership
interest is uncertain" and the "defendant has obstructed [the
plaintiff's] efforts to pursue the judgment." 79 Madison, 166
N.Y.S.3d at 129; see also Colonial Sur. Co. v. Lakeview
Advisors, LLC, 941 N.Y.S.2d 371, 374-75 (App. Div. 2012) (noting
that C.P.L.R. § 5240 may be used to expand Article 52 where a
debtor is attempting to frustrate a creditor's attempts at
collection); Borges v. Placeres, 530TSN2004, 2018 WL 6056173, at
*3 (N.Y. Civ. Ct. 2018) ("Courts have, in recent years,
authorized equitable remedies pursuant to CPLR 5240 where the
value of property in a debtor's possession . . . is intangible
or uncertain."), appeal dismissed, 105 N.Y.S.3d 782 (App. Div.
2019).

     A direct turnover to 245 Park is appropriate in this case.
The value of HNA International's membership interest in HNA
North America is uncertain. See ECF No. 81-2 at 30:18-31:14
(deposition testimony by HNA International's corporate
representative, who did not know the value of HNA

25

International's interest in HNA North America and could not estimate that value). And HNA International plainly has attempted to frustrate and obstruct 245 Park's efforts to collect on the Judgment. The October 2022 effort by HNA International's wholly-owned subsidiaries to transfer the Chicago Property to their China-based affiliates for no consideration drew the rebuke of Judge Walrath, who agreed that this transfer was not proposed in good faith and that the court could not affirm the proposed plan "in good conscience." ECF No. 81-8; ECF No. 81-9 at 38:2-6. Then, only a few months later, Palisades LLC sought to transfer the Conference Center without providing 245 Park with the 14 days' advance notice required by this Court's Advance Notice Order. In that instance, 245 Park was compelled to seek emergency relief from this Court, which issued an order enjoining HNA International, Palisades Training Center NY LCC, and any persons acting in concert with them from selling or transferring the Conference Center. ECF No. 108.

Given the uncertain value of HNA North America and the obstruction of 245 Park's efforts to pursue the Judgment by HNA International and its affiliates, the motion for a direct turnover of HNA North America to 245 Park is **granted**. See, e.g., 79 Madison, 166 N.Y.S.3d at 129.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, HNA International's motion for relief from the Judgment is **denied without prejudice,** and 245 Park's motion for a turnover is **granted.** HNA International is directed to turn over its 100% membership interest in HNA North America directly to 245 Park within **seven business days.**

The Clerk of Court is respectfully directed to close ECF Nos. 80 and 111.

**SO ORDERED.**

Dated:     New York, New York
           May 19, 2023

                                          _____
                                          John G. Koeltl
                                          **United States District Judge**

27